# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
-------------------------------------------------x
                                                 :
In re                                            :      Chapter 11
                                                 :
OFFSHORE GROUP                                   :      Case No. 15-_____ (___)
INVESTMENT LIMITED, et al.,                      :
                                                 :      Joint Administration Requested
              Debtors.¹                          :
                                                 :
-------------------------------------------------x
```

## MOTION OF DEBTORS FOR INTERIM AND FINAL AUTHORITY TO PAY PREPETITION CLAIMS OF GENERAL UNSECURED CREDITORS IN THE ORDINARY COURSE OF BUSINESS PURSUANT TO SECTIONS 105, 362, 363, AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004

Offshore Group Investment Limited ("**OGIL**") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully represent as follows in support of this motion (this "**Motion**"):

### Relief Requested

1.     Pursuant to sections 105(a), 362(d), 363(b), and 503(b)(9) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Debtors request interim and final authority to pay, in the ordinary course of business, allowed prepetition claims (collectively, the "**Trade Claims**") of general unsecured creditors that provide goods or services related to the Debtors'

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Offshore Group Investment Limited; Vantage Delaware Holdings, LLC; Dragonquest Holdings Company; Emerald Driller Company; P2020 Rig Co.; P2021 Rig Co.; PT. Vantage Drilling Company Indonesia; Sapphire Driller Company; Vantage Deepwater Company; Vantage Deepwater Drilling, Inc. (3668); Vantage Driller I Co; Vantage Driller II Co; Vantage Driller III Co; Vantage Driller IV Co.; Vantage Driller VI Co.; Vantage Driller ROCO S.R.L.; Vantage Drilling Africa; Vantage Drilling (Malaysia) I Sdn. Bhd.; Vantage Drilling Labuan I Ltd.; Vantage Drilling Netherlands B.V.; Vantage Holding Hungary Kft.; Vantage Holdings Cyprus ODC Limited; Vantage Holdings Malaysia I Co; and Vantage International Management Co.  The Debtors' mailing address is 777 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

operations (collectively, the "***Trade Creditors***"), many of which are located in jurisdictions outside the United States (collectively, the "***Foreign Creditors***").  On an interim basis, the Debtors seek authorization to pay prepetition amounts owed to the Trade Creditors on account of the Trade Claims in an aggregate amount not to exceed $20,809,496.  Contemporaneously with the filing of this Motion, the Debtors have filed certain other "first day" motions seeking authority to satisfy certain prepetition obligations to parties including, among others, employees, insurance providers, taxing authorities, and affiliates.  The relief requested in this Motion is not duplicative of the relief sought in such motions.

2.      A proposed form of order granting the relief requested herein on an interim basis is annexed hereto as **Exhibit A** (the "***Proposed Interim Order***") and, pending a final hearing on the relief requested herein, on a final basis as **Exhibit B** (the "***Proposed Final Order***," and together with the Proposed Interim Order, the "***Proposed Orders***").

## Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

RLF1 13477655V.1

**Background**

4.      On the date hereof (the "***Petition Date***"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

5.      Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

6.      Prior to the Petition Date, the Debtors began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors* (the "***Prepackaged Plan***"), through their *Disclosure Statement for Joint Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that their Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.

7.      Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' business and capital structure is set forth in the *Declaration of Christopher G. DeClaire in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* (the "***DeClaire Declaration***"), which has been filed contemporaneously herewith.[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DeClaire Declaration.

RLF1 13477655V.1

**The Trade Creditors**

8.      The Debtors are an international offshore drilling company operating a fleet of modern, high-specification drilling units.  The Debtors' principal business is to contract their drilling units, related equipment, and work crews to drill underwater oil and natural gas wells for customers.  The Debtors provide these services to major, national, and independent oil and natural gas companies, with a primary focus on international markets.

9.      The Debtors' business is truly global: they operate in various different countries including the Republic of the Congo, Gabon, India, Indonesia, Luxembourg, Malaysia, Singapore, the Republic of South Korea, Thailand, the United Arab Emirates, and the United States; they are incorporated under the laws of numerous additional countries, including the Cayman Islands, Cyprus, Hungary, the Netherlands, and Romania; and their key contracts are governed by the laws of still more foreign jurisdictions, such as England and France.  The Debtors' global operations require the support of various suppliers of goods and services located in more than 50 different countries including those listed above.

10.      In the course of providing offshore drilling services, the Debtors operate and maintain highly-complex drilling units that conduct precise underwater operations in remote locations.  The Trade Creditors provide the Debtors with the goods and services that facilitate those operations, such as parts, equipment, rig-to-shore transportation of personnel and supplies, shipping, warehousing, communications, catering, maintenance and repair services, financial and legal services, human resources, and safety inspections.

**The Trade Claims**

11.      The Debtors incur numerous fixed, liquidated, and undisputed payment obligations to the Trade Creditors in the ordinary course of business.  For the 12 months prior to

4

the Petition Date, the Debtors' average monthly payment to Trade Creditors was approximately

$19 million, including $7.2 million per month in obligations to Foreign Creditors.

        12.      The Debtors estimate that, as of the Petition Date, they owe a total of

approximately $27.7 million on account of undisputed Trade Claims.  The following table

summarizes the types of Trade Claims held by the Trade Creditors and provides the Debtors'

estimate of the total amount of each type of Trade Claim outstanding as of the Petition Date,

including estimates for the portion of such total coming due (i) within 21 days of the Petition

Date and (ii) before a hearing granting relief on an final basis.[3]

| Category | Description of Services Provided | Estimated Total Amount Outstanding as of Petition Date | Estimated Amount Due Within 21 Days | Estimated Amount Due Before Final Hearing |
|---|---|---|---|---|
| Operational | Includes domestic suppliers, service providers, and other vendors utilized in connection with the operation of the Debtors' drilling fleet and provision of related services. | $13,200,556 | $7,260,306 | $9,900,417 |
| Corporate G&A[4] | Includes domestic providers of support services for corporate and administrative functions such as information technology, human resources, legal, and accounting. | $1,792,122 | $985,667 | $1,344,092 |
| Foreign Creditors | Includes Trade Creditors located in jurisdictions outside the United States. | $10,011,975 | $5,506,586 | $7,508,981 |
| Freight and Customs | Includes domestic shippers, warehouseman, customs agents, and providers of similar services. | $2,741,341 | $1,507,738 | $2,056,006 |
| **Total:** | | $27,745,994 | $15,260,297 | $20,809,496 |

---

[3] For the purpose of this calculation, the Debtors assume the final hearing on the Motion will be held January 8, 2015.

[4] The Debtors intend to file a motion seeking authority to employ certain professionals (who are included herein as Trade Creditors) that provide ongoing administrative services in the ordinary course of business under section 327 of the Bankruptcy Code.  The relief requested in this Motion pertains solely to amounts owed to such professionals on account of services rendered before the Petition Date.

5

13.     The Debtors are not seeking to pay these amounts immediately or in one lump sum; rather, the Debtors intend to pay these amounts as they become due and payable in the ordinary course of the Debtors' business.  As of the Petition Date, the Debtors have over $150 million in cash on hand.  The Debtors' cash on hand and the cash generated by the Debtors' business will provide ample liquidity for payment of the Trade Claims and continued operation in the ordinary course during the administration of these chapter 11 cases.

### Conditions on Authority to Pay Trade Claims in the Ordinary Course

14.     The Debtors request authority to pay the Trade Claims (i) on the condition that, by accepting payment, the Trade Creditor agrees to maintain or reinstate trade terms during the pendency of these chapter 11 cases that are at least as favorable as those existing on or before the Petition Date or (ii) on terms satisfactory to the Debtors in their business judgment ("***Customary Trade Terms***").  The Debtors also propose that if a Trade Creditor, after receiving a payment on account of its Trade Claim, does not maintain or reinstate Customary Trade Terms during the pendency of these chapter 11 cases, then any payments made on account of the Trade Claim to such Trade Creditor after the Petition Date may, in the Debtors' sole discretion, either be (a) deemed applied to postpetition amounts payable to such Trade Creditor or (b) treated as an unauthorized postpetition transfer recoverable by the Debtors.

### Treatment of Trade Claims Under the Prepackaged Plan

15.     The goal of these prepackaged chapter 11 cases is to deleverage the Debtors' balance sheet with minimal interruption of their business operations.  Disruption of the Debtors' necessary goods and services could negatively impact the Debtors' performance of drilling services, which would harm their business by damaging market reputation and possibly leading to termination of customer contracts.  Accordingly, it is imperative that the Debtors maintain positive relationships with the suppliers of the goods and services essential to their

business operations throughout the course of these chapter 11 cases.  The Debtors negotiated the

terms of the Prepackaged Plan with this goal in mind:  under the Prepackaged Plan, the legal,

equitable, and contractual rights of holders of Administrative Expense Claims, Priority Tax

Claims, Priority Non-Tax Claims, Other Secured Claims, and General Unsecured Claims (each

as defined in the Prepackaged Plan), which includes the Trade Claims, will be unaltered.

Moreover, as more fully described in the DeClaire Declaration, the Prepackaged Plan is

supported by a majority of creditors in the only creditor classes that are impaired under the

Prepackaged Plan.  Accordingly, the relief requested in this Motion furthers the Debtors'

overarching restructuring goals without prejudice to the Debtors' stakeholders.

## Basis for Relief

**A.    Payment of Trade Claims Warranted Under 363 of the Bankruptcy Code**

16.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that the

debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of

business, property of the estate."  To approve the use of assets outside the ordinary course of

business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor

"show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding

Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *see also In re Phoenix Steel

Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case

No. 02-41729, 2003 WL 22316543, at *31 (Bankr. S.D.N.Y. Mar. 4, 2003); *In re Lionel Corp.*,

722 F.2d 1063, 1071 (2d Cir. 1983).  Moreover, "[w]here the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville

Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also In re Tower Air,*

*Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

17.     In addition to be being justified under section 363(b)(1) of the Bankruptcy Code, payment of the Trade Claims is warranted under the corollary doctrine of necessity. Section 105(a) of the Bankruptcy Code provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  Under section 105(a) and the doctrine of necessity, the bankruptcy court may exercise its broad grant of equitable powers to permit the payment of prepetition obligations when such payment is essential to the continued operation of the debtor's business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for the payment of prepetition claims under the doctrine of necessity and noting that "[t]he Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11"); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to the confirmation of a reorganization plan).

18.     Bankruptcy courts regularly rely on their authority under section 105(a) and the doctrine of necessity to grant debtors the discretionary authority to pay certain prepetition claims "where the payment is necessary to permit the effectuation of the rehabilitative purposes of the Bankruptcy Code."  *In re Sharon Steel Corp.*, 159 B.R. 730, 736 (Bankr. W.D. Penn. 1993); *see also In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is

essential to continued operation of the debtor); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175

(Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition claims and explaining that the

"ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such payment

is needed to facilitate the rehabilitation of the debtor is not a novel concept").  The rationale for

making payments to prepetition creditors under the doctrine of necessity is consistent with the

paramount goal of chapter 11: "the continued operation and rehabilitation of the debtor

. . . ." *Ionosphere Clubs*, 98 B.R. at 176.  To that end, approval of such payments benefits, rather

than harms, the Debtors' other creditors.  *See, e.g.*, *Sharon Steel*, 159 B.R. at 737 (approving

payments of certain prepetition wages under the doctrine of necessity where doing so would

maximize the value of the Debtors' assets and noting that payments made pursuant to the

doctrine of necessity "must not only be in the best interest of the debtor but also in the best

interest of its other creditors").  Moreover, Bankruptcy Rule 6003 itself implies that the payment

of prepetition obligations may be permissible within the first twenty-one (21) days of a case

where doing so is "necessary to avoid immediate and irreparable harm."

> 19.    It is a sound exercise of the Debtors' business judgment to pay the Trade

Claims as they become due in the ordinary course of business because doing so will avoid value-

destructive business interruption.  The goods and services provided by Trade Creditors are

necessary for the continued operation of the Debtors' business.  The Debtors anticipate that

failure to pay the Trade Claims as they become due is likely to result in the Trade Creditors

refusing to provide essential goods and services and/or conditioning the delivery of such goods

and services on compliance with onerous and commercially unreasonable terms.  A Trade

Creditor's nonperformance could materially disrupt the Debtors' own performance of drilling

services under customer contracts and jeopardizes the continued viability of the Debtors'

business, and these chapter 11 cases, ultimately to the detriment of the Debtors' stakeholders.

20.      In addition, because the Trade Creditors are already familiar with the

Debtors' assets and business needs based on years of the Debtors' building relationships with

such vendors, they are in the best position to provide goods and services on commercially

reasonable terms.  Also, due to the international and highly-specialized nature of the Debtors'

operations, certain Trade Creditors may be the only or preferred source from which the Debtors

can procure essential goods and services.  Therefore, even if it were possible to obtain

replacement goods and services, doing so would likely cause substantial delay and significant

costs.  Further, the laws of the jurisdictions in which the Debtors operate often require certain

goods and services be provided by local vendors, further limiting the Debtors' options for

obtaining essential goods and services.

21.      Delaying payments to the Trade Creditors could prevent the Debtors from

obtaining goods and services that are essential to their continued performance under customer

contracts.  In a worst case scenario, nonperformance may lead to termination of customer

contracts, resulting in substantial damage to the Debtors' business and injuring the Debtors and

their respective estates and creditors.  The relief requested in this Motion is necessary

immediately, on an interim basis, to avoid irreparable harm to the Debtors, their estates, and their

creditors.

22.      Authority to pay the Trade Claims as they come due will assist the smooth

transition into and out of these chapter 11 cases and will ensure the Debtors' continued operation

during the intervening period.  Moreover, no party in interest will be prejudiced by the relief

requested herein because the Trade Claims are unimpaired under the Prepackaged Plan and will

be paid in full upon the effective date of the Prepackaged Plan.  Thus, the relief requested herein

seeks to alter only the timing, not the amount or priority, of such payments.

23.     Accordingly, paying the relatively modest amount of Trade Claims—

roughly one percent (1%) of the total debt to be restructured in these chapter 11 cases—in the

ordinary course is prudent when compared to the amount the Debtors' stakeholders stand to lose

if the Debtors' business were to be interrupted and, therefore, it is a sound exercise of the

Debtors' business judgment.

24.     Courts in this district have authorized payment of prepetition general

unsecured claims in the ordinary course of business where a debtor's proposed prepackaged plan

of reorganization provides for a 100% recovery on general unsecured claims.  *See, e.g.*, *In re

Hercules Offshore, Inc.*, Ch. 11 Case No. 15-11685 (KJC) (Bankr. D. Del. Sept. 15, 2015)

(authorizing payment of undisputed claims of unsecured creditors); *In re Everyware Global, Inc.*,

Ch. 11 Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 22, 2015) (same); *In re Dolan Co.*, Ch. 11

Case No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014) (same); *In re Sorenson Commc'ns,

Inc.*, Ch. 11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *In re

Physiotherapy Holdings, Inc.*, Ch. 11 Case No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2013)

(same); *In re Gatehouse Media, Inc.*, Ch. 11 Case No. 13-12503 (MFW) (Bankr. D. Del. Sept.

30, 2013) (same); *In re Peak Broad., LLC*, Ch. 11 Case No. 12-10183 (PJW) (Bankr. D. Del.

Jan. 12, 2012) (same).

**B.     Additional Bases for Payment of Certain Trade Claims**

    *i.     Certain Trade Claims Are Owed to Foreign Creditors*

25.     As explained above, the Debtors rely on parties located outside the United

States for essential goods and services.  As a result, an aggregate amount of approximately

$10 million, roughly 36%, of the Trade Claims are owed to Foreign Creditors that may lack

RLF1 13477655V.1

minimum contacts with the United States and, therefore, may not be subject to the jurisdiction of this Court or provisions of the Bankruptcy Code that otherwise protect the Debtors' assets and business operations.  Based on the Debtors' experience in the offshore drilling industry and their familiarity with the Foreign Creditors, the Debtors believe there is a significant risk that Foreign Creditors may consider themselves to be beyond the jurisdiction of this Court, disregard the automatic stay, and engage in conduct that is harmful to the Debtors' business operations unless paid in the ordinary course.[5]  Further, such conduct would inevitably lead to litigation in foreign courts, resulting in additional and unnecessary expenses to the detriment of the Debtors, their estates, and their creditors.  These harms would be immediate and irreparable.  As discussed above, permitting the Debtors to pay the Trade Claims of Foreign Creditors as they become due will only alter the timing, not the amount or priority, of such payments, and will help preserve the value of the Debtors' estates by minimizing disruptions to their business operations. Accordingly, payment of the Trade Claims of Foreign Creditors is a sound exercise of the Debtors' business judgment, is necessary to avoid irreparable harm to the Debtors' estates, is in the best interests of the Debtors and their respective estates and creditors, and is warranted under the circumstances.

26.     Courts in this district have recognized that payment of prepetition claims foreign vendors is appropriate in prepackaged cases in which debtors sought relief similar to that requested herein.  *See, e.g.*, *In re Hercules Offshore, Inc.*, Ch. 11 Case No. 15-11685 (KJC) (Bankr. D. Del. Sept. 15, 2015) (authorizing payment of undisputed claims of foreign creditors in

---

[5]   Notwithstanding the self-executing and global nature of the automatic stay, not all parties affected or potentially affected by the commencement of these chapter 11 cases are aware of its significance and impact.  As a result, in an exercise of prudence, the Debtors are seeking an order enforcing the automatic stay in the *Motion of Debtors for an Order Enforcing the Protections of Sections 362, 365, and 525 of the Bankruptcy Code Pursuant to Section 105 of the Bankruptcy Code*, filed contemporaneously herewith.

prepackaged chapter 11 proceedings); *In re Everyware Global, Inc.*, Ch. 11 Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (same); *see also In re The Standard Register Co.*, Ch. 11 Case No. 15-10541 (BLS) (Bankr D. Del. Mar. 13, 2015) (authorizing payment of prepetition claims of foreign creditors in traditional chapter 11 proceedings); *In re Leiner Health Prods. Inc.*, Ch. 11 Case No. 08-10446 (KJC) (Bankr. D. Del Apr. 8, 2008) (same); *In re A123 Sys., Inc.*, Ch. 11 Case No. 12-12859 (KJC) (Bankr. D. Del. Nov. 8, 2012) (same); *In re Pemco World Air Servs., Inc.*, Ch. 11 Case No. 12-10799 (MFW) (Bankr. D. Del. Apr. 3, 2012) (same).

ii.      *Certain Trade Claims Are Pass-Through Costs*

27.      Approximately $3.9 million of the Trade Claims owed to a particular Foreign Creditor ultimately pass through to (i.e., are reimbursed by) one of the Debtors' customers (the "***Pass-Through Trade Claims***").  In certain circumstances, the Debtors procure goods and services on behalf of their customers, and manage the logistics related to such goods and services; for example, performing the necessary diligence on the vendor, setting up appropriate service agreements with the vendor, and ensuring the vendor satisfies the requirements for providing offshore drilling goods and services to the customer.  Instead of billing the customer directly for such services, the vendor invoices the Debtors, who in turn pass the cost on to their customer.

28.      The Pass-Through Trade Claims subject to this Motion were incurred in connection with sourcing a vendor to install an intervention workover supply system at the request of one of the Debtors' key customers.  Given the nature of the Pass-Through Trade Claims, the amounts disbursed by the Debtors will be offset by associated receivables and, thus, are not true liabilities of the Debtors' estate.  Accordingly, the Court should authorize the Debtors to pay the Pass-Through Trade Claims in the ordinary course of business.

     *iii.*     *Certain Trade Claims Are Administrative Expenses*

          29.     An aggregate amount of approximately $5.1 million, roughly 18%, of the Trade Claims are entitled to the statutory priority for goods delivered to the Debtors in the ordinary course of business within 20 days before the Petition Date.  Section 503(b)(9) of the Bankruptcy Code provides that such claims are administrative expense claims against the applicable Debtor's estate.  *See* 11 U.S.C. § 503(b)(9).  The Debtors, therefore, are required to pay such claims in full to confirm a plan of reorganization.  *See id*. § 1129(a)(9)(A) (requiring payment in full of claims entitled to administrative expense priority).  Instead of paying such Trade Claims on the effective date of the Prepackaged Plan, the Debtors seek authority to pay the Trade Claims during the pendency of these chapter 11 cases as they become due.

          30.     The Bankruptcy Code requires, and the Prepackaged Plan provides for, payment in full of administrative expense claims on the effective date of the Prepackaged Plan, or as soon as practicable thereafter.  Thus, payment of Trade Claims entitled to priority under section 503(b)(9) under the Proposed Orders will effect only a change in the timing of such payments, not the amounts or priority thereof.  Finally, authorizing the Debtors to pay Trade Claims pursuant to the terms set forth herein should eliminate the burden on this Court and the Debtors arising from numerous individual motions requesting payment on account of 503(b)(9) claims.  Accordingly, payment of the Trade Claims as provided herein, is a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, is in the best interests of the Debtors' and their respective estates and creditors, and is warranted under the circumstances.

          31.     Courts in this district have authorized the payment of prepetition claims under section 503(b)(9) of the Bankruptcy Code at the outset of a chapter 11 case.  *See, e.g.*, *In*

*re Hercules Offshore, Inc.*, Ch. 11 Case No. 15-11685 (KJC) (Bankr. D. Del. Sept. 15, 2015) (authorizing payment of section 503(b)(9) claims); *In re Everyware Global, Inc.*, Ch. 11 Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (same); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *In re Physiotherapy Holdings, Inc.*, Ch. 11 Case No. 13-12965 (KG) (Bankr. D. Del. Dec. 6, 2013) (same); *In re GateHouse Media, Inc.*, Ch. 11 Case No. 13-12503 (MFW) (Bankr. D. Del. Sept. 30, 2013) (same).

        *iv.*    *Certain Trade Claims May Be Secured by Liens*

        32.     Certain Trade Claims are held by Trade Creditors that (i) provide shipping, warehousing, and logistics services and supplies; (ii) repair and maintain the Debtors' equipment and facilities; and/or (iii) lease facilities or equipment to the Debtors.  Such Trade Creditors may be entitled to assert liens against certain of the Debtors' assets under various state, federal, international, or maritime laws.  These issues are particularly acute in the context of international maritime operations like those of the Debtors.  For example, certain Trade Creditors supply the Debtors with goods and services that may qualify as "necessaries," as that term is used in maritime law.  *See, e.g.*, 46 U.S.C. § 31301(4) (defining "necessaries" to include repairs, supplies, towage, and the use of a dry dock or marine railway); *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 923 (9th Cir. 2002) (noting that "modern admiralty jurisprudence interprets 'necessaries' broadly, as anything that facilitates or enables a vessel to perform its mission or occupation") (citing *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir.1986).  Under maritime law, if a Trade Creditor were owed for the provision of "necessaries," it could potentially assert maritime liens against the Debtors' drilling units and seek to attach and arrest these assets.  *See id.* § 31342 ("[A] person providing necessaries to a vessel . . . has a maritime lien on the vessel" and "may bring a civil action in rem to enforce the

lien . . . .").  Once a vessel is arrested, it will be held in custody until the order for attachment and arrest is vacated or security is posted from which the maritime claim may be satisfied.  *See* Fed. R. Civ. Proc. Supp. Adm. Rule E(5).  The arrest of one the Debtors' drilling units would cause a substantial disruption in the Debtors' business operations and cause the Debtors' estates to incur additional costs and expenses associated with maritime proceedings to release the vessel. Moreover, under section 363(e) of the Bankruptcy Code, Trade Creditors with liens may be entitled to adequate protection of their liens, which may impose additional costs on the Debtors' estates.

33.     Furthermore, under the Prepackaged Plan, Trade Claims supported by liens are "Other Secured Claim" that are unimpaired and will be paid in full on the effective date of the Plan.  Accordingly, payment of the Trade Claims as provided herein, is a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, is in the best interests of the Debtors' and their respective estates and creditors, and is warranted under the circumstances.

34.     Courts in this district have authorized the payment of claims supported by liens at the outset of a chapter 11 case.  *See, e.g.*, *In re Hercules Offshore, Inc.*, Ch. 11 Case No. 15-11685 (KJC) (Bankr. D. Del. Sept. 15, 2015) (authorizing payment of claims supported by liens); *In re Everyware Global, Inc.*, Ch. 11 Case No. 15-10743 (LSS) (Bankr. D. Del. Apr. 9, 2015) (same); *In re Sorenson Commc'ns, Inc.*, Ch. 11 Case No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014) (same); *In re Physiotherapy Holdings, Inc.*, Ch. 11 Case No. 13-2965 (KG) (Bankr. D. Del. Dec. 6, 2013) (same); *In re GateHouse Media, Inc.*, Ch. 11 Case No. 13-12503 (MFW) (Bankr. D. Del. Sept. 30, 2013) (same); *In re Neb. Book Co.*, Ch. 11 Case No. 11-12005 (PJW) (Bankr. D. Del. July 21, 2011) (same).

## Processing of Checks and Electronic Fund Transfers Should Be Authorized

35.     The Debtors have sufficient funds to pay the Trade Claims in the ordinary course of business using cash maintained by the Debtors and the cash generated through operations.  Under the Debtors' existing cash management system, the Debtors have the ability to readily identify checks or wire transfer requests relating to the Trade Claims, as applicable, and believe there is minimal risk that inadvertent payment of unauthorized checks or wire transfer requests will be made.  Thus, the Debtors request that the Court direct applicable banks and financial institutions to receive, process, honor, and pay, to the extent of funds on deposit, any and all checks issued or to be issued and electronic fund transfers requested or to be requested by the Debtors relating to the Trade Claims as set forth herein.  The Debtors also seek authority, but not direction, to issue new postpetition checks or effect new postpetition electronic fund transfers in replacement of any checks or transfer requests on account of the Trade Claims dishonored or rejected as a result of these chapter 11 cases.

## Bankruptcy Rule 6003 Has Been Satisfied

36.     Bankruptcy Rule 6003 provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition.  For the reasons set forth above, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and all parties in interest.  Accordingly, payment of the Trade Claims in the ordinary course of business, including those that are due within the first 21 days, is vital to ensure that the Debtors' operations are not disrupted at a critical juncture in their restructuring.  Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

RLF1 13477655V.1

## Request for Bankruptcy Rule 6004 Waivers

37.     The Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting the relief requested herein pursuant to Bankruptcy Rule 6004(h).  As explained above and in the DeClaire Declaration, the relief requested herein is necessary to avoid immediate and irreparable harm to the Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## Reservation Of Rights

38.     Nothing contained in this Motion or any actions taken by the Debtors pursuant to relief granted in the Proposed Orders is intended or should be construed as:  (i) an admission as to the validity of any particular claim against a Debtor entity; (ii) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (iii) a promise or requirement to pay any particular claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Motion; (v) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (vi) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (vii) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Notice**

39.    No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.  Notice of this Motion has been provided to (i) the Office of the United States Trustee for the District of Delaware; (ii)  the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) Akin Gump Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, N.W., Washington, DC  20036-1564 (Attn: Scott L. Alberino, Esq. and Meng Ru, Esq.) as counsel to Cortland Capital Market Services LLC, (a) as successor administrative agent under that certain Amended and Restated Term Loan Agreement, dated as of October 25, 2012 and amended and restated as of November 22, 2013 and (b) as successor administrative agent under that certain Second Term Loan Agreement, dated as of March 28, 2013; (iv) Arent Fox LLP, 1675 Broadway, New York, New York  10019 (Attn: Andrew I. Silfen, Esq.) as counsel to Wells Fargo Bank, National Association, in its capacity as (a)  indenture trustee and collateral agent for the holders of 7.5% Senior Secured First Lien Notes due 2019 and 7.125% Senior Secured First Lien Notes due 2023, (b) collateral agent for the lenders under that certain Amended and Restated Term Loan Agreement, dated as of October 25, 2012 and amended and restated as of November 22, 2013, that certain Amended and Restated Credit Agreement, dated as of March 28, 2013, and that certain Second Term Loan Agreement, dated as of March 28, 2013, and (c) Pari Passu Collateral Agent under, and as defined in, that certain Amended and Restated Intercreditor Agreement, dated as of October 25, 2012; (v) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY  10005 (Attn: Dennis F. Dunne, Esq. and Evan R. Fleck, Esq.) as counsel to the ad hoc committee of secured term loan lenders and secured noteholders; (vi) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL  60611 (Attn: Richard A. Levy, Esq.) as counsel to the administrative agent under that certain Amended and Restated Credit Agreement, dated as of

March 28, 2013; (vii) the Securities and Exchange Commission; (viii) the Internal Revenue

Service; (ix) the United States Attorney's Office for the District of Delaware; and (x) any other

party entitled to notice pursuant to Local Rule 9013–1(m).

       40.    Notice of this Motion and any order entered hereon will be served on all

parties required by Local Rule 9013–1(m).  Based on the urgency of the circumstances

surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully

submit that no further notice is required.

## <u>No Prior Request</u>

       41.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

## Conclusion

WHEREFORE the Debtors respectfully request entry of the Proposed Orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: December 3, 2015
       Wilmington, Delaware

/s/ *Zachary I. Shapiro*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C.
Ronit J. Berkovich
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

**<u>Exhibit A</u>**

Proposed Interim Order

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

```
-------------------------------------------------x
                                               :
In re                                          :     Chapter 11
                                               :
OFFSHORE GROUP                                 :     Case No. 15-_____ (___)
INVESTMENT LIMITED, et al.,                    :
                                               :     Joint Administration Requested
            Debtors.¹                          :
                                               :
-------------------------------------------------x
```

**INTERIM ORDER AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS
OF GENERAL UNSECURED CREDITORS IN THE ORDINARY COURSE
OF BUSINESS PURSUANT TO SECTIONS 105, 362, 363, AND 503 OF
THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004**

Upon the motion, dated December 3, 2015 (the "***Motion***"),[2] of Offshore Group

Investment Limited and its affiliated debtors, as debtors and debtors in possession (collectively,

the "***Debtors***"), for interim and final authority to pay the prepetition claims of general unsecured

creditors in the ordinary course of business pursuant to sections 105(a), 362(d), 363(b), and

503(b)(9) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, as more fully set forth

in the Motion; and upon consideration of the DeClaire Declaration; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference from the United States District Court*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax
identification number, as applicable, are:  Offshore Group Investment Limited; Vantage Delaware
Holdings, LLC; Dragonquest Holdings Company; Emerald Driller Company; P2020 Rig Co.; P2021 Rig
Co.; PT. Vantage Drilling Company Indonesia; Sapphire Driller Company; Vantage Deepwater
Company; Vantage Deepwater Drilling, Inc. (3668); Vantage Driller I Co; Vantage Driller II Co; Vantage
Driller III Co; Vantage Driller IV Co.; Vantage Driller VI Co.; Vantage Driller ROCO S.R.L.; Vantage
Drilling Africa; Vantage Drilling (Malaysia) I Sdn. Bhd.; Vantage Drilling Labuan I Ltd.; Vantage
Drilling Netherlands B.V.; Vantage Holding Hungary Kft.; Vantage Holdings Cyprus ODC Limited;
Vantage Holdings Malaysia I Co; and Vantage International Management Co.  The Debtors' mailing
address is 777 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the
Motion.

*for the District of Delaware* dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing on the Motion on December __, 2015; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors and their respective estates and creditors; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a), 362(d), 363(b), and 503(b)(9) of the Bankruptcy Code, in the reasonable exercise of their business judgment, to pay, in the ordinary course of business, some or all of the prepetition Trade Claims of Trade Creditors in an aggregate amount not to exceed $20,809,496; provided that any Trade Creditor receiving payment on its Trade Claim must agree to maintain or reinstate trade terms during the pendency of these chapter 11 cases that are at least as favorable as those existing on or before the Petition Date or that are satisfactory to the Debtors in their business judgment ("***Customary Trade Terms***").

3.      If a Trade Creditor, after receiving payment on account of a Trade Claim, ceases to provide Customary Trade Terms or otherwise fails to perform under a contract with a Debtor, the Debtors, in their sole discretion, may without further notice to or action, order, or

2

approval of this Court (i) deem such payment to apply to postpetition amounts payable to such

Trade Creditor, if applicable, or (ii) recover such payment in cash from the Trade Creditor as an

unauthorized postpetition transfer, and the Trade Creditor, by virtue of this Order, will be

deemed ordered to return such payment to the Debtors within seven (7) business days of the

Debtors' written demand therefor.

4.      All applicable banks and other financial institutions are authorized to

receive, process, honor, and pay any and all checks and transfer requests evidencing amounts

paid by the Debtors under this Order, whether presented before or after the Petition Date, in

accordance with, and with the protections granted in, any order approving the Debtors' use of

their cash management system entered in these chapter 11 cases.

5.      The Debtors are further authorized to issue postpetition checks, or to effect

postpetition fund transfer requests, in replacement of any checks or fund transfer requests that

are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts

owed in connection with any Trade Claims.

6.      Nothing contained in the Motion or this Order is intended or should be

construed as a decision by the Debtors to assume or reject any executory contract or unexpired

lease, or to effect the assumption or rejection of any executory contract or unexpired lease,

pursuant to section 365 of the Bankruptcy Code.

7.      Nothing contained in the Motion or this Order is intended or should be

construed to create an administrative priority claim on account of any Trade Claim.

8.      Nothing contained in the Motion or this Order shall be deemed or

construed as an admission as to the validity or priority of any Trade Claim or lien against the

3

Debtors or any other party or as a waiver of such parties' rights to dispute any Trade Claim or lien.

9.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

10.     The requirements of Bankruptcy Rule 6004(a) are waived.

11.     Notwithstanding the provisions of Bankruptcy Rule 6004(h), this Order shall be immediately effective and enforceable upon its entry.

12.     The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

13.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

14.     A final hearing to consider the relief requested in the Motion shall be held on _____, ____ at _____ (Eastern Time) and any objections or responses to the Motion shall be filed and served so as to be actually received on or prior to _____, ____ at 4:00 p.m. (Eastern Time).

Dated: _____, 2015
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

4

**Exhibit B**

Proposed Final Order

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
--------------------------------------------------x
                                    :
In re                               :        Chapter 11
                                    :
OFFSHORE GROUP                      :        Case No. 15-_____ (___)
INVESTMENT LIMITED, et al.,         :
                                    :        Joint Administration Requested
         Debtors.¹                  :
                                    :
--------------------------------------------------x
```

## FINAL ORDER AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF GENERAL UNSECURED CREDITORS IN THE ORDINARY COURSE OF BUSINESS PURSUANT TO SECTIONS 105, 362, 363, AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004

Upon the motion, dated December 3, 2015 (the "*Motion*"),[2] of Offshore Group

Investment Limited and its affiliated debtors, as debtors and debtors in possession (collectively,

the "*Debtors*"), for interim and final authority to pay the prepetition claims of general unsecured

creditors in the ordinary course of business pursuant to sections 105(a), 362(d), 363(b), and

503(b)(9) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, as more fully set forth

in the Motion; and upon consideration of the DeClaire Declaration; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157

and 1334, and the *Amended Standing Order of Reference from the United States District Court*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Offshore Group Investment Limited; Vantage Delaware Holdings, LLC; Dragonquest Holdings Company; Emerald Driller Company; P2020 Rig Co.; P2021 Rig Co.; PT. Vantage Drilling Company Indonesia; Sapphire Driller Company; Vantage Deepwater Company; Vantage Deepwater Drilling, Inc. (3668); Vantage Driller I Co; Vantage Driller II Co; Vantage Driller III Co; Vantage Driller IV Co.; Vantage Driller VI Co.; Vantage Driller ROCO S.R.L.; Vantage Drilling Africa; Vantage Drilling (Malaysia) I Sdn. Bhd.; Vantage Drilling Labuan I Ltd.; Vantage Drilling Netherlands B.V.; Vantage Holding Hungary Kft.; Vantage Holdings Cyprus ODC Limited; Vantage Holdings Malaysia I Co; and Vantage International Management Co.  The Debtors' mailing address is 777 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

*for the District of Delaware* dated February 29, 2012; and consideration of the Motion and the

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided to the parties listed therein, and it appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and the Court

having held a hearing on the Motion on December __, 2015; and the Court having granted

interim relief on the Motion on December __, 2015 (Docket No.__); and the Court having held a

final hearing on the Motion on January __, 2016; and all objections to the Motion having been

withdrawn, resolved or overruled; and the Court having determined that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and it appearing

that the relief requested in the Motion is in the best interests of the Debtors and their respective

estates and creditors; and upon all of the proceedings had before the Court and after due

deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted.

2.      The Debtors are authorized, but not directed, pursuant to sections 105(a),

362(d), 363(b), and 503(b)(9) of the Bankruptcy Code, in the reasonable exercise of their

business judgment, to pay, in the ordinary course of business, some or all of the prepetition

Trade Claims of the Trade Creditors; <u>provided</u> that any Trade Creditor receiving payment on its

Trade Claim must agree to maintain or reinstate trade terms during the pendency of these chapter

11 cases that are at least as favorable as those existing on or before the Petition Date or that are

satisfactory to the Debtors in their business judgment ("***Customary Trade Terms***").

3.        If a Trade Creditor, after receiving payment on account of a Trade Claim, ceases to provide Customary Trade Terms or otherwise fails to perform under a contract with a Debtor, the Debtors, in their sole discretion, may without further notice to or action, order, or approval of this Court (i) deem such payment to apply to postpetition amounts payable to such Trade Creditor, if applicable, or (ii) recover such payment in cash from the Trade Creditor as an unauthorized postpetition transfer, and the Trade Creditor, by virtue of this Order, will be deemed ordered to return such payment to the Debtors within seven (7) business days of the Debtors' written demand therefor.

4.        All applicable banks and other financial institutions are authorized to receive, process, honor, and pay any and all checks and transfer requests evidencing amounts paid by the Debtors under this Order, whether presented before or after the Petition Date, in accordance with, and with the protections granted in, any order approving the Debtors' use of their cash management system entered in these chapter 11 cases.

5.        The Debtors are further authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Trade Claims.

6.        Nothing contained in the Motion or this Order is intended or should be construed as a decision by the Debtors to assume or reject any executory contract or unexpired lease, or to effect the assumption or rejection of any executory contract or unexpired lease, pursuant to section 365 of the Bankruptcy Code.

7.        Nothing contained in the Motion or this Order is intended or should be construed to create an administrative priority claim on account of any Trade Claim.

3

8.      Nothing contained in the Motion or this Order shall be deemed or construed as an admission as to the validity or priority of any Trade Claim or lien against the Debtors or any other party or as a waiver of such parties' rights to dispute any Trade Claim or lien.

9.      The Debtors are authorized to take all steps necessary or appropriate to carry out this Order.

10.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: _____, 2016
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

RLF1 13477655V.1