UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

------------------------------------------------------x
                                 :     **Chapter 11**

**In re**                :

                                 :     **Case No. 15-12422 (BLS)**

**OFFSHORE GROUP**       :

**INVESTMENT LIMITED,** *et al.*,   :     **Jointly Administered**

                                 :     **Obj. Deadline: 12/31/15 at 4:00 p.m. (ET)**

          **Debtors.**[1]      :     **Hearing Date: 01/07/16 at 10:00 a.m. (ET)**

                                 :

------------------------------------------------------x

### APPLICATION OF DEBTORS
### PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE, RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND LOCAL RULES 2014–1 AND 2016–2 FOR AUTHORIZATION TO EMPLOY AND RETAIN LAZARD FRÈRES & CO. LLC AS INVESTMENT <u>BANKER TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE</u>

         Offshore Group Investment Limited and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "***Debtors***"), respectfully represent as follows in support of this application (this "***Application***"):

### <u>Relief Requested</u>

         1.     Pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Rules 2014–1 and 2016–2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Offshore Group Investment Limited; Vantage Delaware Holdings, LLC; Dragonquest Holdings Company; Emerald Driller Company; P2020 Rig Co.; P2021 Rig Co.; PT. Vantage Drilling Company Indonesia; Sapphire Driller Company; Vantage Deepwater Company; Vantage Deepwater Drilling, Inc. (3668); Vantage Driller I Co; Vantage Driller II Co; Vantage Driller III Co; Vantage Driller IV Co.; Vantage Driller VI Co.; Vantage Driller ROCO S.R.L.; Vantage Drilling Africa; Vantage Drilling (Malaysia) I Sdn. Bhd.; Vantage Drilling Labuan I Ltd.; Vantage Drilling Netherlands B.V.; Vantage Holding Hungary Kft.; Vantage Holdings Cyprus ODC Limited; Vantage Holdings Malaysia I Co; and Vantage International Management Co.  The Debtors' mailing address is 777 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

Delaware (the "*Local Rules*"), the Debtors request authorization to retain and employ Lazard

Frères & Co. LLC ("*Lazard*") as investment banker in the Debtors' chapter 11 cases, *nunc pro*

*tunc* to the Petition Date (as defined herein), in accordance with the terms and conditions set

forth in the engagement letter by and between Vantage Drilling Company ("*Vantage Parent*"),

on behalf of itself and its controlled subsidiaries, including the Debtors (collectively, the

"*Company*"), and Lazard, dated as of April 23, 2015 (the "*Engagement Letter*").[2]  A copy of the

Engagement Letter is attached hereto as **Exhibit B**.  A proposed order is attached hereto as

**Exhibit C** (the "*Proposed Order*").

### Jurisdiction

2.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334, and the *Amended Standing Order of Reference from the United States District*

*Court for the District of Delaware* dated February 29, 2012.  This is a core proceeding pursuant

to 28 U.S.C. § 157(b) and, pursuant to Rule 9013–1(f) of the Local Rules, the Debtors consent to

the entry of a final order by the Court in connection with this Application to the extent that it is

later determined that the Court, absent consent of the parties, cannot enter final orders or

judgments consistent with Article III of the United States Constitution.  Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Background

3.       On December 3, 2015 (the "*Petition Date*"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The

---

[2] The description of the Engagement Letter herein is a summary.  To the extent that this Application and the terms of the Engagement Letter are inconsistent, the terms of the Engagement Letter shall control. Capitalized terms used herein but not defined shall have the meanings ascribed to them in the Engagement Letter.

Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

4.      Prior to the Petition Date, the Debtors began the solicitation of votes on their *Joint Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors* (the "***Prepackaged Plan***"), through their *Disclosure Statement for Joint Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors* pursuant to sections 1125 and 1126(b) of the Bankruptcy Code.  The Debtors expect that their Prepackaged Plan will be accepted by all classes entitled to vote in excess of the statutory thresholds specified in section 1126(c) of the Bankruptcy Code.  The hearing on confirmation of the Prepackaged Plan is currently scheduled for January 14, 2016.

5.      Additional information regarding the circumstances leading to the commencement of these chapter 11 cases and information regarding the Debtors' business and capital structure is set forth in the *Declaration of Christopher G. DeClaire in Support of the Debtors' Chapter 11 Petitions and Related Requests for Relief* [Docket No. 17].

**Lazard's Qualifications**

6.      The Debtors seek to retain Lazard as their investment banker to assist them in effectuating a successful reorganization of their businesses.  The Debtors believe that retaining Lazard as their investment banker is in the best interests of their estates and creditors.  The Debtors have selected Lazard because of Lazard's experience at a national level in matters of this character and its exemplary qualifications to perform the services required in these chapter 11 cases.  Lazard has been retained in numerous nationally prominent bankruptcy proceedings.  Lazard and its senior professionals have an excellent reputation for providing high

3

quality investment banking services to debtors and creditors in bankruptcy reorganizations and other debt restructurings. Indeed, Lazard specializes in assisting and advising debtors, creditors, investors, and court-appointed officials in bankruptcy proceedings and out-of-court workouts. Lazard's services regularly include assistance in developing, analyzing, evaluating, negotiating, and confirming plans of reorganization and testifying regarding debt restructuring, feasibility, and other relevant issues. Lazard's qualifications are set forth in the *Declaration in Support of the Debtors' Application Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, and Local Rules 2014–1 and 2016–2 to Employ and Retain Lazard Frères & Co. LLC as Investment Banker to the Debtors Nunc Pro Tunc to the Petition Date* filed in support of this Application and attached hereto as **Exhibit A** (the "***Aebersold Declaration***").

7.      Lazard is intimately familiar with the Debtors' financial and business operations. As discussed in the Aebersold Declaration, the Debtors initially engaged Lazard in April 2015 to advise and assist the Debtors' management team in connection with (i) any transaction or series of transactions involving the private issuance, sale, or placement of newly-issued (including securities held in treasury) equity, equity-linked, or debt securities, instruments or obligations of the Debtors ("***Financing***") and (ii) any repurchase, forgiveness, exchange, or revision of any portion of the Debtors' outstanding indebtedness (including bank debt, bond debt, and other on and off balance sheet indebtedness) (collectively, the "***Existing Obligations***"), that is achieved, without limitation, through (a) a solicitation of waivers and consents from the holders of Existing Obligations (collectively, the "***Stakeholders***"), (b) rescheduling of the maturities of Existing Obligations, (c) a change in interest rates, repurchase, settlement, or forgiveness of Existing Obligations, (d) conversion of Existing Obligations into equity (other

4

than solely pursuant to the terms of the Existing Indebtedness on the date of the Engagement

Letter), (e) an exchange offer involving the issuance of new securities in exchange for Existing

Obligations, (f) an exchange offer involving the issuance of new securities in exchange for

Existing Obligations, or (g) the issuance of new securities, sale, or disposition of assets, sale of

debt or equity securities or other interests or other similar transaction or series of transactions

(each such transaction or combination of such transactions, "***Refinancing***").  Lazard diligently

provided such services to the Debtors.

        8.      In providing the foregoing prepetition services to the Debtors, Lazard's

professionals have worked closely with the Debtors' management and other professionals and

have become well-acquainted with the Debtors' operations, debt structure, business, and related

matters.  As a result, Lazard has a well-developed knowledge of the Debtors' financial and

business operations and is well-suited to provide the investment banking services to the Debtors

as set forth in the Engagement Letter.

        9.      Moreover, Lazard's professionals have been employed as investment

bankers in a number of situations involving troubled companies, including among others, the

following large and complex chapter 11 cases:  *In re Hercules Offshore, Inc.*, Ch. 11 Case No.

15-11685 (KJC) (Bankr. D. Del. Sept. 8, 2015); *In re Dendreon Corp.*, Ch. 11 Case No. 14-

12515 (PJW) (Bankr. D. Del. Dec. 9, 2014); *In re Radioshack Corp.*, Ch. 11 Case No. 15-10197

(Bankr. D. Del. Mar. 13, 2015); *In re Energy Future Holdings Corp.*, Ch. 11 Case No. 14-10979

(Bankr. D. Del. Oct. 20, 2014); *In re Legend Parent, Inc.*, Ch. 11 Case No. 14-10701 (RG)

(Bankr. S.D.N.Y. June 10, 2014); *In re Longview Power, LLC*, Ch. 11 Case No. 13-12211 (BLS)

(Bankr. D. Del. Sept. 24, 2013) [Docket No. 260]; *In re Cengage Learning, Inc.*, Ch. 11 Case

No. 13-44106 (ESS) (Bankr. E.D.N.Y. 2013 July 24, 2013) [Docket No. 151]; *In re A123 Sys.,*

5

*Inc.*, Ch. 11 Case No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012) [Docket No. 329]; *In re*

*Eastman Kodak Co.*, Ch. 11 Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 28, 2012) [Docket

No. 442]; *In re Great Atl. & Pac. Tea Co.*, Ch. 11 Case No. 10-24549 (RDD) (Bankr. S.D.N.Y.

Jan. 13, 2011) [Docket No. 487]; *In re Lehman Bros. Holdings, Inc.*, Ch. 11 Case No. 08-13555

(JMP) (Bankr. S.D.N.Y. Dec. 17, 2008) [Docket No. 2275].  Thus, Lazard has significant

experience and expertise that will assist in providing effective and efficient services to the

Debtors.

### Services to be Rendered

10.      Lazard has agreed to provide services to the Debtors in accordance with

the terms and conditions set forth in the Engagement Letter.  The terms of the Engagement Letter

reflect the mutual agreement between the Debtors and Lazard as to the substantial efforts that

will be required of Lazard in this engagement.  The Engagement Letter provides, in

consideration for the compensation contemplated thereby, that Lazard will, to the extent

requested by the Debtors, render the following investment banking services (collectively, the

"***Services***"):

> (a)      Review and analyze the Company's business, operations, and financial projections;
>
> (b)      Assist in the determination of a capital structure for the Company;
>
> (c)      Advise and assist in evaluating any potential Financing transaction by the Company and, subject to Lazard's agreement to so act, to execute appropriate agreements on behalf of the Company, contact potential sources of capital as the Company may designate and assist the Company in implementing any Financing;
>
> (d)      Advise the Company on tactics and strategies for negotiating with the Stakeholders;

6

(e)  Render financial advice to the Company and participate in meetings or negotiations with Stakeholders or other appropriate parties in connection with any Refinancing;

(f)  Advise the Company on the timing, nature, and terms of new securities, other consideration, or other inducements to be offered pursuant to any Refinancing; and

(g)  Attend meetings with the board of directors of Vantage Parent with respect to matters on which Lazard has been engaged.

11.    The Services that Lazard will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates.  Lazard has indicated a willingness to act on behalf of the Debtors, on the terms described herein and in the Engagement Letter, and subject itself to the jurisdiction of the Court.  Additionally, the Debtors have been advised by Lazard that it will endeavor to coordinate with the other retained professionals in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.

## Professional Compensation

12.    As set forth in the Engagement Letter, the Debtors and Lazard have agreed to the following compensation and expense structure (the "***Fee and Expense Structure***") in consideration for the Services to be rendered:

(a)  A monthly fixed fee (the "***Monthly Fee***") of $150,000, payable until the earlier of completion of the Financing or Refinancing or the termination of Lazard's engagement.

(b)  A fee payable with respect to any Financing, excluding any portion of the Financing raised from Singaporean Investor (the "***Financing Success Fee***"), equal to 1.25% of the aggregate gross proceeds (including any committed but undrawn amounts) of the Financing, subject to a minimum of $1,000,000.  If any financing is provided by such Singaporean Investor, the fee payable with respect to that portion of the Financing will be equal to 0.25% of the aggregated gross proceeds (including any committed but undrawn amounts).

7

(c)     A fee payable upon completion of any Refinancing (the "***Discount Capture Fee***") in an amount equal to 1% of the "Discount Capture Amount," which is the difference between (i) the aggregate face value (immediately prior to the relevant transaction) of any Existing Obligations involved in such Refinancing and (ii) the aggregate amount of the cash paid by the Company and the fair market value of any other consideration paid and/or exchanged by the Company in connection with such Refinancing, or, in the event of a revision, the fair market value of the Existing Obligations after giving effect to the Refinancing.  No fee shall be payable to Lazard for any repurchases of Existing Obligations made by the Company where such repurchases are made (i) through broker transactions or (ii) directly negotiated by the Company.

(d)     Reimbursement for reasonable expenses incurred by Lazard not to exceed $200,000, including, but not limited to, costs of travel and lodging, data processing and communications charges, courier services, and other expenditures and the reasonable fees and expenses of counsel, if any, retained by Lazard.

The Engagement Letter provides that more than one fee may be payable pursuant to clauses (a), (b), and (c) above, provided that the aggregate amount of all fees pursuant to (a), (b), and (c) above shall not exceed $12,000,000.

13.     As part of the overall compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain indemnification, reimbursement, and contribution obligations as set forth in the Indemnification Letter dated April 23, 2015, attached as **Addendum A** to the Engagement Letter (the "***Indemnification Letter***").  The Indemnification Letter provides that the Debtors will, among other things, indemnify, hold harmless, and provide contribution and reimbursement to Lazard and its affiliates, and the respective directors, officers, members, employees, agents, or controlling persons of each of the foregoing under certain circumstances.  The Debtors understand that such provisions are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11.  *See United Artists Theatre Co. v. Walton* (*In re United Artists Theatre Co.*), 315 F.3d 217, 234 (3d Cir. 2003)

8

(finding indemnification agreement between debtor and financial adviser reasonable under section 328); *see, e.g.*, *In re Radioshack Corp.*, Ch. 11 Case No. 15-10197 (Bankr. D. Del. Mar. 13, 2015) [Docket No. 994]; *In re Longview Power, LLC*, Ch. 11 Case No. 13-12211 (BLS) (Bankr. D. Del. Sept. 24, 2013) [Docket No. 260]; *In re Cengage Learning, Inc.*, Ch. 11 Case No. 13-44106 (ESS) (Bankr. E.D.N.Y. 2013 July 24, 2013) [Docket No. 151]; *In re Exide Technologies, Inc.*, Ch. 11 Case No. 13-11482 (KJC) (Bankr. D. Del. July 11, 2013) [Docket No. 329]; *In re A123 Sys., Inc.*, Ch. 11 Case No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012) [Docket No. 329]; *In re WP Steel Venture, LLC*, Ch. 11 Case No. 12-11661 (KJC) (Bankr. D. Del. July 3, 2012) [Docket No. 486].

14.      The terms and conditions of the Engagement Letter and the Indemnification Letter were negotiated by the Debtors and Lazard at arm's length and in good faith.  The Debtors respectfully submit that the indemnification, contribution, reimbursement, and other provisions contained in the Indemnification Letter, viewed in conjunction with the other terms of Lazard's proposed retention, are reasonable and in the best interests of the Debtors, their estates and creditors in light of the fact that the Debtors require Lazard's services to reorganize successfully.  Accordingly, as part of the Application, the Debtors request that the Court approve the Indemnification Letter and the obligations contained therein.

## Fee Applications

15.      As Lazard's compensation will be paid based on the Monthly Fee, the Financing Success Fee, and the Discount Capture Fee, Lazard requests that it not be required to file time records in accordance with Bankruptcy Rule 2016(a), Rule 2016-2 of the Local Rules, and the U.S. Trustee Fee Guidelines.  Notwithstanding that Lazard is not charging for its services on an hourly basis, Lazard will nonetheless maintain records (in summary format) of its services

9

rendered to the Debtors in one-half hour increments, including reasonably detailed descriptions of those services and the individuals who provided those services, and will present such records in connection with the filing of its interim and final fee applications for allowance of its compensation and expenses with respect to its services with the Court in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable orders of the Court.

16.     Lazard's applications for compensation and expenses will be paid by the Debtors, pursuant to the terms of the Engagement Letter, upon approval by the Court.

## Lazard's Disinterestedness

17.     The Debtors have numerous shareholders, creditors, and other parties with whom they maintain business relationships.  To determine whether it has any conflicts or other relationships that might bear on its retention, Lazard has undertaken a detailed search of the names of individuals and entities provided by the Debtors and/or their representatives that may be parties in interest (collectively, the "***Potential Parties in Interest***").  Lazard has researched its electronic client files and records to determine its connections with the Potential Parties in Interest.  The results of the search are set forth in the Aebersold Declaration.

18.     To the best of the Debtors' knowledge, information, and belief, Lazard does not have any connection with or hold any interest materially adverse to the Debtors, their significant creditors, or any other party in interest, or their respective attorneys or accountants, or the Office of the United States Trustee for the District of Delaware (the "***U.S. Trustee***") or any person employed by the U.S. Trustee, except as disclosed herein and in the Aebersold Declaration.  As set forth in further detail in the Aebersold Declaration, Lazard may represent or

have represented certain of the Debtors' creditors or other Potential Parties in Interest in matters unrelated to this chapter 11 case.

19.    The Debtors retained Lazard in April 2015.  Pursuant to that retention and during the prepetition period, the Debtors paid Lazard in full for all prepetition compensation and expenses.  Accordingly, Lazard is not a creditor of the Debtors.

20.    To the best of the Debtors' knowledge, and except as set forth in the Aebersold Declaration, Lazard is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code.

21.    To the extent Lazard discovers any additional facts bearing in a material respect on its disinterestedness during the period of Lazard's retention in connection with these cases, Lazard will use reasonable efforts to supplement the Aebersold Declaration.

### Basis for Relief Requested

22.    Section 327(a) provides, in relevant part, that the Debtors "with the court's approval, may employ . . . professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist" the debtor in fulfilling its duties under the Bankruptcy Code.

23.    The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based on and made in reliance upon the Aebersold Declaration.  For the reasons set forth above and in the Aebersold Declaration, the Debtors believe that Lazard is a disinterested person as required by section 327(a) of the Bankruptcy Code.

11

**Approval of This Engagement Is Appropriate**
**Pursuant to Section 328(a) of the Bankruptcy Code**

24.     Section 328 of the Bankruptcy Code provides, in relevant part, that a

debtor "with the court's approval, may employ or authorize the employment of a professional

person under section 327 . . . on any reasonable terms and conditions of employment, including

on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."

11 U.S.C. § 328(a).  Thus, section 328(a) permits the Court to approve the terms of Lazard's

engagement as set forth in the Engagement Letter, including the Fee and Expense Structure, and

the terms of the Indemnification Agreement.

25.     As recognized by numerous courts, Congress intended section 328(a) of

the Bankruptcy Code to enable debtors to retain professionals pursuant to specific fee

arrangements to be determined at the time of the court's approval of the retention, subject to

reversal only if the terms are found to be improvident in light of "developments not capable of

being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a); *see*

*also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co.* (*In re Nat'l Gypsum Co.*),

123 F.3d 861, 862–63 (5th Cir. 1997) ("If the most competent professionals are to be available

for complicated capital restructuring and the development of successful corporate reorganization,

they must know what they will receive for their expertise and commitment.").

26.     The Fee and Expense Structure appropriately reflects the nature of the

services to be provided by Lazard and is consistent with the fee structures typically utilized by

leading investment bankers that do not bill their clients on an hourly basis.  Similar fixed and

contingency fee arrangements have been approved and implemented by courts in other large

chapter 11 cases.  *See, e.g.*, *In re Hercules Offshore, Inc.*, Ch. 11 Case No. 15-11685 (KJC)

12

(Bankr. D. Del. Sept. 8, 2015); *In re Dendreon Corp.*, Ch. 11 Case No. 14-12515 (PJW) (Bankr.

D. Del. Dec. 9, 2014); *In re Savient Pharm., Inc.*, Ch. 11 Case No. 13-12680 (MFW) (Bankr. D.

Del. Nov. 19, 2013); *In re Exide Techs.*, Ch. 11 Case No. 13-11482 (KJC) (Bankr. D. Del. July

11, 2013); *In re A123 Sys., Inc.*, Ch. 11 Case No. 12-12859 (KJC) (Bankr. D. Del. Nov. 9, 2012);

*In re Graceway Pharm., LLC*, Ch. 11 Case No. 11-13036 (PJW) (Bankr. D. Del. Oct. 17, 2011);

*In re DSI Holdings, Inc.*, Ch. 11 Case No. 11-11941 (KJC) (Bankr. D. Del. July 19, 2011).

   27. The Debtors believe that the Fee and Expense Structure, including,

without limitation, the indemnification, reimbursement, contribution, and related provisions set

forth in the Engagement Letter and Indemnification Letter are reasonable terms and conditions of

employment and should be approved under section 328(a) of the Bankruptcy Code in light of (i)

industry practice, (ii) market rates charged for comparable services both in and out of the chapter

11 context, and (iii) Lazard's substantial experience with respect to investment banking services.

Further, the Fee and Expense Structure appropriately reflects the nature of the Services Lazard

has agreed to provide.

   28. The Debtors propose that all compensation and expenses will be sought in

accordance with section 328(a) of the Bankruptcy Code and will not be subject to the standard of

review of section 330 of the Bankruptcy Code and will not constitute a "bonus" or fee

enhancement under applicable law.

## Notice

   29. No trustee, examiner, or statutory committee of creditors has been

appointed in these chapter 11 cases.  Notice of this Application has been provided to (i) the

Office of the United States Trustee for the District of Delaware (Attn: Timothy J. Fox Jr., Esq.);

(ii) the Debtors' thirty (30) largest unsecured creditors on a consolidated basis; (iii) Akin Gump

13

Strauss Hauer & Feld LLP, 1333 New Hampshire Avenue, N.W., Washington, DC 20036-1564 (Attn: Scott L. Alberino, Esq. and Meng Ru, Esq.) as counsel to Cortland Capital Market Services LLC, (a) as successor administrative agent under that certain Amended and Restated Term Loan Agreement, dated as of October 25, 2012 and amended and restated as of November 22, 2013 and (b) as successor administrative agent under that certain Second Term Loan Agreement, dated as of March 28, 2013; (iv) Arent Fox LLP, 1675 Broadway, New York, New York 10019 (Attn: Andrew I. Silfen, Esq.) as counsel to Wells Fargo Bank, National Association, in its capacity as (a) indenture trustee and collateral agent for the holders of 7.5% Senior Secured First Lien Notes due 2019 and 7.125% Senior Secured First Lien Notes due 2023, (b) collateral agent for the lenders under that certain Amended and Restated Term Loan Agreement, dated as of October 25, 2012 and amended and restated as of November 22, 2013, that certain Amended and Restated Credit Agreement, dated as of March 28, 2013, and that certain Second Term Loan Agreement, dated as of March 28, 2013, and (c) Pari Passu Collateral Agent under, and as defined in, that certain Amended and Restated Intercreditor Agreement, dated as of October 25, 2012; (v) Milbank, Tweed, Hadley & McCloy LLP, 28 Liberty Street, New York, NY 10005 (Attn: Dennis F. Dunne, Esq. and Evan R. Fleck, Esq.) as counsel to the ad hoc committee of secured term loan lenders and secured noteholders; (vi) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611 (Attn: Richard A. Levy, Esq.) as counsel to the administrative agent under that certain Amended and Restated Credit Agreement, dated as of March 28, 2013; (vii) the Securities and Exchange Commission; (viii) the Internal Revenue Service; (ix) the United States Attorney's Office for the District of Delaware; and (x) all parties who filed a request for service of notices under Bankruptcy Rule 2002. The Debtors respectfully submit that such notice is sufficient under the circumstances.

**No Previous Request**

30.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request entry of the Proposed Order

granting the relief requested herein and such other and further relief as the Court may deem just

and appropriate.

Dated: December 15, 2015
      Wilmington, Delaware

OFFSHORE GROUP INVESTMENT
LIMITED
(for itself and on behalf of its affiliates as
Debtors and Debtors in Possession)

/s/  *Christopher G. DeClaire*
Christopher G. DeClaire
Chief Administrative Officer

15