**UNITED STATES BANKRUTPCY COURT
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| OFFSHORE GROUP INVESTMENT LIMITED, et al, | § § | Case No. 15-12422 (BLS) |
| | | Hearing Date:01/14/2016 |
| | § | Objection Deadline: 1/7/2016 Extended to 1/12/2016 @ 12:00 |
| Debtors[1]. | § | Jointly Administered Related to Doc. 7 & 8 |

**OBJECTION OF HSIN CHI SU AND F3 CAPITAL
TO DISCLOSURE STATEMENT AND PLAN**

Hsin Chi Su ("Su") and F3 Capital, interested parties, file this joint objection to the Disclosure Statement (Doc. No. 8) and Plan (Doc. No. 7)[2], as follows:

**Preliminary Statement**

This case has been on a rocket docket with a Disclosure Statement and Plan filed to coincide with the holidays, the voluminous Plan Supplement filed on Christmas Eve and a further Amended Plan with material changes filed just last night around midnight. The confirmation hearing set for for less than 45 days from the date the petition and confirmation is set to be heard before the Debtors have filed Schedules and Statement of Financial Affairs. The Debtors attempt to favor current management and favored creditors to the detriment of parties like Mr. Su, F3

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Offshore Group Investment Limited; Vantage Delaware Holdings, LLC; Dragonquest Holding Company, Emerald Driller Company; P2020 Rig Co.; P2021 Rig Co.; PT. Vantage Drilling Company Indonesia; Sapphire Driller Company; Vantage Deepwater Company; Vantage Deepwater Drilling, Inc. (3668); Vantage Driller I Co; Vantage Driller II Co; Vantage Driller III Co; Vantage Driller IV Co.; Vantage Driller VI Co.; Vantage Driller ROCO S.R.L.; Vantage Drilling Africa; Vantage Drilling (Malaysia) I Sdn. Bhd.; Vantage Drilling Labuan I Ltd.; Vantage Drilling Netherlands B.V.; Vantage Holding Hungary Kft.; Vantage Holdings Cyprus ODC Limited; Vantage Holdings Malaysia I Co; and Vantage International Management Co.

[2] F3 Capital's and Su's objection to the disclosure statement and plan is not a submission to the jurisdiction or authority of the Bankruptcy Court for the resolution of any matter involving F3 Capital and the Debtors, Vantage Parent Company or the non-Debtor affiliates. Nor is this Objection a waiver of any objections to jurisdiction or venue. F3 Capital does not consent to final orders of the Bankruptcy Court on any issues that affect its rights and/or non-debtor property. All of the foregoing rights are expressly reserved and preserved, without exception, and without the intention or purpose of conceding jurisdiction in any way by this filing or by any other participation in this matter or in these Chapter 11 Cases.

Capital and the public shareholders and creditors of Vantage Drilling Company by taking actions to divest Vantage Drilling Company of assets without complying with Cayman Law. The Debtors suggest that unsecured creditors are unimpaired. However, they are impaired given there is a provision to deny post-petition interest. Furthermore, the universe of unsecured creditors is unknown. The Debtor's Plan and Disclosure Statement also does not deal with the issue of potential maritime claims which would prime other claims and could arise after confirmation.[3]

The Debtors have objected to Su, F3 Capital and Daewoo's standing, refused to continue hearings to allow the appointment of a liquidator for Vantage Drilling Company ("Vantage Parent" or "Vantage"), sought to delay filing its Schedules and Statement of Financial Affairs keeping parties in the dark as to the actual lists of liabilities, creditors, executory contracts and assets of each individual debtor, etc. Mr. Su has been concerned with the lack of transparency and disclosure in the bankruptcy. Vantage is a public company with public shareholders who are being frozen out of the process. The Debtors took advantage of using monies which were ultimately owned by Vantage as the 100% shareholder of the entities to fund millions in legal fees for a restructuring. The proposed restructuring embodied in the Plan of Reorganization seeks to foreclose Vantage's shareholders' rights and seeks to transfer non-debtor property in the bankruptcy.

Su and F3 were given an extension to object to the Disclosure Statement and Plan until January 12, 2015 at 12:00 p.m. Close to midnight on January 11, 2015, the Debtors filed an Amended Plan and Disclosure Statement (Doc. No. 166).

The Amended Plan has material modifications which further dictates that the hearing on the Disclosure Statement and Plan should be continued and the objection deadlines extended. The Amended Plan: i) specifically excludes Mr. Su and any company affiliated with Mr. Su as an

---

[3] The issue of maritime claims would depend on laws of various countries.

{851208-00020 DCB 1/8/2016 01025027.DOCX 1 }    2

exculpated party which further makes him an aggrieved party as a former fiduciary, officer or director of OGIL[4] and treats him differently than other officers and directors of OGIL; ii) the Amended Plan adds additional released parties; iii) changes Class 4.4 to specially allow claims at certain amounts; iv) makes substantial changes to Section 5.3; v) changed the Disputed Claims Process substantially in Section 7.1; and vi) changes the releases in Section 10.7(b).

Mr. Su and F3 have taken a balanced position in this matter with limited objections asserting that hearings and objection deadlines should be extended until a liquidator can be appointed for Vantage Parent to provide an independent review of the Plan on behalf of Vantage Parent. Absent such relief, Su and F3 are forced to preserve rights by filing an objection and continuing to seek adjournment. Regardless of the rights Su or F3 believe they have individually to prosecute the objections set forth herein, they are being forced to take this action, and in fact may not have so acted, if the Debtors had allowed the Cayman Liquidator a reasonable opportunity to determine whether the Debtors' Plan inappropriately restricts the rights of Vantage Parent. Either by design, or as a result of the incidental delayed Cayman Proceeding, Vantage Parent continues to lack an independent voice in this proceeding. The Plan before this Court on expedited consideration, is dependent upon the disintegration of Vantage Parent, without allowing that voice to be heard. Substantive due process rights will be trampled beyond repair if the Liquidator is not afforded an opportunity to appear. Further, the lack of participation of the Liquidator creates uncertainty as to i) the preference claims that Vantage Parent will have under Cayman Law related to any transfers and ii) the rights of Vantage's shareholders regarding Vantage's management agreeing to a voluntary liquidation without a special resolution voted on by shareholders under Cayman Law.

Mr. Su and F3 reassert their request that the confirmation hearing and objection deadlines be extended until such time that a Liquidator has been appointed and has sufficient time to review the matters and incorporates such motion and all exhibits herein. Doc. Nos. 135 and 107. Further, given the material modifications to the Plan, the hearing should be continued, with the objection deadlines and voting deadlines reset. Alternatively, Su and F3 request that the Plan be denied confirmation without prejudice to filing further Amended Plans.

## Standing

### 1) Su Has Standing to Object to the Plan and Disclosure Statement as a Former Fiduciary of OGIL

Determination of standing must be applied broadly to permit parties effected by a Chapter 11 proceeding to appear. *In re Global Industrial Technologies, Inc*., 645 F.3e 201 (3rd Cir 2011). Mr. Su is a former fiduciary of OGIL and as such has a separate claim to standing. *See, In re Flagstaff Foodservice Corp.*, 29 B.R. 215, 218 (Bankr. S.D.N.Y. 1983). (It seems indisputable that the officers' interest in protecting against secondary liability for a debt for which the debtors-in-possession are primarily liable is sufficient to qualify them as parties in interest.) The Plan attempts to treat him differently than other officers and directors of OGIL which makes him an aggrieved party with a pecunariary interest. This treatment gives rise to an independent claim as a Party in Interst with constitutional standing. *See*., *In re New Century TRS Holdings, Inc*., 505 B.R. 431 (D. Bankr. Del. 2014) Mr. Su further would have a claim to indemnification from OGIL for any alleged acts and such claims should be preserved. OGIL's current officers and directors include parties who Mr. Su has sued personally. *See,* Doc. No. 137. They are using their position to favor themselves over others and treat similarly situated parties differently. As such, the Plan is inequitable. Further, the exclusion appears retailiatory. It is

undisputed that Mr. Su is a former fiduciary of OGIL as he signed the Share Purchase Agreement with Vantage Energy Services, Inc. ("VESI") transferring 100% of F3's equity in OGIL to VESI. It is undisputed that F3 Capital was the sole shareholder of OGIL. Doc. No. 150-5. The Share Purchase Agreement is attached as **Exhibit A** hereto. Vantage alleges that by virtue of the Share Purchase Agreement it "contracted to acquire four jack up drilling rigs from Su." See, **Exhibit D** (arbitration demand), p.7. Su alleges that Vantage made material misrepresentations in inducing him to agree to the deal and breached agreements. See, Doc. No. 137-4. Su further alleges he is an aggrieved party with a pecuniary interest because the hard assets the Debtors seek to administer in this case are the subject of the Harris County, Texas litigation and the pending arbitration. If Mr. Su is successful in the litigation, then he could have a claim against the hard assets and the 100% equity interest in OGIL transferred by the Share Purchase Agreement.[5] Further, any effort of Vantage to dispose of any assets without Su's consent while the litigation is pending is an effort to hinder and delay creditors. In this action, the Debtors are aiding and abetting Vantage to attempt to shield assets from litigation claims for the benefit of management, who are defendants in the litigation, and other creditors. This is also inequitable. This goes well beyond the assertion of a claim by an alleged creditor of a nonequity holder . While the facts as set forth above are therefore distinguishable from *In re Leaf123, Inc. (F/K/A Natrol, Inc.* Ca No 14-11446(BLS), even if this Court does not otherwise recognizes the significant direct claims of Mr. Su and F3, the rejection of standing in *In re Leaf123* can also be distinguished because in that case there had been a meeting of Creditors, an appointment of a Creditor's Committee, the filing of initial schedules and amended schedules by the Debtor , the

---

[5] Given the claims arise from contract actions related to vessels, there are potential maritime claims if the Court finds Vantage breached the agreements. The scope of maritime claims are different in the various countries related to the transactions and operation of the vessels. Nothing in the Plan should be deemed to attempt to cut off maritime lien rights of Su or any other party.

establishement of a Bar date and a Separate hearing on the Disclosure Statement and the Plan of Reorganization. The procedural posture of this case and the highly expedited process created to seek confirmation of the Plan necessitates further consideration of the claims asserted herein, particularly before the appointment of a Liquidator in the Cayman proceedings.

**2) F3 Has Standing Given the Debtors Efforts to Aide and Abet Vantage Parent Management in Taking Actions Inconsistent with Cayman Law**

Only after Mr. Su and F3 raised concerns, did the Debtors acknowledge that the Restructuring Plan was defective because Vantage's Board lacked authority to agree to a winding up petition. See, Doc. No. 150-5. Prior to Mr. Su's objection prosecuted last week, this information was concealed from all parties in the Bankruptcy and not set forth in the Disclosure Statement as a material omission. The Disclosure Statement was filed long after the date that Vantage and the Debtors allege they knew of the defect. However, the Companies Law (2013 Revision) was always clear that the directors did not have authority to agree to the Restructuring Agreement and the assertion by Debtor's counsel that a November 2015 case in the Cayman's changed that position is without merit. Regardless, the Disclosure Statement, Plan and Restructuring Agreement were filed after the case was issued. F3 has standing as an oppressed shareholder of Vantage as more fully explained below.

Vantage Drilling Company ("Vantage Parent" or "Vantage") is a Cayman Islands exempt company which is currently being publicly traded over the counter with the trading symbol ("VTGDF") on the OTO exchange. It was previously traded under the trading symbol "VTG" on the NYSE MKT LLC until September 14, 2015, when it was delisted from the NYSE MKT. Vantage informed shareholders of its intent to continue to publicly trade the stock over the counter and stated, "The Company will consider all of its options, including its option to appeal, in responding to this delisting notice. In the meantime, the Company's ordinary shares will trade

on the over the counter markets under the trading symbol VTGDF." *See*, SEC Form 8-K filed September 15, 2015.[6]

On September 29, 2015, after the delisting notice, Vantage filed a Form 8-K[7] with the United States Securities and Exchange Commission ("SEC") which made positive representations including but not limited to the following:

- "Vantage's liquidity position is strong at about $250 million."
- "Vantage has very little scheduled maturities before late 2017, only about $12 million per quarter."
- "Vantage has a new, modern fleet of high specification assets, as well as an outstanding track record and reputation. This puts us in a position to strengthen our company, even during a period of extreme market disruption. Vantage and financial advisor, Lazard, are working to increase the company's equity capitalization, liquidity and balance sheet so that Vantage will be better positioned to meet all challenges until such time as conditions begin to improve."
- "Petrobras Contract Arbitration – Petrobras wrongfully terminated the contract for the Titanium Explorer on August 31, 2015. Backlog of about $1.1 billion (5.5 years) was remaining. Vantage has commenced arbitration proceedings in Texas for recovery of damages." (hereinafter, "the Petrobras claim").

On December 2, 2015, Vantage filed a Form 8-K[8] with the SEC indicating it had entered into the Restructuring Agreemen. The Restructuring Agreement provides, in part, for the following:

- Vantage would commence an official liquidation proceeding under the laws of the Cayman Islands.
- On the Effective Date of the contemplated Chapter 11 Plan in Delaware, Vantage's equity interests in OGIL are to be terminated.
- Several subsidiaries of Vantage, including subsidiaries registered in the Cayman Islands, would file voluntary Chapter 11 Petitions to initiate bankruptcies in the United States Bankruptcy Court for the District of Delaware.
- Vantage's wholly owned subsidiary OGIL was to purchase Vantage's equity interests in Vantage International Management Company, Pte. Ltd and Vantage Energy Services, Inc. The purchase was reportedly going to be at fair market value paid for by a

---

[6] Link to the Form 8-k filed on September 15, 2015 -
http://www.sec.gov/Archives/edgar/data/1419428/000119312515320516/0001193125-15-320516-index.htm
[7] Link to the Form 8-k filed on September 29, 2015 -
http://www.sec.gov/Archives/edgar/data/1419428/000119312515332819/0001193125-15-332819-index.htm
[8] Link to the Form 8-K filed on December 2, 2015 -
http://www.sec.gov/Archives/edgar/data/1419428/000119312515393377/0001193125-15-393377-index.htm

promissory note executed by OGIL. OGIL alleges it is insolvent while also agreeing to provide the promissory note to Vantage.

- The Plan essentially strips Vantage of its ownership of the subsidiaries which are the title owners of the drilling rigs and other valuable assets. The subsidiaries were wholly owned by Vantage. In exchange, Vantage would get a minority equity interest in OGIL, a promissory note and release from OGIL.
- The Restructuring Agreement has a termination clause. One basis for termination is if: "The Board of Directors of Vantage Parent or OGIL . . . determines in good faith based upon the advice of outside counsel that continued performance under the agreement would be inconsistent with the exercise of its fiduciary duties under applicable law."
- The Restructuring Agreement is subject to a New York choice of law provision. See, §15.

On December 3, 2015, the Chapter 11 petitions were filed in this case. On December 11, 2015, contrary to the terms of the Restructuring Agreement and other pleadings of the Debtors indicating Vantage would file a winding up petition, Wells Fargo filed the winding up petition seeking liquidation of Vantage. The Cayman Court has set the initial hearing on the winding up petition for January 18, 2016. At the hearing in this case on January 7, 2016, despite Vantage and the Debtors being opposed to the appointment of a provisional liquidator and making it clear such a request would be challenged, they argued that F3 should have taken action in the Cayman Proceeding if F3 believes there is a concern with the lack of a liquidator being appointed.

The Restructuring Agreement and the Chapter 11 Plan attempts to divest Vantage of the modern fleet of "high specification assets" it heralded to shareholders and others in its September 29, 2015 SEC filings, as well as transfer valuable litigation claims from Vantage to the subsidiaries, including the Petrobras claim by transferring Vantage's rights to non-public subsidiaries without any shareholder vote. The Bankruptcy Court does not have jurisdiction over non-debtor property.

The Disclosure Statement and Plan fail to note that Cayman Islands Companies Law (2013 Revision)[9] provides that transfers shall be deemed to be invalid as a preference when the parties are related and the transfers occur within the six months prior to the filing of a winding up petition per s. 145, Companies Law (2013 Revision). As such, any transfers of Vantage's assets to subsidiaries raise concerns that the transfers shall be invalid as antecedent preferential transactions.  As such, this court should abstain for entering any Order that will support such preference actions.

The Restructuring Agreement between Vantage and the Debtors attempts to oppress Vantage shareholders by denying them a vote on the Vantage Board's agreement to file a winding up petition -- which was a key component of the Restructuring Agreement. The Chapter 11 Debtors aided and abetted Vantage in facilitating the oppression and breach of fiduciary duty. Ultimately, the Vantage management used Wells Fargo to file the Cayman winding up petition in an effort to subvert the requirement for a special resolution on a voluntary winding up, which resolution would require a shareholder meeting.

Vantage's Board acknowledges they did not have authority to agree to a voluntary winding up petition (Doc. No. 150-5). *See,* Companies Law (2013 Revision), Ss. 60 and 90. A voluntary winding up petition is allowed under Cayman Law when there is a special resolution; because the articles expired; or, because an event occurred which the articles dictate necessitates a winding up. *See,* s. 90, Cayman Islands Companies Law (2013 Revision).  None of these occurred in this case. A special resolution requires a shareholder meeting and vote under s. 60 of the Companies Law (2013 Revision). Finally, the articles do not provide for any event which

---

[9] Link to Companies Law (2013 Revision)
file:///C:/Users/Deirdre/Downloads/CompaniesLaw(2013Revision)%20(1).pdf

{851208-00020 DCB 1/8/2016 01025027.DOCX 1 }                9

would trigger a winding up. *See,* **Exhibit C** - Amended and Restated Memorandum and Articles of Association of Vantage Drilling Company (2009).

Furthermore, the supporting affidavits submitted by Vantage's officer supporting the Wells Fargo winding up petition should be deemed acts taken without authority since Vantage did not seek or pass a special resolution authorizing liquidation or authorizing the Board to voluntarialy support liquidation. The filing of the winding up petition by Wells Fargo was a tranparent attempt to make an end run around involving Vantage's shareholders in the process with the Board still voluntarially consenting to liquidate Vantage without authority. The Restructuring Agreement shows the clear intent to try to defy the shareholder's rights. The face of the Companies Law was clear and further caselaw was unnecessary for the Board to comply with the statute. It simply shows that the Vantage Board and Debtors were willing to take any means necessary to oppress the shareholders.

On information and belief, one or more of the Vantage Board and Debtors took these actions supporting the Restucturing Agreement in Houston, Texas. Texas Courts have found a valid cause of action for aiding and abetting shareholder oppression. *Brown v. Pennington*, 2015 Tex. App. LEXIS 6696 (Tex. App. Dallas June 30, 2015) (the court found the plaintiff met its initial burden in pleading a cause of action for aiding and abetting shareholder oppression).

F3 Capital, as an undisputed shareholder of Vantage, is an aggrieved party and pecunarily effected by the joint action of the Debtors and Vantage to try to shut shareholders out of the Bankruptcy process by denying shareholder votes on the winding up process, refusing to provide information generally provided in Bankruptcy proceedings, refusing to extend the hearing dates to allow time for the appointment of a liquidator, and seeking extensions to file Schedules and Statement of Financial Affairs and/or be relieved of the duty all together if the Plan is confirmed

before February 1, 2016 which would conceal from public disclosure the actual creditors, assets and liabilities of each entity, etc.

The Restructuring Agreement allows for termination of the agreement if it is deemed to be inconsistent with the Vantage Board's fiduciary duties. Despite acknowledging that the agreement is inconsistent with Cayman Law albeit for different reasons than set forth herein, the Vantage directors have not sought to terminate the Restructuring Agreement.

Given the lack of authority to agree to a voluntary liquidation under Cayman Islands law, arguably the Restructuring Agreement is void due to such lack of authority given it appears to lack a severability clause.

**3)    F3 Has Standing as a Party with Claims Against the Property of the Debtor Which Are Currently Subject to Litigation**

F3 was issued a note from Vantage which the Debtors acknowledge has a value of over $70 million. The note is not a ordinary note but contains contractual terms related to the vessels. The note is attached hereto as Exhibit A. See, ¶ 8 and 9. The note provides specific conditions related to the Platinum Explorer and is the subject of litigation between Su and Vantage. The note provided Vantage funds necessary for it to acquire the Platinum Explorer. Nothing in the Plan should prejudice F3's rights to exercise collection efforts to the extent available under law against the res - the Platinum Explorer. The note further references the Sale and Purchase Agreement. The note and the related agreements are subject to the litigation pending between Su and Vantage. F3 has a pecunariay interest and is an aggrieved party if there is any effort to discharge claims that relate to the Platinum Explorer and efforts to seek collection against the res.

Case 15-12422-BLS   Doc 173   Filed 01/12/16   Page 12 of 18

## US Government's Objection

The United States requested the following languge in its objection:

> Nothing in the Plan, this Order or the related Plan documents discharges or releases the debtors or any other entity from any debt, obligation, claim, liability or cause of action of the United States and any of its agencies **or impairs the ability of the United States** and any of its agencies to pursue any debt, obligation, claim, liability or cause of action against any Debtor, Reorganized Debtor or non-debtor.  All claims, liabilities, or causes of action of, or to, the United States and any of its agencies shall survive the bankruptcy case as if the case had not been commenced and determined in the manner and by the administrative or judicial tribunals in which such rights or claims would have been resolved or adjudicated if the bankruptcy case had not been commenced. For the avoidance of doubt, the United States shall not have to file any claims in the Debtors' bankruptcy cases.

This language should apply to all creditors, including those like Su and F3 who have litigation claims , unliquidated claims or disputed claims.  Simply put, no one should be impaired by any finding when the Debtors have not disclosed all assets and liabilities and when they are attempting to include non-debtor property in the administration of the estate even when they claim certain parties like Vantage are transferring such asserts while also being insolvent.

## Additional Objections

- **The Disclosure Statement has insufficient information, including but not limited to:**

    - The Debtors have not filed Schedules. The Schedules are due February 1, 2016 – two weeks after the hearing on the Plan and Disclosure Statement – but are excused of the requirement if the Plan is confirmed.  This is inappropriate and weighs against the objectives of bankruptcy to have full disclosure and transparency.
    - The Disclosure Statement is one sided and biased.  In discussing the Disclosure Statement, the Debtors knowingly did not include the fact that the alleged

indictment that the Debtors relied upon in filings in this case (which was uncertified and unsigned) showed that Mr. Padilha relied on connections with Bragg. The Debtors provided no information regarding the relationships with Petrobras and Debtors managmenet in the Disclosure Statement despite asserting they have provided information to authorities and to attack Mr. Su. The Debtors are fully aware that officers and directors of the Debtors were involved in deals many years before Mr. Su was targeted by Vantage. Their relationship with Mr. Padilah goes back as late as 1999 when there are reports of a connection between Mr. Padilha, John O'Leary (a Vantage Director), Bragg and Petrobras.

- o Similarly, in the deals dating back to 1999, Petrobras cancelled a contract. *See e.g.,* http://www.ogj.com/articles/2001/02/maritima-sues-petrobras-over-amethyst-cancellations.html and http://edgar.secdatabase.com/378/89056699001556/filing-main.htm Further, Mr. Padilha was an officer in a Pride subsidiary with Mr. O'Leary.
- o There is insufficient information to support the conclusory allegations that secured creditors are entitled to an approved claim without filing a proof of claim, without any Schedules being filed and without any documentation attached to the Disclosure Statement to support a properly perfected security interest.
- o The Debtors have stated that they will not disclose certain information despite the fact that they have a duty of candid disclosure. *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (1988). The Debtors have failed to satisfy this duty.
- o There is inadequate information on the intercompany claims.
- o There is insufficient information to support feasibility.

- **Debtors assert that the unsecured creditors are unimpaired but the Plan suggests otherwise -** While the Debtors assert that the unsecured creditors are umimpaired, the Plan also asserts that there will be no postpetition interest on claims which is an impairment. See, Section 6.2 of the Plan. As such, the voting process appears to be defective as the unsecured creditors should have been a voting class.

- **The Plan has not been proposed in good faith.** The Plan was based on a Restructuring Agreement which sought to oppress shareholders of Vantage and deny them a vote on liquidating Vantage. Further, the transfer of assets of Vantage in order to make the plan workable was by directors who had a conflict of interest and was while there was pending

litigation with creditors in an effort to hinder and delay those creditors, such as Mr. Su, from collecting on any judgment.

- **Fair Value** - It is not clear that the consideration being received for the assets being transferred between the debtors represents a fair market value, as there was no marketing done and no bids were solicited. The fairness opinion which was submitted is insufficient to support fair value. The basis of the consideration being paid to Vantage parent by OGIL was an assessment done by a management consultant hired by the existing management who relied on projections from current management.  Further, Vantage is receiving a note from OGIL while OGIL claims to be insolvent whereby the note is not for fair value.

- **Against Public Policy** – The selection of the Board of Directors is uncertain and the only certainty is the effort of the Debtors to retain Mr. Bragg which is against public policy. The Debtors propose to have the Ad Hoc Committee select the Boards but does not provided any requirement for independent directors which is against public policy. Further, Bragg should not be on the Board.  Bragg had an employment contract with Vantage which includes a non-compete clause. Vantage's July 17, 2014 Form 8-K contains a copy of Bragg's Employment Agreement with Vantage. The term of the agreement went through July 15, 2017. Arguably, the action of Vantage's management to agree to a winding up and then seek employment with OGIL was a violation of the non-compete.  The Agreement provides that it terminates upon a "change of control" including the "adoption of any plan or proposal for the liquidation or dissolution of the Company." However, in this case, it appears that Vantage's adoption of a plan providing for a winding up petition was without the required special resolution and shareholder vote

and, therefore, arguably the employment contract should not be deemed terminated since the management lacked authority to adopt a plan or proposal. It would appear that the agreement should only be deemed terminated if a Liquidator takes such action to adopt a plan or proposal. Bragg further entered into an employment contract with OGIL to pay him $595,000 which was the amount of his contract with Vantage. Given Bragg's self-dealing, his continued involvement in the Debtors is not in the best interests of the estate.

- **Insufficient Information to Satisfy Requirements of 11 U.S.C. § 109** – The Debtors are foreign entities and on information and belief have no office in Delaware. The Debtors' Disclosure Statement does not provide sufficient information to support each debtor qualifies under Section 109, nor is there support for venue in Delaware. To the extent that the Debtors claim to have administrative actions taken in Houston, there is nothing showing they have a direct office in Houston in the Disclosure Statement, leases or pay rent as subtenants. The fact that one entity may take administrative actions for the foreign entities in Houston does not provide them with a place of business in Houston.

- **Detrimental to Vantage Public Shareholders Without Fair Warning** - The Debtors take the position that the Vantage common stock has no value and is worthless. This is contrary to the September SEC reports filed by Vantage. Further, they take the position that Vantage is hopelessly insolvent. This is troublesome. After Vantage was delisted from the NYSE, Vantage sought to be listed on the pink sheets/OTC and the shares continue to trade as to this day with a significant volume being bought and sold. If Vantage is insolvent and worthless, it is questioned why Vantage did not act to call a shareholder meeting immediately and to terminate the stock. This would have saved the company the huge expenses related to continue to report to the SEC. The Debtors also

refuse to provide direct notice to all of the Vantage shareholders. Further, they are attempting to force the plan through prior to the liquidator being appointed in the Cayman Proceedings to prevent any independent party having an opportunity to represent the interests of Vantage and its creditors/shareholders in this case. It is inequitable, undue burden and prejudicial to individual shareholders to take action against Vantage's property before the Liquidator is appointed.

- **Plan is Speculative and Uncertain** -  The Plan is speculative on its face and is subject to a volatile oil and gas market where there are many uncertainties. Although, most pundits indicate that a long range plan may be advisable because prices are expected to rise just not in the near future. Further, the Plan is speculative and uncertain in that it involves transfers of assets of Vantage which are subject to potential preference actions under Cayman Law and parties cannot rely that such transfers are final given the Bankruptcy Court does not have subject jurisdiction over non-debtor property.

- **Court Lacks Jurisdiction over Non-Debtor Property** – The Debtors' Plan seeks to have the Court exercise jurisdiction over non-debtor property, including substantial rights of Vantage, as discussed above. The plan should be denied for lack of subject matter jurisdiction. Further, Su and F3 have disputed rights related to the ownership interest in OGIL which is the subject of Su's Harris County Counterclaim.

- **The Plan should be denied based on fundamental fairness, due process, interests of comity and equity** - The expedited timing of the plan with such complexity and doing so before a liquidator is approved in the Cayman Proceeding is fundamentally unfair, especially when the Debtors acknowledge that they acted in concert with Vantage to

enter into Restructuring Plan which attempt to foreclose Vantage's shareholders from any vote on a voluntary wind up contrary to Cayman law.

- **Releases, Exclupation and Indeminification –** The release, exculpation and indemnification provisions are objected to as overbroad, unreasonable and should be denied. All claims against the officers and directors and professionals employed by all entities should be preserved in their entirety. While the Debtors have amended the Plan, these provisions are still overbroad and unreasonable. Further, there is an attempt to provide releases of non-debtors which is improper.

- **Conflict of Interest –** The officers and directors of the Debtors are have a conflict of interest with their roles with Vantage, a non-debtor.

WHEREFORE, Su and F3, request that the hearing on the Disclosure Statement and Plan be adjourned to allow time for a Liquidator to be appointed to represent Vantage Drilling Company, or alternatively, be denied for lack of jurisdiction.

Respectfully submitted,

MONZACK MERSKY MCLAUGHLIN AND BROWDER, P.A.

By: */s/Rachel B. Mersky*
RACHEL B. MERSKY (DE Bar No. 2049)
1201 N. Orange Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 656-8162
Facsimile: (302) 656-2769
Email: rmersky@monlaw.com

HOOVER SLOVACEK LLP

By: */s/ Deirdre Carey Brown*
DEIRDRE CAREY BROWN
State Bar No. 24049116

> Galleria Tower II
> 5051 Westheimer, Suite 1200
> Houston, Texas 77056
> Telephone: 713-977-8686
> Facsimile:  713-977-5395
> Email: brown@hooversovacek.com
> *Pro Hac Vice Pending*
>
> **ATTORNEYS FOR HSIN CHI SU and F3 CAPITAL**