**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

---------------------------------------------------------x
: Chapter 11
In re :
: Case No. 15-12422 (BLS)
**OFFSHORE GROUP** :
**INVESTMENT LIMITED,** *et al.*, : Jointly Administered
:
Debtors.[1] : Hearing Date: January 14, 2016
: at 10:00 AM (ET)
---------------------------------------------------------x

**MEMORANDUM OF LAW OF DEBTORS REGARDING**
**NOBU SU'S LACK OF STANDING IN THESE CHAPTER 11 CASES**

Offshore Group Investment Limited ("***OGIL***") and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "***Debtors***"), respectfully submit this memorandum of law regarding the lack of standing of Hsin Chi Su a/k/a Nobu Su ("***Nobu Su***") to participate in these chapter 11 cases and represent as follows:

**Preliminary Statement**

1.  Nobu Su has no legal rights against any Debtor in these chapter 11 cases. His rights against Vantage Drilling Company ("***Vantage Parent***"), the nondebtor shareholder of OGIL, are insufficient as a matter of law to make him a party in interest. At best, Mr. Su is the shareholder of an entity that holds a disputed, unliquidated claim against and equity interest in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Offshore Group Investment Limited; Vantage Delaware Holdings, LLC; Dragonquest Holdings Company; Emerald Driller Company; P2020 Rig Co.; P2021 Rig Co.; PT. Vantage Drilling Company Indonesia; Sapphire Driller Company; Vantage Deepwater Company; Vantage Deepwater Drilling, Inc. (3668); Vantage Driller I Co; Vantage Driller II Co; Vantage Driller III Co; Vantage Driller IV Co.; Vantage Driller VI Co.; Vantage Driller ROCO S.R.L.; Vantage Drilling Africa; Vantage Drilling (Malaysia) I Sdn. Bhd.; Vantage Drilling Labuan I Ltd.; Vantage Drilling Netherlands B.V.; Vantage Holding Hungary Kft.; Vantage Holdings Cyprus ODC Limited; Vantage Holdings Malaysia I Co; and Vantage International Management Co. The Debtors' mailing address is 777 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

Vantage Parent, an out-of-the-money shareholder of OGIL.  He has never been an officer or director of any Debtor (including OGIL once he sold OGIL to Vantage Parent) and therefore is not a fiduciary of the Debtors.  Under prevailing case law, Mr. Su does not have standing based on such indirect interests in the Debtors.  If he believes Vantage Parent, the entity in which he actually has an interest, acted improperly in supporting the Prepackaged Plan, he should be pursuing remedies against Vantage Parent in the appropriate forum, not seeking to disrupt the Debtors' reorganization in this Court.

2.	Furthermore, the only evidence before the Court on valuation demonstrates that the secured claims against the Debtors exceed the Debtors' enterprise value by approximately *$1.5 billion*, meaning that Vantage Parent's equity interests in OGIL are far out of the money.  Moreover, Vantage Parent guaranteed the secured claims against the Debtors and granted a pledge of its shares of OGIL to secure that guarantee, meaning the Debtors' secured creditors are entitled to recover any residual value of OGIL before Vantage Parent's other creditors do.  There is no value available for distribution to Vantage Parent and, therefore, no value available for distribution to its creditors or shareholders of Vantage Parent such as Mr. Su.  There is simply no hope for recovery on Mr. Su's indirect interest in the Debtors, or, at the very best, any such hope is extremely speculative, providing an independent reason why standing is inappropriate in this case.

3.	Accordingly, the Court should find that Nobu Su lacks standing to participate in these cases.[2]

---

[2] The Debtors reserve the right to supplement this memorandum to address any further assertions Mr. Su makes in these chapter 11 cases.

I. **Nobu Su Has No Claim Against or Interest in Any Debtor.**

4. Mr. Su has had four opportunities to date to demonstrate that he holds a claim against a Debtor. First, he filed an objection to the Debtors' employee and cash collateral motions. Second, he filed a motion seeking to continue the hearing to confirm the Amended Joint Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Debtor Affiliates (the "*Prepackaged Plan*") and related relief. Third, he spoke extensively through his counsel at the hearing on that motion (the "*Second Day Hearing*"). And finally, he has now filed an objection to confirmation of the Prepackaged Plan. Although Mr. Su has asserted numerous purported legal rights against the Debtors' shareholder, Vantage Parent, he has made no showing that he has any legal right *against a Debtor*. As discussed below, there is no such connection.

A. **The Texas Action Does Not Implicate the Debtors.**

5. Mr. Su is party to a civil action in the District Court of Harris County, Texas, 295th Judicial District, styled *Vantage Drilling Company v. Hsin-Chi-Su a/k/a "Nobu Su"*, Cause No. 2012-47755 (the "*Texas Action*"). In that action commenced by Vantage Parent, Mr. Su has asserted counterclaims against Vantage Parent (allegedly as the successor in interest to Vantage Energy Services, Inc. ("*VESI*")) and third-party claims against certain members of the Debtors' current or former management (the "*Management Team*"): Paul Bragg, Christopher DeClaire, John O'Leary, Jr., and Christopher Celano. As summarized in **Exhibit A** hereto and set forth fully in **Exhibit B** hereto, those counterclaims do not remotely suggest that Mr. Su holds a claim against OGIL and affirmatively show that he cannot. Tellingly, not a single Debtor is a party to the Texas Action.

6. The gravamen of Mr. Su's counterclaims is that Mr. Su was fraudulently induced to enter into a number of transactions with Vantage Parent and its affiliates, including a

3

Share Purchase Agreement dated August 30, 2007, by and among Vantage Parent, Mr. Su's wholly owned affiliate F3 Capital, and F3 Capital's wholly owned affiliate OGIL, as amended (the "***Share Purchase Agreement***"), whereby F3 Capital sold OGIL to Vantage Parent.[3]  But even a liberal construction of Mr. Su's counterclaims and a cursory review of the Share Purchase Agreement show that Mr. Su's claims are not against any Debtor.  Accordingly, the Texas Action does not implicate the Debtors and does not show a connection between Mr. Su and these chapter 11 cases.  Mr. Su cannot rely on the Texas Action as a basis for standing.[4]

      **B.**    **Nobu Su's Assertions in These Cases Do Not Show a Direct Connection to the Debtors.**

      7.    In these chapter 11 cases, Mr. Su has attempted but failed to assert a direct connection to any Debtor.  First, Mr. Su has asserted that he is entitled to ownership of the shares of OGIL.  He has stated:

> Su has asserted a counterclaim in the Texas state court proceedings against Vantage [Parent] alleging the share purchase agreement whereby F3's equity interest in [OGIL] was the result of fraud, misrepresentations, etc.  [*Sic*.]  As such, *there is a dispute over the rightful owner of the OGIL equity interests* and property rights . . . .

(Emergency Mot. of Hsin Chi Su to Extend Voting Deadlines, Continue Hearing on Final Orders, Continue Hearing on Discl. Stmt. & Plan & Extend Obj. Deadlines [Docket No. 137] ("***Su Emergency Motion***") ¶ 7 (emphasis added).)  Mr. Su's counsel has stated that "Mr. Su has a claim to the equity of OGIL . . . .  That's the subject of the litigation in Harris County, Texas . . . ."  These assertions mischaracterize Mr. Su's own counterclaims and *still* fail to show a

---

[3] Pursuant to an amendment to the Share Purchase Agreement, Vantage Parent was substituted in place of VESI.  A copy of the Share Purchase Agreement, as amended, is attached hereto as **Exhibit C**.

[4] The arbitration pending between Mr. Su and Vantage Parent involves exactly the same dispute and therefore does not implicate a Debtor.  (*See* Su Emergency Mot. Ex. 4 *passim* (arbitration demand raising the same issues described in Su's Texas Action counterclaims).)

4

connection to the Debtors. In the Texas Action, Mr. Su seeks "actual damages of at least $2 billion" (Countercls. ¶ 1) and requests the following additional relief:

1. actual and consequential damages within the jurisdictional limits of this Court;
2. exemplary damages in such an amount as may be found proper and just under the facts and circumstances of this case as determined by a jury;
3. pre-judgment and post-judgment interest as provided by law;
4. costs of suit;
5. such other and further relief to which Su may be justly entitled.

(*Id.* at 27 ("Prayer for Relief").) He did not seek relief in the form of the return of OGIL's shares; Mr. Su is seeking only money from Vantage Parent.

8. Even if Mr. Su had correctly characterized his counterclaims, the Debtors are not, and cannot be, parties to the Texas Action. As described above, Mr. Su alleges in the Texas Action that Vantage Parent and certain members of its current and former management fraudulently induced Mr. Su to sell OGIL's shares to Vantage Parent's predecessor in interest. (*See, e.g.*, *id.* ¶¶ 8 (alleging that Vantage Parent is formerly known as VESI), 51–53 (alleging entry into Share Purchase Agreement), 92 (alleging fraud).) His claims are against Vantage Parent and those individuals—not the Debtors.[5] The Texas Action does not establish a direct connection to any Debtor.

9. Second, Mr. Su has asserted that he "is a 'party in interest' given he has asserted claims related to the Share Purchase Agreement with OGIL which are pending in [Texas] State Court." (Su Emergency Mot. ¶ 18.) Mr. Su does not and cannot have claims *against* OGIL under the Share Purchase Agreement. **Mr. Su personally caused OGIL to enter into the Share Purchase Agreement.** (*See* Share Purchase Agrmt. at 25 (signature of Nobu Su

---

[5] At the Second Day Hearing, Mr. Su's counsel stated that the Share Purchase Agreement is "between OGIL, F3 [Capital,] and VESI. Has nothing to do with Vantage [P]arent." (2d Day Hr'g Tr. 23:3–9.) Although this characterization is inconsistent with his filed Second Amended Counterclaims, neither Vantage Parent nor VESI is a Debtor.

on behalf of OGIL)).  **OGIL could not have fraudulently induced Mr. Su to do that**: Mr. Su's wholly owned company F3 Capital was OGIL's sole shareholder.  (*Id.* at 1 (defining "Shares" as "100 percent (100%) of the share of [OGIL]").)  The Share Purchase Agreement is an agreement between F3 Capital and Vantage Parent relating to the sale by F3 Capital to Vantage Parent of the equity interests in OGIL.  It concerns property of Vantage Parent/VESI, not any property of the Debtors, and does not establish a claim against OGIL or any other Debtor.

10. Third, Mr. Su has asserted that:

> there are Debtors with potential interests related to the arbitration [between Vantage Parent and Mr. Su] who are not parties to the arbitration.  The contracts related to certain claims asserted by Vantage [Parent] are not contracts with Vantage, but with certain Debtors.  Those entities may have claims against officers and directors other than Mr. Su [*sic*].[6]

(Su Emergency Mot. ¶ 9.)  His counsel amplified this statement at the Second Day Hearing, stating: "There is a concern for the [D]ebtors here in that Vantage [Parent] is pursuing potential derivative claims of the [D]ebtors in an arbitration.  That issue hasn't been raised to the Court, but it's certainly apparent from reading the arbitration demand and our response and our counterclaims."  (2d Day Hr'g Tr. 23:19–24.)[7]  Yet these assertions do not suggest that Mr. Su has any legal rights against a Debtor.  They imply only the following:

- that certain unspecified Debtors have "potential interests related to the arbitration" between Mr. Su and Vantage Parent;

- that (certain unspecified) Debtors "may have claims against officers and directors";

- that certain unspecified contracts of "certain [unspecified] Debtors" are "related to certain [unspecified] claims" asserted by Vantage Parent; and

---

[6] Mr. Su is not an officer or director of Vantage Parent or any other Vantage affiliate.  It is unclear what is meant by "officers and directors other than Mr. Su."  (Su Emergency Mot. ¶ 9.)

[7] A copy of the Second Day Hearing transcript is attached hereto as **Exhibit D**.

- that (certain unspecified) Debtors have "potential derivative claims" that Vantage Parent is pursuing against Mr. Su.

(Su Emergency Mot. ¶ 9; 2d Day Hr'g Tr. 23:19–24.) These assertions plainly do not carry Mr. Su's burden to demonstrate that he has standing in these chapter 11 cases. All of these purported legal rights and causes of action are *held by Debtors and Vantage Parent*. None of them shows that *Mr. Su* has a claim against or interest in any Debtor.

11.     Fifth, Mr. Su has asserted that he "had filed limited pleadings in this action." (Su Emergency Mot. ¶ 16.) But Mr. Su's filing of papers in these cases does not establish that he has a legal right against any Debtor.

12.     Finally, Mr. Su has asserted that he has standing because the Disclosure Statement "dedicate[s] several pages to Mr. Su and his interest." (2d Day Hr'g Tr. 22:15–16.) The Court properly rejected this argument. (*See id.* at 22:20–21.)

13.     Consequently, Nobu Su has no direct connection to the Debtors.

## II.     Nobu Su Has Not Met His Burden of Demonstrating That He Has Standing to Participate in These Cases.

### A.     Nobu Su Does Not Have Standing in These Cases.

14.     Mr. Su has the burden to establish his own standing in these chapter 11 cases. *See In re Global Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011). Under section 1109(b) of the Bankruptcy Code, only "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under [chapter 11]." Under section 1128(b) of the Bankruptcy Code, only a "party in interest may object to confirmation of a plan."

15.     To establish standing as a party in interest in the Third Circuit, Mr. Su must demonstrate an "'injury in fact'" that is (i) "concrete," (ii) "distinct and palpable," *and* (iii)

7

"actual or imminent." *Global Indus. Techs.*, 645 F.3d at 210 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  He must also establish that "the injury 'fairly can be traced to the challenged action and is likely to be redressed by a favorable decision.'"  *Id.*  Mr. Su fails to meet this standard because he cannot show that he has any legal rights against a Debtor that are susceptible to an "injury in fact" that is "concrete," "distinct and palpable," or "actual or imminent," let alone all of those things.  *Id.*  He has no direct claim against or interest in any Debtors and offers no evidence to dispute the Debtors' valuation, which plainly demonstrates that the Debtors have no residual value available to distribute to Vantage Parent.  The secured claims in these cases exceed the value of the Debtors' assets by approximately *a billion and a half dollars*.  (*See* Decl. of Brandon Aebersold in Supp. of (A) Approval of the Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code; and (B) Confirmation of the Am. Joint Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Chapter 11 Debtors Pursuant to Section 1129 of the Bankruptcy Code [Docket No. 169] (the "*Aebersold Confirmation Declaration*") ¶ 10.)

16.     Importantly, Mr. Su has not even pointed to exactly what relief sought by the Debtors in connection with this restructuring would cause an injury to him—or even to Vantage Parent. *See In re W.R. Grace & Co.*, 532 F. App'x 264, 267 (3d Cir. July 24, 2013) (the extinguishment of a party's contribution and setoff rights under the debtor's plan was, without more, too speculative an injury to confer standing on the party in the debtor's bankruptcy case). Some hypothetical, theoretical, potential injury is not the concrete, actual or imminent, distinct and palatable injury in fact required by governing case law.

RLF1 13662454V.1

### B. Nobu Su's Rights Against Vantage Parent Do Not Confer Standing on Him to Participate in These Cases.

17. "[P]arty-in-interest standing under § 1109(b) does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding . . . ." *In re Refco, Inc.*, 505 F.3d 109, 117 (2d Cir. 2007). Holders of claims against or interests in a party in interest are not *ipso facto* parties in interest themselves. *See, e.g.*, *In re ANC Rental Corp., Inc.*, 277 B.R. 226, 231–33 (Bankr. D. Del. 2002) (the debtor's competitors' claims against the debtor's contract counterparties did not confer standing on those competitors to be heard in the debtor's bankruptcy case); *Refco, Inc.*, 505 F.3d at 117 (investors in a creditor of the debtor lacked standing to object to a settlement between that creditor and the debtor in the debtor's bankruptcy case); *Innkeepers USA Trust*, 448 B.R. at 144 (an investor in the debtors' securitized debt "has no privity or other relationship with the Debtors which would confer on it standing to be heard"). The court in *ANC Rental* cited with approval *Southern Blvd., Inc. v. Martin Pain Stores (In re Martin Paint Stores)*, 207 B.R. 57, 61–62 (Bankr. S.D.N.Y. 1997): "The doctrine of standing 'embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as *the general prohibition on a litigant's raising another person's legal rights* . . . and the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked.'" *ANC Rental*, 277 B.R. at 232(quoting *Martin Paint*, 207 B.R. at 61 (quoting *Allen v. Wright*, 468 U.S. 737, 104 S. Ct. 3315 (1984))).

18. Two recent cases from the United States Court of Appeals for the Third Circuit illustrate how the Court of Appeals interprets and applies section 1109 of the Bankruptcy Code. First, in *In re Global Industrial Technologies, Inc.*, the Court of Appeals held that the debtors' insurance companies had standing to object to confirmation of the debtors' plan where the plan required them to fund a trust for silica-related personal injury claims. 645 F.3d at 216.

9

In that case, the plan's impact on the insurers was direct and dramatic. Whereas the insurers had previously faced only 169 silica-related claims, *id.* at 214, the debtors' proposal of their plan triggered an "explosion" of over 4,400 new silica-related claims, *id.* Even if the insurers never paid those claims, the debtors' plan imposed significant and immediate administrative and investigative costs on the insurers. *Id.* at 214. By contrast, Mr. Su faces no such harm. Mr. Su is a creditor and indirect shareholder of an out-of-the-money shareholder of OGIL. The Prepackaged Plan does not inflict on him an "injury in fact" that is "distinct and palpable" and "actual or imminent," let alone in the manner that the *Global Industrial Technologies* plan harmed the insurers in that case. *Id.* at 210.

19. Second, in *In re W.R. Grace & Co.*, 532 F. App'x 264 (3d Cir. 2013), the Court of Appeals held that Garlock Sealing Technologies, LLC ("**Garlock**"), the debtor's codefendant in asbestos-related actions, did not have standing because the debtor's plan inflicted no harm on it. *Id.* at 268. The debtor's proposed plan established a personal injury trust that would pay the debtor's current and future asbestos-related claims only 25% to 35% of their liquidated values. *Id.* at 265. Garlock contended that the plan harmed Garlock by capping the debtor's contribution payments to Garlock for future asbestos liability. *Id.* at 267. Yet, because Garlock had never actually sought contribution from the debtor, the Court of Appeals held that any harm to Garlock was "speculative." *Id.* Here, Nobu Su has failed to allege an injury that rises even to the level of Garlock's. He has presented *no* evidence showing that he has a "distinct and palpable" and "actual or imminent" injury resulting from the Prepackaged Plan. *Global Indus. Techs.*, 645 F.3d at 210. His rights against the Debtors are nonexistent or at the very best merely speculative, and similar to Garlock in *W.R. Grace*, he never sought recovery from the Debtors. The prospect for Vantage Parent recovering against the Debtors is likewise

10

speculative based on the evidence before the court. It is precisely to prevent someone whose rights against a debtor are so speculative to come in, cause the extension of limited resources, and change the direction of the case that the standing rules exist in the first place.

20. Mr. Su may be frustrated that nondebtor Vantage Parent—his only borrower in this restructuring—can no longer look to the residual value of the Debtors to satisfy its obligations to him. But, as a matter of law, this does not render him a party in interest. He also does not present any evidence to counter the Debtors' valuation (except his counsel's assertion that because the stock of Vantage Parent trades on the "pink sheets," it must have positive value). Mr. Su has no "interest in the outcome of the case[s] that would require representation, or a[ny] pecuniary interest that will be directly affected by the case[s]." *In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011).

21. The party with standing to address Vantage Parent's interests in the chapter 11 is Vantage Parent. If Mr. Su believes that Vantage Parent is not pursuing such interests appropriately, Mr. Su's complaints belong in another forum – not this court. *Refco*, 505 F.3d at 118 (in rejecting the standing of an investor in a creditor of the debtor, the court noted that "it may be that the [directors of the creditor] violated their fiduciary duties by entering [into] a settlement that was not in the best interest of Investors. That issue, however, is not for the bankruptcy court. Bankruptcy Courts are primarily courts of equity, but they are not empowered to address *any* equitable claim tangentially related to the bankruptcy proceeding. Bankruptcy court is a forum where creditors and debtors can settle their disputes *with each other*. Any internal dispute between a creditor and that creditor's investor belongs elsewhere.") (emphasis in original).[8] As explained in the Statement of James Stuart Eldridge in Support of (A) Approval of

---

[8] The court further explained that "a bankruptcy court's obligation is to determine whether a settlement is in the best interest of *the estate*, not to ensure that the *creditors'* representatives are honoring their

11

the Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code and (B) Confirmation of the Amended Joint Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors Pursuant to Section 1129 of the Bankruptcy Code [Docket No. 174] (the "*Eldridge Statement*"), Mr. Su had various actions he could have pursued in the Caymans Island – for example, he could have sought an injunction in the Cayman Islands (Eldridge Stmt. ¶ 51) or he could have sought a provisional liquidator in the Caymans proceedings on an expedited basis (*id.* ¶ 50). Mr. Su did not take any of those actions. However, even if Mr. Su did not have any options under Cayman law to stop what he believed was wrong action on behalf of Vantage, it still would not be appropriate for him to use this Court to seek redress. He invested in a Cayman Islands company with all the attendant benefits and risks, including whatever rights exist by a shareholder of a Cayman Islands company to seek redress under applicable law for alleged breaches of fiduciary duty or other wrongdoings. Mr. Su is simply complaining in the wrong place.

22. As the Court is aware, the Court recently determined a similar standing dispute in *In re Leaf123, Inc. (f/k/a Natrol, Inc.)*, Ch. 11 Case No. 14-11446 (BLS) (Bankr. D. Del. June 9, 2015) ("*In re Natrol*") (ECF No. 1246). There, an indenture trustee for notes issued by the nondebtor parent company of the nondebtor parent company of the debtors objected to the debtors' chapter 11 plan, asserting that the plan diverted funds away from the nondebtor parent's creditors. *See* Obj. of Citibank, N.A., London Branch, to Confirmation of Joint Liquidating Plan of Leaf123, Inc. (f/k/a Natrol, Inc.) and Its Affiliated Debtors ¶¶ 39–46, *In re Natrol* (ECF No. 1128). The Court, relying on Global Industrial Technologies, held that the indenture trustee

---

fiduciary duties." *Id.* at 119 (quoting *Nellis v. Shugrue*, 165 B.R. 115, 121 (S.D.N.Y. 1994) (Sotomayor, J.) (emphasis in original). Moreover, it quoted with approval the lower court's observation that "it would be 'extremely unfair to debtors' to force them to negotiate not only with the legal representatives of creditors, but also with any interest holders of a creditor." *Id.*

lacked standing under Article III and section 1109 of the Bankruptcy Code. 5/8/15 Hr'g Tr. 64:7–20, *In re Natrol* (ECF No. 1186-1). The Court stated, among other things:

> I understand as a strategic and economic decision how there may be some sort of relief that would indirectly be accruing to Citibank by either delay or denial of confirmation of this plan. But as a practical matter that is perhaps an economic stake, a financial stake, but not a legal stake that this Court can properly recognize. And, therefore, I am not satisfied that Citibank has standing.

*Id.* at 65:16–22. Here, Nobu Su's connection to the chapter 11 Debtors is even more attenuated than Citibank's connection to the Natrol debtors. Nobu Su has no "economic stake" or "financial stake" in these cases because OGIL is hopelessly insolvent. And his "legal stake" is similarly attenuated. He stands in much the same position as Citibank did in Natrol and should likewise be denied standing in these cases.

23.     Accordingly, as a matter of law, Mr. Su's rights against Vantage Parent do not confer standing on him to participate in these chapter 11 cases.

**C.    Nobu Su Has No Right to Speak on Vantage Parent's Behalf.**

24.     Finally, Mr. Su has asserted several ways in which these chapter 11 cases purportedly impact Vantage Parent and its stakeholders. Those include the following:

- "Vantage [Parent] and its shareholders and creditors have [unspecified] pecuniary interests that are affected by how [Vantage Parent's unspecified] property is used in this bankruptcy." (2d Day Hr'g Tr. 24:8–13.)

- "The proposal in [the Prepackaged Plan] also would change and dilute the shareholders of Vantage [Parent]. That's another pecuniary interest that shareholders have." (*Id.* at 24:20–22.)

- "As the sole owner of F3 [Capital], a shareholder of Vantage [Parent], Su also has a pecuniary interest with the Liquidator being afforded an opportunity to provide independent representation of Vantage[ Parent]'s interests in these cases for the benefit of Vantage[ Parent]'s creditors and shareholders. . . . Su also has pending claims against Vantage [Parent] and any effort to affect the property of Vantage [Parent] in these proceedings affects his and his wholly owned company, F3[ Capital]'s, pecuniary interests." (Su Emergency Mot. ¶ 18.)

13

- "Mr. Su has a pecuniary interest in having a liquidator pursue those [unspecified] claims because he is creditor and shareholder [of Vantage Parent]. Instead of paying us to respond and come out here, he would have the estate fiduciary to represent those interests. That's a pecuniary interest that Mr. Su has." (2d Day Hr'g Tr. 26:2–7.)

- "[Vantage Parent] is a public company with numerous common shareholders who should have an independent party fulfilling the duty to represent shareholders' and creditors' interests in these proceedings given the sweeping changes the Debtors are proposing for their benefit and the benefit of other non-Debtors with the [Vantage Parent] shareholders interests being diluted. [*Sic*.]" (Obj. of Hsin Chi Su to a Final Orders [sic] Being Entered on the (1) Mot. to Pay Employee Wages (Doc. No. 14 & 17) & (2) Mot. to Approve Use of Cash Collateral [Docket No. 107] at 2.)

As explained above these assertions about alleged harm to Vantage Parent do not satisfy the standing requirements, as Mr. Su does not speak for Vantage Parent. The assertions are particularly meritless when Vantage Parent itself is so out of the money. Vantage Parent's equity in OGIL is worth $1.5 billion less than the secured claims against it. (*See* Aebersold Confirmation Decl. ¶ 10.) Mr. Su has presented no evidence challenging this valuation.[9]

---

[9] Finally, Mr. Su has suggested that the Debtors may be solvent because shares of Vantage Parent trade in the over-the-counter pink sheets market. (*See* 2d Day Hr'g Tr. 52:22–53:6.) In the OTC Markets pink sheets, Vantage Drilling Company stock is listed as a "Grey Market" security, meaning that it "is not currently traded on the OTCQX, OTCQB or OTC Pink marketplaces. Broker-dealers are not willing or able to publicly quote [Grey Market] securities because of a lack of investor interest, company information availability or regulatory compliance." http://www.otcmarkets.com/stock/ VTGBF/quote (last visited Jan. 12, 2016). Second, as the Court has characterized, "trading in the pinks, that's a lifestyle choice." (2d Day Hr'g Tr. 53:7–8.) OTC Markets operates the pink sheets inter-dealer quotation system and the securities involved therewith "are quoted on the OTC Link [electronic inter-dealer quotation system]." http://www.otcmarkets.com/risk-warning (last visited Jan. 12, 2016). As the Securities Exchange Commission has stated:

> OTC Link does not require companies whose securities are quoted on its systems to meet any listing requirements. With the exception of some foreign issuers, the companies quoted on OTC Link tend to be closely held, extremely small and/or thinly traded. Most of these issuers do not meet the minimum listing requirements for trading on a national securities exchange, such as the New York Stock Exchange or the Nasdaq Stock Market. Many of these companies do not file periodic reports or audited financial statements with the SEC, making it very difficult for investors to find current, reliable information about those companies. For all of these reasons, companies quoted on OTC Link can be among the most risky investments.

SEC.gov | Pink Sheets, http://www.sec.gov/answers/pink.htm (last visited Jan. 12, 2016). The pink sheets' price quotations are "too uncertain, shadowy, and speculative, to form any sound foundation for the determination of value." *Pandolfo v. U.S.*, 128 F.2d 917, 921 (10th Cir. 1942). Even if the equity of

25. Mr. Su's assertions (and his stated desire to have someone else bear the costs of taking his positions) can be analogized somewhat to an out-of-the-money shareholder's request for the appointment of an equity committee, only one step removed (as Mr Su is a shareholder an out-of-the-money shareholder (F3) of an out-of-the-money shareholder (Vantage Parent) of the Debtors). "[I]f equity holders have no reasonable prospect of receiving a meaningful distribution, an equity committee could serve no legitimate role in negotiating a plan." *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009). "When a debtor appears to be hopelessly insolvent, an equity committee is not generally warranted 'because neither the debtor nor the creditors should have to bear the expense of negotiating over the terms of what is in essence a gift.'" *In re Williams Commc'n Group, Inc.*, 281 B.R. 216, 220 (Bankr. S.D.N.Y. 2002) (quoting *In re Emons Indus.*, 50 B.R. 692, 694 (Bankr. S.D.N.Y. 1985)). The only valuation evidence offered in these chapter 11 cases shows that the Debtors are insolvent by approximately $1.5 billion. (*See* Aebersold Decl. ¶ 10.) There is no "reasonable prospect" that Vantage Parent could obtain a monetary distribution on account of its equity in OGIL. Vantage Parent's own stakeholders, including Mr. Su, have no need for a fiduciary to represent them in these cases on account of their worthless equity interests.

## III. <u>Conclusion</u>

26. Nobu Su is not a party in interest in these cases. He has no claim against or interest in a Debtor, and he is not entitled to any of the residual value of the Debtors' estates. In contrast, his requested relief has the potential to cause grave harm to real, direct parties in

---

Vantage Parent did have value—which it does not—Mr. Su has not demonstrated that such value is attributable to the shares of OGIL rather than Vantage Parent's other assets. The Debtors' valuation evidence shows that it clearly is not. And Mr. Su concedes that the shares of Vantage Parent have only "de minimis value." (2d Day Hr'g Tr. 53:11–13.) Mr. Su's reliance on the pink sheets as the measure of Vantage Parent's interest in OGIL is patently insufficient.

interest.  For the reasons set forth above, the Court should find that Nobu Su lacks standing to participate in these chapter 11 cases.

Dated: January 12, 2016
      Wilmington, Delaware

/s/ *Zachary I. Shapiro*
RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Daniel J. DeFranceschi (No. 2732)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

-and-

WEIL, GOTSHAL & MANGES LLP
Ray C. Schrock, P.C.
Ronit J. Berkovich
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for the Debtors
and Debtors in Possession*