## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------x
                                          :
In re                                     :      Chapter 11
                                          :
OFFSHORE GROUP                            :      Case No. 15-12422 (BLS)
INVESTMENT LIMITED, et al.,               :
                                          :      Jointly Administered
            Debtors.¹                     :
                                          :      Re: Docket No. 166
------------------------------------------------------x
```

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
### (I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT PURSUANT
### TO SECTIONS 1125 AND 1126(b) OF THE BANKRUPTCY CODE, (B) SOLICITATION
### OF VOTES AND VOTING PROCEDURES, AND (C) FORMS OF BALLOTS, AND
### (II) CONFIRMING THE AMENDED JOINT PREPACKAGED CHAPTER 11 PLAN OF
### OFFSHORE GROUP INVESTMENT LIMITED AND ITS AFFILIATED DEBTORS

Offshore Group Investment Limited ("*OGIL*") and its affiliated debtors in the

above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the

"*Debtors*"), having proposed and filed (A) the Joint Prepackaged Chapter 11 Plan of Offshore

Group Investment Limited and its Affiliated Debtors, dated as of December 1, 2015 and filed

with the United States Bankruptcy Court for the District of Delaware (the "*Court*") on December

3, 2015 [Docket No. 7], as amended on January 11, 2016 [Docket No. 166] (as supplemented by

the Plan Supplement (defined below), and as otherwise amended in accordance with the terms

thereof and this Order, the "*Prepackaged Plan*"), annexed hereto as **Exhibit A**, and that certain

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:  Offshore Group Investment Limited; Vantage Delaware Holdings, LLC; Dragonquest Holdings Company; Emerald Driller Company; P2020 Rig Co.; P2021 Rig Co.; PT. Vantage Drilling Company Indonesia; Sapphire Driller Company; Vantage Deepwater Company; Vantage Deepwater Drilling, Inc. (3668); Vantage Driller I Co; Vantage Driller II Co; Vantage Driller III Co; Vantage Driller IV Co.; Vantage Driller VI Co.; Vantage Driller ROCO S.R.L.; Vantage Drilling Africa; Vantage Drilling (Malaysia) I Sdn. Bhd.; Vantage Drilling Labuan I Ltd.; Vantage Drilling Netherlands B.V.; Vantage Holding Hungary Kft.; Vantage Holdings Cyprus ODC Limited; Vantage Holdings Malaysia I Co; and Vantage International Management Co.  The Debtors' mailing address is 777 Post Oak Boulevard, Suite 800, Houston, Texas 77056.

supplement to the Prepackaged Plan, dated and filed with the Court on December 24, 2015

[Docket No. 101] (as the documents contained therein have been or may be further amended or

supplemented, including as supplemented on January 12, 2016 and January 13, 2016 [Docket

Nos. 177 and 180], the "*Plan Supplement*") and (B) (i) the Disclosure Statement for Joint

Chapter 11 Plan of Offshore Group Investment Limited and its Affiliated Debtors, dated as of

December 2, 2015 (the "*Disclosure Statement*") [Docket No. 8], and (ii) appropriate ballots for

voting on the Prepackaged Plan, in the forms attached as Exhibits "B" through "E" to the

Affidavit of Service of Solicitation Packages and Other Documents (the "*Epiq Service

Affidavit*"), sworn to by Jane Sullivan of Epiq Bankruptcy Solutions, LLC, the Debtors'

balloting and subscription agent ("*Epiq*"), and filed with the Court on December 14, 2015

[Docket No. 81] having been duly transmitted to holders of Claims[2] and Interests in compliance

with the procedures (the "*Solicitation Procedures*") set forth in the Epiq Service Affidavit and

the Declaration of Jane Sullivan on behalf of Epiq Bankruptcy Solutions, LLC Regarding Voting

and Tabulation of Ballots Cast on Joint Chapter 11 Plan of Offshore Group Investment Limited

and Its Affiliated Debtors and filed with the Court on January 11, 2016 [Docket No. 170] (the

"*Voting Certification*"); and the Court having entered the Order (I) Scheduling Combined

Hearing to Consider (A) Approval of Disclosure Statement, (B) Approval of Solicitation

Procedures and Forms of Ballots, and (C) Confirmation of the Prepackaged Plan;

(II) Establishing an Objection Deadline to Object to the Disclosure Statement and Prepackaged

Plan; (III) Approving the Form and Manner of Notice of Combined Hearing, Objection

Deadline, and Notice of Commencement; and (IV) Authorizing, but Not Directing, Filing

Consolidated List of Creditors; (V) Extending Time, and upon Plan Confirmation, Waiving

---

[2] Capitalized terms used but not otherwise defined shall have the meanings ascribed to them in the
Prepackaged Plan.

Requirement of Filing Statement of Financial Affairs and Schedules of Assets and Liabilities;

(VI) Waiving Requirement to Convene the Section 341 Meeting of Creditors; and (VII)

Approving (A) the Rights Offering Procedures, (B) Backstop Agreement, and (C) Backstop

Premium Consideration, Transaction Expenses, and Indemnification Obligations in Connection

Therewith (the "*Scheduling Order*") [Docket No. 37], which, among other things, scheduled the

hearing to approve the Disclosure Statement for January 14, 2016 (the "*Disclosure Statement*

*Hearing*"), to be immediately followed by a hearing to consider confirmation of the Prepackaged

Plan (the "*Confirmation Hearing*," and together with the Disclosure Statement Hearing, the

"*January 14 Hearings*"); and due notice of the January 14 Hearings having been given to

holders of Claims against and Interests in the Debtors and other parties in interest in compliance

with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "*Bankruptcy*

*Rules*"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy

Court for the District of Delaware (the "*Local Rules*"), the Scheduling Order, and the

Solicitation Procedures, as established by the affidavits of service, mailing, and/or publication

filed with the Court, including (i) the Affidavit of Service of Carol Zhang regarding the Notice of

Commencement of Cases Under Chapter 11 of the Bankruptcy Code and Summary of Joint

Prepackaged Chapter 11 Plan and Notice of Hearing to Consider (A) Debtors' Compliance with

Disclosure Requirements and (B) Confirmation of Plan of Reorganization [Docket No. 55],

(ii) the Affidavit of Edward Silva Regarding Publication of Notice of Commencement of Cases

Under Chapter 11 of the Bankruptcy Code and Notice of Hearing to Consider (A) Debtors'

Compliance with Disclosure Requirements and (B) Confirmation of Prepackaged Plan of

Reorganization in the *Houston Chronicle* [Docket No. 96], and (iii) the Affidavit of Jeb Smith

Regarding Publication of Notice of Commencement of Cases Under Chapter 11 of the

Bankruptcy Code and Notice of Hearing to Consider (A) Debtors' Compliance with Disclosure

Requirements and (B) Confirmation of Plan of Reorganization in the *Wall Street Journal*

[Docket No. 97] (such affidavits, collectively, the "*Notice Affidavits*"), and such notice being

sufficient under the circumstances and no further notice being required; and due notice of the

Plan Supplement having been given to holders of Claims against and Interests in the Debtors and

other parties in interest in compliance with the Bankruptcy Code, the Bankruptcy Rules, the

Solicitation Procedures, as established by the Affidavit of Service of Konstantina Haidopoulos

regarding the Plan Supplement for Joint Prepackaged Chapter 11 Plan of Offshore Group

Investment Limited and its Affiliated Debtors [Docket No. 106], and such filings and notices

thereof being sufficient under the circumstances and no further notice being required; and based

upon and after full consideration of the entire record of the January 14 Hearings, including (I) the

Disclosure Statement, the Prepackaged Plan (including the Plan Supplement), and the Voting

Certification, (II) the Declaration of Christopher G. DeClaire in Support of (A) Approval of the

Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code;

(B) Approval of Prepetition Solicitation of Votes, Voting Procedures, and Forms of Ballots; and

(C) Confirmation of the Amended Joint Prepackaged Chapter 11 Plan of Offshore Group

Investment Limited and Its Affiliated Debtors Pursuant to Section 1129 of the Bankruptcy Code,

dated January 11, 2016 (the "*DeClaire Declaration*") [Docket No. 168], and (III) the Declaration

of Brandon Aebersold in Support of (A) Approval of the Disclosure Statement Pursuant to

Sections 1125 and 1126(b) of the Bankruptcy Code; and (B) Confirmation of the Amended Joint

Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors

Pursuant to Section 1129 of the Bankruptcy Code, dated January 11, 2016 (the "*Aebersold*

*Declaration*") [Docket No. 169] (together with the DeClaire Declaration, the "*Supporting*

*Declarations*"); and objections to the approval of the Disclosure Statement or confirmation of

the Prepackaged Plan all being withdrawn or stricken by the Court; and the Court being familiar

with the Disclosure Statement and the Prepackaged Plan and other relevant factors affecting the

Debtors' chapter 11 cases; and the Court being familiar with, and having taken judicial notice of,

the entire record of the Debtors' chapter 11 cases; and upon the arguments of counsel and the

evidence proffered and adduced at the January 14 Hearings; and the Court having found and

determined that the Disclosure Statement should be approved and the Prepackaged Plan should

be confirmed as reflected by the Court's rulings made herein and at the January 14 Hearings; and

after due deliberation and sufficient cause appearing therefor; the Court hereby **FINDS,**

**DETERMINES, AND CONCLUDES** that:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

      A.      <u>Findings and Conclusions</u>.  The findings and conclusions set forth herein

and in the record of the January 14 Hearings constitute the Court's findings of fact and

conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made

applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following

findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the

following conclusions of law constitute findings of fact, they are adopted as such.

      B.      <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.

The Court has jurisdiction over the Debtors' chapter 11 cases pursuant to 28 U.S.C. §§ 157 and

1334, and the *Amended Standing Order of Reference from the United States District Court for*

*the District of Delaware* dated February 29, 2012.  Approval of the Disclosure Statement and

confirmation of the Prepackaged Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and

this Court has jurisdiction to enter a final order with respect thereto.  The Debtors are eligible

debtors under section 109 of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper plan proponents under section 1121(a) of the Bankruptcy Code.

        C.        <u>Chapter 11 Petitions</u>.  On December 3, 2015 (the "***Petition Date***"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (the "***Chapter 11 Cases***").  The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code.  No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code.  Further, in accordance with an order of this Court, the Debtors' cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

        D.        <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

        E.        <u>Burden of Proof</u>.  Each of the Debtors has met the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

        F.        <u>Adequacy of Disclosure Statement</u>.  The Disclosure Statement (a) contains sufficient information of a kind necessary to satisfy the disclosure requirements of all applicable non-bankruptcy law, including the Securities Act of 1933, as amended (the "***Securities Act***"), (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in

section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions set forth therein, and (c) is approved in all respects.

G. Voting. As evidenced by the Epiq Service Affidavit and Voting Certification, votes to accept or reject the Prepackaged Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

H. Solicitation. Prior to the Petition Date, the Prepackaged Plan, the Disclosure Statement, and the Ballots, and, subsequent to the Petition Date, notice of the January 14 Hearings, were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the Scheduling Order. The forms of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and were appropriate for holders of Claims and Interests in Class 3 (Revolving Credit Facility Claims), Class 4 (Secured Debt Claims), and Class 8 (Existing OGIL Interests) – the Classes of Claims and Interests entitled under the Prepackaged Plan to vote to accept or reject the Prepackaged Plan. The continued postpetition solicitation of such voting classes was proper and in compliance with section 1125(g) of the Bankruptcy Code. The period during which the Debtors solicited acceptances to the Prepackaged Plan was a reasonable period of time for holders to make an informed decision to accept or reject the Prepackaged Plan. The Debtors were not required to solicit votes from the holders of Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), and Class 6 (Intercompany Claims) as each such class is Unimpaired under the Prepackaged Plan. The Debtors also were not required to solicit votes from the holders of Class 7 (Subordinated Claims) and Class 9 (Intercompany Interests), as such Classes receive no recovery under the Prepackaged Plan and are deemed to

reject the Prepackaged Plan.  As described in and as evidenced by the Epiq Service Affidavit, the Voting Certification, and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, the Ballots, the notice of the January 14 Hearings, and publication of such notice of the January 14 Hearings (all of the foregoing, the "*Solicitation*") was timely, adequate, and sufficient under the circumstances.  The Solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and any other applicable rules, laws and regulations.  The Released Parties are entitled to the protection of section 1125(e) of the Bankruptcy Code.

      I.      <u>Rights Offering</u>.  The Rights Offering was conducted in accordance with the Rights Offering Procedures.

      J.      <u>Notice</u>.  As is evidenced by the Epiq Service Affidavit, the Voting Certification, and the Notice Affidavits, the transmittal and service of the Prepackaged Plan, the Disclosure Statement, and the Ballots were adequate and sufficient under the circumstances, and all parties required to be given notice of the January 14 Hearings (including the deadline for filing and serving objections to confirmation of the Prepackaged Plan) have been given due, proper, timely, and adequate notice in accordance with the Scheduling Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law and such parties have had an opportunity to appear and be heard with respect thereto.  No other or further notice is required.

      K.      <u>Plan Supplement</u>.  On December 24, 2015, January 12, 2016, and January 13, 2016, the Debtors filed the Plan Supplement containing the following documents

(i) Amended and Restated Credit Facility Agreement, (ii) New Second Lien Notes Indenture, (iii) New Second Lien Intercreditor Agreement, (iv) New Secured Convertible PIK Notes Indenture, (v) New Third Lien Intercreditor Agreement, (vi) Form of Stapled Units, (vii) New Shareholders Agreement, (viii) Registration Rights Agreement with Holders, (ix) Registration Rights Agreement with Vantage Parent, (x) Amended Organizational Documents, (xi) Revised Organizational Chart, and (xii) Directors and Officers of Reorganized Debtors.

L.    Modifications of the Prepackaged Plan. On January 11, 2016, the Debtors filed the Amended Joint Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors [Docket No. 166]. Modifications made to the Prepackaged Plan since the Solicitation (i) complied in all respects with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and (ii) do not require re-solicitation of votes with respect to the Prepackaged Plan. Adequate and sufficient notice of such modifications has been given, no further notice is or shall be required, and such modifications are approved in full. The votes cast to accept the Prepackaged Plan are deemed to have been cast with respect to the Prepackaged Plan as so modified.

**Compliance with the Requirements of Section 1129 of the Bankruptcy Code**

M.    Prepackaged Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Prepackaged Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Prepackaged Plan is dated and identifies the Debtors as proponents, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims, Fee Claims, and Priority Tax Claims, which need not be classified, Articles III and IV of the Prepackaged Plan classify nine (9) Classes of Claims against

and Interests in the Debtors.  The Claims and Interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Prepackaged Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests.  The Prepackaged Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b)      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III and IV of the Prepackaged Plan specify that Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), and Class 6 (Intercompany Claims) are unimpaired under the Prepackaged Plan within the meaning of section 1124 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c)      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles III and IV of the Prepackaged Plan designate Class 3 (Revolving Credit Facility Claims), Class 4 (Secured Debt Claims), Class 7 (Subordinated Claims), Class 8 (Existing OGIL Interests), and Class 9 (Intercompany Interests) as impaired within the meaning of section 1124 of the Bankruptcy Code and specify the treatment of the Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d)      No Discrimination (11 U.S.C. § 1123(a)(4)).  The Prepackaged Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e)      Implementation of the Prepackaged Plan (11 U.S.C. § 1123(a)(5)).  The Prepackaged Plan and the various documents and agreements set forth in the Plan Supplement

provide adequate and proper means for the implementation of the Prepackaged Plan, thereby

satisfying section 1123(a)(5) of the Bankruptcy Code, including, without limitation, (i) the

continued corporate existence of the Reorganized Debtors, (ii) all corporate action as set forth

more fully in Section 5.1(b) of the Prepackaged Plan, (iii) funding of the Prepackaged Plan,

(iv) the cancellation of certain securities and agreements, (v) the cancellation of certain existing

security interests, (vi) the composition of the board of directors and list of officers of each

Reorganized Debtor, (vii) the adoption of the Management Incentive Program, (viii) the entry

into the New Shareholders Agreement, (ix) the authorization, issuance, and delivery of the New

Common Shares, (x) the entry into the New Secured Debt Agreements, (xi) the entry into the

New Intercreditor Agreements, (xii) the Rights Offering, (xiii) the entry into the Registration

Rights Agreements, (xiv) subject to the exceptions set forth in Section 5.14 of the Prepackaged

Plan, the continuation of all Intercompany Interests held by OGIL or a direct or indirect

subsidiary of OGIL, (xv) the treatment of the New Secured Convertible PIK Notes and the New

Common Shares to which such notes will be "stapled" together as constituting a single

instrument, and (xvi) the taking of all necessary or appropriate actions by the Debtors or

Reorganized Debtors, as applicable, to effectuate the Restructuring Transactions under and in

connection with the Prepackaged Plan.

   (f) <u>Non-Voting Equity Securities / Allocation of Voting Power (11 U.S.C.</u>

<u>§ 1123(a)(6))</u>.  The Amended Certificates of Incorporation prohibit the issuance of non-voting

equity securities, thereby satisfying section 1123(a)(6) of the Bankruptcy Code.  The issuance of

the New Common Shares complies with section 1123(a)(6) of the Bankruptcy Code.  On the

Effective Date, the boards of directors of each Reorganized Debtor shall be deemed to have

adopted the Amended By-Laws.

(g)    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).  The Plan Supplement and Section 5.5 of the Prepackaged Plan contain provisions with respect to the manner of selection of directors and officers of the Reorganized Debtors that are consistent with the interests of creditors, equity security holders, and public policy, thereby satisfying section 1123(a)(7) of the Bankruptcy Code.  The Debtors have identified the directors and officers of each Reorganized Debtor in the Plan Supplement [Docket Nos. 101, 177, and 180].

(h)    Impairment/Unimpairment of Classes of Claims and Interests (11 U.S.C. § 1123(b)(1)).  Pursuant to Articles III and IV of the Prepackaged Plan, as set forth in section 1123(b)(1) of the Bankruptcy Code, (a) Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), and Class 6 (Intercompany Claims) are unimpaired and (b) Class 3 (Revolving Credit Facility Claims), Class 4 (Secured Debt Claims), Class 7 (Subordinated Claims), Class 8 (Existing OGIL Interests), and Class 9 (Intercompany Interests) are impaired.

(i)    Assumption and Rejection (11 U.S.C. § 1123(b)(2)).  Article VIII of the Prepackaged Plan addresses the assumption and rejection of executory contracts and unexpired leases, and meets the requirements of section 365(b) of the Bankruptcy Code.  In accordance with Section 8.2 of the Prepackaged Plan, the Debtors have filed and served, as set forth in the Affidavit of Service of Stephen Lam [Docket No. 105], the Notice of Cure Amounts with Respect to Executory Contracts and Unexpired Leases of the Debtors [Docket No. 99] on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with the Prepackaged Plan and setting forth the proposed Cure Amount (if any).  If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable, intend to assume has not received such a

notice, the Cure Amount for such executory contract or unexpired lease shall be Zero Dollars ($0). There have been no objections to the Debtors' assumption of executory contracts and unexpired leases pursuant to Article VIII of the Prepackaged Plan.

(j)      Retention of Causes of Action and Reservation of Rights (11 U.S.C. § 1123(b)(3)). Subject to section 10.7 of the Prepackaged Plan, nothing contained in the Prepackaged Plan or this Order shall be deemed to be a waiver or relinquishment of any rights, claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately prior to the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, including that certain arbitration proceeding pending before the International Centre for Dispute Resolution of the American Arbitration Association and captioned *Vantage Deepwater Company and Vantage Deepwater Drilling, Inc. v. Petrobras America Inc., Petrobras Venezuela Investments & Services B.V., and Petróleo Brasileiro S.A. – Petrobras*, Case No. 01-15-0004-8503 (the "***Petrobras Arbitration***"), and all of the Debtors' legal and equitable rights in respect of any Unimpaired Claim may be asserted after the date of confirmation of the Prepackaged Plan (the "***Confirmation Date***") and Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. Notwithstanding anything to the contrary in this Order, the Prepackaged Plan, or the Plan Supplement, with respect to the Petrobras Arbitration: (i) pursuant to the *Order Approving Modification of Automatic Stay to Allow Petrobras Arbitration to Proceed* [Docket No. 92], as of December 21, 2015, (a) Petrobras America Inc., Petrobras Venezuela Investments & Services B.V., or Petróleo

Brasileiro S.A. — Petrobras (collectively, the "*Petrobras Respondents*") and the Debtors are permitted to exercise all of their respective rights and remedies in the Petrobras Arbitration and in any other appropriate forum, (b) none of the claims or counterclaims by the Petrobras Respondents or the Debtors are subject to the automatic stay and such claims or counterclaims are allowed to proceed in the Petrobras Arbitration, and (c) the duly appointed arbitrators in the Petrobras Arbitration are allowed to issue any interim or final awards (or other orders supplemental thereto) in connection therewith; (ii) any claim or counterclaim of the Petrobras Respondents asserted in or directly resulting from the Petrobras Arbitration (x) constitutes a Class 5 Claim (General Unsecured Claim) and, accordingly, shall receive the treatment set forth in Section 4.5 of the Prepackaged Plan, and (y) notwithstanding anything to the contrary, shall not be released pursuant to this Order, the Prepackaged Plan, or the Plan Supplement; and (iii) nothing in this Order, the Prepackaged Plan, or the Plan Supplement is intended to prejudice the relative positions of each of the Debtors or the Petrobras Respondents in the Petrobras Arbitration.

      (k)      <u>Unaffected Rights of Holders of Classes of Claims (11 U.S.C. § 1123(b)(5))</u>. The Prepackaged Plan leaves unaffected the rights of holders of Claims and Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), and Class 6 (Intercompany Claims). Thus, the Prepackaged Plan complies with section 1123(b)(5) of the Bankruptcy Code.

      (l)      <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. The provisions of the Prepackaged Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(m)     Cure of Defaults (11 U.S.C. § 1123(d)).  Section 8.2 of the Prepackaged Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Prepackaged Plan in accordance with section 365(b)(1) of the Bankruptcy Code.  All cure amounts will be determined in accordance with the underlying agreements and applicable non-bankruptcy law.  Thus, the Prepackaged Plan complies with section 1123(d) of the Bankruptcy Code.

N.     The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).  The Debtors have complied with the applicable provisions of the Bankruptcy Code.  Specifically:

(a)     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code; and

(b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court, and in transmitting the Prepackaged Plan, the Plan Supplement, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating the votes on the Prepackaged Plan, the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, applicable non-bankruptcy law, the Scheduling Order, and all other applicable law.

O.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).  The Debtors have proposed the Prepackaged Plan (and all documents necessary to effectuate the Prepackaged Plan) in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and the record of the January 14 Hearings, and other

proceedings held in these Chapter 11 Cases.  The Prepackaged Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.  The Prepackaged Plan (including all documents necessary to effectuate the Prepackaged Plan) was negotiated at arm's length among representatives of the Debtors, the Restructuring Support Parties (including the Ad Hoc Committee), and their respective professionals.  Each of the Restructuring Support Parties (including the members of the Ad Hoc Committee) supports confirmation of the Prepackaged Plan.  Further, the Prepackaged Plan's classification, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors' successful reorganization.

       P.      <u>Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.

       (a)      Any payment made or to be made by the Debtors for services or for costs and expenses of the Debtors' professionals in connection with their Chapter 11 Cases, or in connection with the Prepackaged Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

       (b)      As part of the negotiated terms on which the Debtors and the Ad Hoc Committee agreed to proceed with the consensual, prepackaged restructuring reflected in the Prepackaged Plan, the Debtors have agreed to pay all the reasonable and documented fees and expenses of (i) Milbank, Tweed, Hadley & McCloy LLP, as counsel to the Ad Hoc Committee, (ii) PJT Partners LP, as financial advisers to the Ad Hoc Committee, (iii) Kobre & Kim LLP, as Cayman counsel to the Ad Hoc Committee, (iv) Morris, Nichols, Arsht & Tunnell LLP, as

Delaware counsel to the Ad Hoc Committee, and (v) any local, maritime, or foreign counsel to the Ad Hoc Committee, subject to the exceptions set forth in the Restructuring Support Agreement.

(c)     As part of the negotiated terms on which the Debtors and the holders of Revolving Credit Facility Claims agreed to proceed with the consensual, prepackaged restructuring reflected in the Prepackaged Plan, the Debtors have agreed to pay all the reasonable and documented fees and expenses of (i) Latham & Watkins LLP, as counsel to the Revolving Credit Facility Agent, (ii) any financial adviser(s) retained by or on behalf of the Revolving Credit Facility Agent, (iii) Young Conaway Stargatt & Taylor, LLP, as Delaware counsel to the Revolving Credit Facility Agent, and (iv) any local, maritime, or foreign counsel to the Revolving Credit Facility Agent, subject to the exceptions set forth in the Restructuring Support Agreement.

Q.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to serve as the initial directors and officers of the Reorganized Debtors upon the Effective Date of the Prepackaged Plan have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Interests in the Debtors and with public policy.  The composition of the boards of directors and list of officers for each of the Reorganized Debtors has been disclosed in the Plan Supplement [Docket Nos. 101, 177, and 180] prior to the January 14 Hearings.  Each such member will serve in accordance with the terms and subject to the conditions of the Amended Certificate of Incorporation, Amended By-Laws, and other relevant organizational documents, each as applicable.

R.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Prepackaged Plan does not provide for rate changes by any of the Reorganized Debtors. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Chapter 11 Cases.

S.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Prepackaged Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analysis provided in the Disclosure Statement and other evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence, and (iii) establish that each holder of an impaired Claim or Interest either has accepted the Prepackaged Plan or will receive or retain under the Prepackaged Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

T.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 5 (General Unsecured Claims), and Class 6 (Intercompany Claims) are Classes of Unimpaired Claims that are conclusively presumed to have accepted the Prepackaged Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 7 (Subordinated Claims) and Class 9 (Intercompany Interests) are Class of Impaired Claims that are conclusively presumed to have rejected the Prepackaged Plan in accordance with section 1126(g) of the Bankruptcy Code. Class 3 (Revolving Credit Facility Claims), Class 4 (Secured Debt Claims), and Class 8 (Existing OGIL Interests) have voted to accept the Prepackaged Plan in accordance with sections 1126(b) and (c) of the Bankruptcy Code, without regard to the votes of insiders of the Debtors.

U.      Treatment of Administrative Expense Claims, Priority Tax Claims, and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Allowed Administrative Expense Claims and Fee Claims pursuant to Sections 2.1 and 2.2, respectively, of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(A) of the Bankruptcy Code. The treatment of Priority Non-Tax Claims pursuant to Sections 4.1 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(B) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to Section 2.3 of the Prepackaged Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code. Pursuant to the Prepackaged Plan, no holder of an Administrative Expense Claim other than a holder of a Fee Claim is required to file a proof of claim or request for payment of administrative expenses under section 503(b) of the Bankruptcy Code. On and after the Effective Date, all valid Administrative Expense Claims, Fee Claims, Priority Tax Claims, and Priority Non-Tax Claims shall be paid in the ordinary course of business of the Reorganized Debtors, subject to parties' ability to dispute such Claims in accordance with Article VII of the Prepackaged Plan and applicable non-bankruptcy law.

V.      Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)). Class 3 (Revolving Credit Facility Claims) and Class 4 (Secured Debt Claims) have voted to accept the Prepackaged Plan by the requisite majorities, determined without including any acceptance of the Prepackaged Plan by any insider, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

W.      Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Supporting Declarations, and the evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes that the Prepackaged Plan is feasible and that there is a reasonable

prospect of the Reorganized Debtors being able to meet their financial obligations under the Prepackaged Plan and their business in the ordinary course and that confirmation of the Prepackaged Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Reorganized Debtors, thereby satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

X.      Payment of Fees (11 U.S.C. § 1129(a)(12)).  All fees currently payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Code, have been or will be paid on or before the Effective Date pursuant to Section 2.1 of the Prepackaged Plan, thereby satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

Y.      Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  Section 8.4 of the Prepackaged Plan provides that all employment and severance policies, and all compensation and benefits plans, policies, and programs of the Debtors applicable to their respective employees, retirees, and nonemployee directors, including, without limitation, all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, executory contracts under the Prepackaged Plan and, on the Effective Date, will be assumed pursuant to sections 365 and 1123(b) of the Bankruptcy Code.

Z.      No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)).  The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation.  Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA.     <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>.  The Debtors are
not individuals, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in
these Chapter 11 Cases.

BB.     <u>No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C.
§ 1129(a)(16))</u>.  The Debtors are each a moneyed, business, or commercial corporation, and
accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11
Cases.

CC.     <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.
Class 7 (Subordinated Claims) and Class 9 (Intercompany Interests) are deemed to have rejected
the Prepackaged Plan.  Based upon the evidence proffered, adduced, and presented by the
Debtors at the Confirmation Hearing, the Prepackaged Plan does not discriminate unfairly with
respect to and is fair and equitable with respect the aforementioned Classes, as required by
sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because no holder of any interest that is
junior to each such Class will receive or retain any property under the Prepackaged Plan on
account of such junior interest, and no holder of a Claim or Interest in a Class senior to such
Classes is receiving more than 100% recovery on account of its Claim or Interest.  Thus, the
Prepackaged Plan may be confirmed notwithstanding the deemed rejection of the Prepackaged
Plan by these Classes.

DD.     <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Prepackaged Plan is the only
plan filed in each of these Chapter 11 Cases, and accordingly, section 1129(c) of the Bankruptcy
Code is inapplicable in these Chapter 11 Cases.

EE.     <u>Principal Purpose of the Prepackaged Plan (11 U.S.C. § 1129(d))</u>.  The
principal purpose of the Prepackaged Plan is not the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act, and no governmental entity has objected to the confirmation of the Prepackaged Plan on any such grounds. The Prepackaged Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

FF.    Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the January 14 Hearings, the Released Parties (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Prepackaged Plan and their participation in the activities described in section 1125 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Prepackaged Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Prepackaged Plan or the offer and issuance of the securities under the Prepackaged Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein as Exculpated Parties, the exculpation provisions set forth in Section 10.8 of the Prepackaged Plan.

GG.    Satisfaction of Confirmation Requirements. Based upon the foregoing, the Prepackaged Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

HH.    <u>Implementation</u>.  The Plan Documents and all other relevant and

necessary documents have been negotiated in good faith and at arm's length and shall, upon

completion of documentation and execution, be valid, binding, and enforceable agreements that

are not in conflict with any federal or state law.

II.    <u>Injunction, Releases, and Exculpation</u>.  The Court has jurisdiction under

28 U.S.C. §§ 1334(b) and 1334 (b) to approve the injunction, releases, and exculpation set forth

in Sections 10.6, 10.7, and 10.8 of the Prepackaged Plan, respectively.  Section 105(a) of the

Bankruptcy Code permits issuance of the injunction and approval of the releases set forth in

Sections 10.6 and 10.7 of the Prepackaged Plan, respectively, if, as has been established here,

based upon the record in the Chapter 11 Cases and the evidence presented at the January 14

Hearings, such provisions (i) were integral to the agreement among the various parties in interest,

as reflected in the Restructuring Support Agreement, and are essential to the formulation and

implementation of the Prepackaged Plan, as provided in section 1123 of the Bankruptcy Code,

(ii) confer substantial benefits on the Debtors' estates, (iii) are fair, equitable, and reasonable,

and (iv) are in the best interests of the Debtors, their estates, and parties in interest.  The release

contained in Section 10.7(b) of the Prepackaged Plan was disclosed and explained on the Ballots,

in the Disclosure Statement, and in the Prepackaged Plan.  The release provision contained in

Section 10.7(b) of the Prepackaged Plan is consensual because the releases therein are provided

only by (i) holders of Claims that are Unimpaired and (ii) holders of Impaired Claims and

Interests entitled to vote on the Prepackaged Plan (a) who vote to accept the Prepackaged Plan,

(b) who do not vote to accept or reject the Prepackaged Plan, and (c) who vote to reject the

Prepackaged Plan and do not check the opt-out box.  *See In re Indianapolis Downs, LLC*, 486

B.R. 286, 303 (Bankr. D. Del. 2013).  Pursuant to section 1123(b)(3) of the Bankruptcy Code

and Bankruptcy Rule 9019(a), the injunction, releases, and exculpation set forth in the Prepackaged Plan and implemented by this Order are fair, equitable, reasonable, and in the best interests of the Debtors and the Reorganized Debtors and their estates, creditors, and equity holders. The releases of non-Debtors under the Prepackaged Plan is fair to holders of Claims and are necessary to the proposed reorganization, thereby satisfying the applicable standards contained in *In re Indianapolis Downs*, 486 B.R. at 303 and are otherwise appropriate under *In re W.R. Grace & Co.*, 475 B.R. 34, 107 (D. Del. 2012). Such releases are given in exchange for and are supported by fair, sufficient, and adequate consideration provided by each and all of the parties providing such releases. The record of the Confirmation Hearing and these chapter 11 cases is sufficient to support the injunction, releases, and exculpation provided for in Sections 10.6, 10.7, and 10.8 of the Prepackaged Plan. Accordingly, based upon the record of these Chapter 11 Cases, the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the injunction, releases, and exculpation set forth in Article X of the Prepackaged Plan are consistent with the Bankruptcy Code and applicable law. The failure to implement the injunction, releases, and exculpation would seriously impair the Debtors' ability to confirm the Prepackaged Plan.

JJ.    Settlement. Except as otherwise provided in the Prepackaged Plan and this Order, the Prepackaged Plan represents a settlement between and among the Debtors and their creditors and equity holders of all Claims and Interests and litigation against the Debtors, pending or threatened, or that was or could have been commenced against the Debtors prior to the date of entry of this Order (other than the Reorganized Debtors' ability to prosecute objections to Claims and other retained causes of action to the extent preserved under the

Prepackaged Plan, including, without limitation, pursuant to section 10.11 of the Prepackaged Plan and the Petrobras Arbitration).

KK.    Good Faith.  The Debtors and the Released Parties will be acting in good faith if they proceed to (i) consummate the Prepackaged Plan and the agreements, settlements, transactions, and transfers set forth therein and (ii) take the actions authorized and directed by this Order.

LL.    Secured Notes Indenture Trustees, Prepetition Secured Collateral Agents, and Revolving Credit Facility Agent.  Based upon a review of the record, the Secured Notes Indenture Trustees, Prepetition Secured Collateral Agents, and the Revolving Credit Facility Agent, each, diligently and in good faith, discharged its duties and obligations pursuant to the 2017 Secured Term Loan Agreement, the 2019 Secured Term Loan Agreement, the 7.5% Secured Notes Indenture, the 7.125% Secured Notes Indenture, the Prepetition Intercreditor Agreement, and the Revolving Credit Facility Agreement, as applicable, and otherwise conducted itself with respect to all matters in any way relating to the 2017 Secured Notes Claim, the 2019 Secured Notes Claim, the 7.5% Secured Notes, the 7.125% Secured Notes, and the Revolving Credit Facility, as applicable, with the same degree of care and skill that a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs. Accordingly, the Secured Notes Indenture Trustees, the Prepetition Secured Collateral Agents, and the Revolving Credit Facility Agent each has discharged its duties fully in accordance with the 2017 Secured Term Loan Agreement, the 2019 Secured Term Loan Agreement, the 7.5% Secured Notes Indenture, the 7.125% Secured Notes Indenture, the Prepetition Intercreditor Agreement, and the Revolving Credit Facility Agreement, as applicable.

MM.    <u>Valuation</u>.  Pursuant to the valuation analysis set forth in the Disclosure Statement, the enterprise value of the Debtors is insufficient to support a distribution to holders of Existing OGIL Interests and Intercompany Interests under absolute priority principles.

NN.    <u>Retention of Jurisdiction</u>.  The Court may properly, and upon the Effective Date shall, retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article XI of the Prepackaged Plan and section 1142 of the Bankruptcy Code.

## **ORDER**

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT:**

1.    <u>Findings of Fact and Conclusions of Law</u>.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein and shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable herein by Bankruptcy Rule 9014.  To the extent that any finding of fact shall be determined to be a conclusion of law, it shall be deemed so, and vice versa.

2.    <u>Notice of the January 14 Hearings</u>.  Notice of the January 14 Hearings complied with the terms of the Scheduling Order, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules.

3.    <u>Solicitation</u>.  The solicitation of votes on the Prepackaged Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and applicable non-bankruptcy law.

4. <u>Ballots</u>. The forms of Ballots annexed to the Epiq Service Affidavit are in compliance with Bankruptcy Rule 3018(c), conform to Official Form Number 14, and are approved in all respects.

5. <u>Plan Modifications</u>. On January 11, 2016, the Debtors filed the Amended Joint Prepackaged Chapter 11 Plan of Offshore Group Investment Limited and Its Affiliated Debtors [Docket No. 166]. Modifications made to the Prepackaged Plan following the solicitation of votes thereon satisfy the requirements of section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

6. <u>The Disclosure Statement</u>. The Disclosure Statement (i) contains adequate information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy law, including the Securities Act, (ii) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepackaged Plan, and the transactions contemplated therein, and (iii) is approved in all respects. To the extent that the Debtors' solicitation of acceptances of the Prepackaged Plan is deemed to constitute an offer of new securities, the Debtors are exempt from the registration requirements of the Securities Act (and of any equivalent state securities or "blue sky" laws) with respect to such solicitation under section 4(a)(2) of the Securities Act and Regulation D promulgated thereunder. Section 4(a)(2) exempts from registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). The Debtors have complied with the requirements of section 4(a)(2) of the Securities Act and Regulation D thereunder, as the prepetition solicitation of acceptances would constitute a private placement of securities. The solicitation to creditors was made only to those creditors

who are "Accredited Investors" as defined in Regulation D under the Securities Act, as creditors

were required to certify on their Ballots that they were accredited investors.

7.      Confirmation of the Prepackaged Plan.  The Prepackaged Plan and each of

their provisions shall be, and hereby are, **CONFIRMED** under section 1129 of the Bankruptcy

Code.  The documents contained in the Plan Supplement are authorized and approved.  The

terms of the Prepackaged Plan, including the Plan Supplement, are incorporated by reference

into and are an integral part of this Order.

8.      Objections.  All Objections, responses to, and statements and comments, if

any, in opposition to, the Prepackaged Plan and/or the Disclosure Statement, respectively, other

than those withdrawn with prejudice in their entirety prior to, or on the record at, the January 14

Hearings, shall be, and hereby are, overruled in their entirety for the reasons stated on the record.

9.      No Action.  Pursuant to the appropriate provisions of the General

Corporation Law of the State of Delaware, other applicable non-bankruptcy law, and section

1142(b) of the Bankruptcy Code, no action of the respective directors or stockholders of the

Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt,

amend, restate, consummate, or effectuate, as the case may be, the Prepackaged Plan and any

contract, instrument, or other document to be executed, delivered, adopted or amended in

connection with the implementation of the Prepackaged Plan.

10.     Binding Effect.  On or after entry of this Order and subject to the

occurrence of the Effective Date, the provisions of the Prepackaged Plan shall bind the Debtors,

the Reorganized Debtors, all holders of Claims and Interests of the Debtors (irrespective of

whether such Claims or Interests are impaired under the Prepackaged Plan or whether the holders

of such Claims or Interests accepted or are deemed to have accepted the Prepackaged Plan), any

and all non-Debtor parties to executory contracts and unexpired leases with any of the Debtors, any other party in interest in the Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

11.    Free and Clear.  Except as otherwise provided in the Prepackaged Plan or in this Order, from and after the Effective Date, the Reorganized Debtors shall be vested with all property of the Estates, free and clear of all Claims, liens, encumbrances, charges, and other interests of creditors and equity security holders of the Debtors; *provided*, that if the Revolving Credit Facility Agent elects no later than two (2) Business Days before the Effective Date by providing written notice to the Debtors and the Prepetition Intercreditor Pari Passu Collateral Agent to be assigned, to the extent permitted by law, any of the existing liens and/or security interests in property of the Debtors held by the Prepetition Intercreditor Pari Passu Collateral Agent to secure the Reorganized Debtors' obligations under the Amended and Restated Credit Facility Agreement (collectively, the "*Assigned Senior Liens*"), then such liens and security interests shall be unaffected by these Chapter 11 Cases, the Prepackaged Plan, and this Order, and are hereby reaffirmed.  From and after the Effective Date, the Reorganized Debtors may operate each of their businesses and use, acquire, or dispose of assets free of any restrictions imposed by the Bankruptcy Code, the Court, or the U.S. Trustee (except for quarterly operating reports and fees associated therewith until the closing of the applicable Chapter 11 Cases).

12.    Implementation of the Prepackaged Plan.  The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Prepackaged Plan, including the Restructuring

Transactions and all such other actions delineated in Article V of the Prepackaged Plan. On the Effective Date, the appropriate officers or representatives of the Reorganized Debtors and members of the boards of directors of the same are authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, contemplated by the Prepackaged Plan, in the name of and on behalf of the Reorganized Debtors.

13.    <u>Issuance of New Second Lien Notes, New Secured Convertible PIK Notes, and New Common Shares and Entry Into Amended and Restated Credit Facility Agreement</u>. The Reorganized Debtors are authorized to issue the New Second Lien Notes, the New Secured Convertible PIK Notes, and the New Common Shares and enter into the Amended and Restated Credit Facility Agreement. The New Second Lien Notes, New Secured Convertible PIK Notes, the New Common Shares, and the Amended and Restated Credit Facility Agreement shall be, upon execution and delivery, legal, valid, and binding obligations of the Reorganized Debtors and enforceable against the Reorganized Debtors in accordance with their terms.

14.    <u>New Debt Documents</u>. The Debtors and Reorganized Debtors, as applicable, are authorized and empowered, without further approval of this Court or any other party, to take such actions and to perform such acts as may be necessary, desirable, or appropriate to (i) implement the issuance of the New Second Lien Notes and the New Secured Convertible PIK Notes, and (ii) execute the Amended and Restated Credit Facility Agreement, in each case in accordance with the Prepackaged Plan and to execute and deliver all agreements, documents, instruments, indentures, and certificates relating thereto (the "***New Debt Documents***"). The loans and other extensions of credit contemplated by the New Second Lien

Notes, the New Secured Convertible PIK Notes, and the Amended and Restated Credit Facility Agreement and the granting of Liens to secure such notes, loans, and other extensions of credit are approved and authorized in all respects. The Reorganized Debtors are authorized to enter into collateral documents to secure the New Second Lien Notes, the New Secured Convertible PIK Notes, and the Reorganized Debtors' obligations under the Amended and Restated Credit Facility Agreement. As of the Effective Date, without any further action by the Court or the directors, officers, managers, members, or shareholders of the Reorganized Debtors, the Liens and security interests granted pursuant to the New Debt Documents (including the Assigned Senior Liens) will constitute legal, valid, and enforceable Liens and security interests in the collateral (as set forth in the New Debt Documents and any other documents to be executed and delivered pursuant thereto) and such Liens and security interests will constitute legal, valid, and binding obligations of the Reorganized Debtors. The holders of Liens under the New Debt Documents (including the Assigned Senior Liens) are authorized to file, with the appropriate authorities, financing statements and other documents (the "*New Debt Perfection Documents*") or take any other action in order to evidence, validate, and perfect such Liens or security interests. The Prepetition Intercreditor Pari Passu Collateral Agent is authorized and empowered to execute, deliver, file or record such documents, instruments, releases, termination or agreements and take such further action as may be necessary to effectuate and implement the Plan. The Debtors and the Reorganized Debtors are authorized to execute and deliver to the indenture trustees and collateral agents for the New Second Lien Notes and the New Secured Convertible PIK Notes (the "*New Notes Trustees*") and under the Amended and Restated Credit Facility Agreement any such agreements, financing statements, instruments, and other documents or obtain all governmental approvals and consents the New Notes Trustees or agents

under the Amended and Restated Credit Facility Agreement may reasonably request or that are required to establish and perfect such Liens and security interests under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Prepackaged Plan and this Order, and are authorized to cooperate and make all other filings and recordings that otherwise would be reasonably necessary under applicable law to perfect and/or give notice of such Liens and security interests to third parties. Whether the New Debt Perfection Documents are filed prior to, on, or after the Effective Date, (i) such New Debt Perfection Documents will be valid, binding, enforceable, and in full force and effect as of the Effective Date, and (ii) the Liens and security interests granted under or in connection with the New Debt Documents (including the Assigned Senior Liens) will become or continue to be, as applicable, valid, binding, and enforceable obligations of the Reorganized Debtors.  The granting of such Liens and security interests, the making of such loans and other extensions of credit, the payment of any fees contemplated thereunder, and the execution and consummation of the New Debt Documents have been and are being undertaken in good faith, for legitimate business purposes, and for reasonably equivalent value, will be deemed not to constitute a preference, fraudulent conveyance or fraudulent transfer, and will not otherwise be subject to avoidance, recharacterization, disallowance, reduction, subordination (whether equitable, contractual, or otherwise), counterclaims, recoupment, cross-claims, defenses, or any other challenges under or pursuant to the Bankruptcy Code or any other applicable domestic or foreign law or regulation by any Person or entity.

      15.    Compliance with Section 1123(a)(6) of the Bankruptcy Code.  The Amended Certificates of Incorporation, and the terms governing the issuance of the New Common Shares, comply in all respects with section 1123(a)(6) of the Bankruptcy Code, and are

hereby approved.  The adoption and filing of the Amended Certificates of Incorporation are

hereby authorized, ratified, and approved.  The Debtors have complied in all respects, to the

extent necessary, with section 1123(a)(6) of the Bankruptcy Code.

      16.    <u>Exemption from Securities Law</u>.  The issuance of and the distribution

under the Prepackaged Plan of the New Secured Convertible PIK Notes, the Subscription Rights

(including the New Second Lien Notes issued pursuant to the exercise thereof in the Rights

Offering), and the New Common Shares issued to holders of Allowed Secured Debt Claims and

the issuance of New Common Shares upon the conversion of the New Secured Convertible PIK

Notes each shall be exempt from registration under the Securities Act and any other applicable

securities laws pursuant to section 1145 of the Bankruptcy Code.  These securities may be resold

without registration under the Securities Act or other federal securities laws pursuant to the

exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an

"underwriter" with respect to such securities, as that term is defined in section 1145(b) of the

Bankruptcy Code.  In addition, such section 1145 exempt securities generally may be resold

without registration under state securities laws pursuant to various exemptions provided by the

respective laws of the several states.  The availability of the exemption under section 1145 of the

Bankruptcy Code or any other applicable securities laws shall not be a condition to the

occurrence of the Effective Date.  The issuance and sale, as applicable, of the New Second Lien

Notes to the Backstop Parties under the Backstop Agreement (including the New Second Lien

Notes comprising the Backstop Commitment Premium) is being made in reliance on the

exemption from registration set forth in section 4(a)(2) of the Securities Act and Regulation D

thereunder.  Such securities will be considered "restricted securities" and may not be transferred

except pursuant to an effective registration statement under, or an available exemption from the

registration requirements of, the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 of the Securities Act.

17.    <u>Cancellation of Existing Securities and Agreements</u>.  Except (i) for the purpose of evidencing a right to a distribution under the Prepackaged Plan and in the liquidation proceeding for Vantage Parent before the Grand Court of the Cayman Islands, (ii) as otherwise set forth in the Prepackaged Plan, and (iii) for Assigned Senior Liens, on the Effective Date, all agreements, instruments, and other documents evidencing any Claim or Interest (other than certain Intercompany Interests that are unaffected under the Prepackaged Plan pursuant to section 5.14 thereof) and any rights of any holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect.  Notwithstanding such cancellation and discharge, each of the 7.5% Secured Notes Indenture, the 7.125% Secured Notes Indenture, the 2017 Secured Term Loan Agreement, the 2019 Secured Term Loan Agreement, the Revolving Credit Agreement (and, for the avoidance of doubt, the Prepetition Intercreditor Agreement) shall continue in effect (i) to the extent necessary to allow the Reorganized Debtors, the Secured Notes Indenture Trustees, and the Prepetition Secured Collateral Agents to make distributions or take such other action pursuant to the Prepackaged Plan on account of the 7.5% Secured Notes Claims, the 7.125% Secured Notes Claims, the 2017 Secured Term Loan Claims, the 2019 Secured Term Loan Claims, and the Revolving Credit Facility Claims, respectively, including pursuant to the Prepetition Intercreditor Agreement, and to otherwise exercise their rights and discharge their obligations relating to the interests of the holders of such Claims; (ii) to maintain, enforce, and exercise their respective Charging Liens against such distributions; (iii) to appear in the Chapter 11 Cases; (iv) to allow holders of Secured Debt Claims (or their respective agents) or the Prepetition Secured Collateral Agents and the Secured Notes Indenture Trustees to enforce the

terms of the Prepetition Intercreditor Agreement (*provided*, that the Prepetition Intercreditor Agreement shall not govern the New Secured Debt Agreements); (y) with respect to any obligations thereunder governing the relationship between and among each of the following groups of Persons (and not as between such groups or as between such groups and the Debtors): (a) the Revolving Credit Facility Agent and the other holders of Revolving Credit Facility Claims, (b) the 7.5% Secured Notes Trustee and the holders of 7.5% Secured Notes Claims, (c) the 7.125% Secured Notes Trustee and the holders of 7.125% Secured Notes Claims, (d) the 2017 Secured Term Loan Agent and the holders of 2017 Secured Term Loan Claims, (e) the 2019 Secured Term Loan Agent and the holders of 2019 Secured Term Loan Claims, and (f) the Prepetition Intercreditor Pari Passu Collateral Agent and holders of Secured Debt Claims, and in the case of the immediately preceding clauses (a) through (f), including but not limited to those provisions relating to rights to fee and expense reimbursement, indemnification, and similar amounts, or that may survive termination or maturity of the Revolving Credit Agreement, 7.5% Secured Notes Indenture, the 7.125% Secured Notes Indenture, the 2017 Secured Term Loan Agreement, or the 2019 Secured Term Loan Agreement, as applicable, in accordance with the terms thereof; and (iv) to the extent necessary to allow the Secured Notes Indenture Trustees and the Prepetition Secured Collateral Agents (on behalf of holders of Secured Debt Claims) and the holders of Secured Debt Claims and Revolving Credit Facility Claims and their agents, respectively, to assert, prosecute, and exercise their rights and discharge their obligations (a) against Vantage Parent and its nondebtor subsidiaries and affiliates (other than the Nondebtor Service Subsidiaries) and (b) in connection with the Cayman Proceeding.  The holders of or parties to such cancelled instruments, securities, and other documentation will have no rights against the Reorganized Debtors arising from or related to such instruments, securities, or other

documentation or the cancellation thereof, except the rights provided for pursuant to the

Prepackaged Plan and this Order. Except as provided pursuant to the Prepackaged Plan, each of

the 7.5% Secured Notes Trustee, the 7.125% Secured Notes Trustee, the 2017 Secured Term

Loan Agent, the 2019 Secured Term Loan Agent, the Revolving Credit Facility Agent, the

Prepetition Secured Collateral Agents, and their respective agents, successors, and assigns shall

be discharged of all of their obligations associated with the 7.5% Secured Notes Indenture, the

7.125% Secured Notes Indenture, the 2017 Secured Term Loan Agreement, the 2019 Secured

Term Loan Agreement, the Revolving Credit Agreement, and the Prepetition Intercreditor

Agreement, respectively. With respect to the Debtors, the Secured Notes Indenture Trustees and

the Prepetition Secured Collateral Agents shall be discharged and have no further obligation or

liability except as otherwise provided for in the Prepackaged Plan or this Order, and after the

performance by Secured Notes Indenture Trustees and the Prepetition Secured Collateral Agents

and their respective representatives and professionals of any obligations and duties required

under or related to the Prepackaged Plan or this Order, the Secured Notes Indenture Trustees and

the Prepetition Secured Collateral Agents shall be relieved of and released from any obligations

and duties arising thereunder. Nothing in the Prepackaged Plan or in this Order shall affect any

party's rights against Vantage Parent or its nondebtor subsidiaries or affiliates (other than the

Nondebtor Service Subsidiaries) under any contractual arrangement or in connection with the

Cayman Proceeding.

      18.    Subordination. Except as otherwise expressly provided in the

Prepackaged Plan, this Order or a separate order of this Court, the classification and manner of

satisfying all Claims and Interests under the Prepackaged Plan take into consideration all

subordination rights, whether arising by contract or under general principles of equitable

subordination, section 510 of the Bankruptcy Code, or otherwise.  Except as otherwise expressly

provided in the Prepackaged Plan, all subordination rights that a holder of a Claim or Equity

Interest may have with respect to any distribution to be made under the Prepackaged Plan shall

be discharged and terminated and all actions related to the enforcement of such subordination

rights shall be enjoined permanently.  Accordingly, except as otherwise expressly provided in the

Prepackaged Plan, the distributions under the Prepackaged Plan to the holders of Allowed

Claims and Interests will not be subject to payment of a beneficiary of such subordination rights,

or to levy, garnishment, attachment, or other legal process by a beneficiary of such terminated

subordination rights.

19.    Compensation and Benefit Plans.  The Debtors are hereby authorized to,

and shall on the Effective Date, assume all employment and severance policies, and all

compensation and benefits plans, policies, and programs of the Debtors applicable to their

respective employees, retirees, and nonemployee directors, including, without limitation, all

savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans,

incentive plans, and life and accidental death and dismemberment insurance plans; *provided*

that, in accordance with the Restructuring Support Agreement, any employment agreements with

the management team shall be subject to the reasonable consent of the Required Restructuring

Support Parties (such consent to apply only with respect to non-material economic terms and

non-economic terms).

20.    Cancellation of Certain Existing Security Interests; Assignment of Liens.

Except as otherwise provided in the Prepackaged Plan, and excluding Assigned Senior Liens,

upon the occurrence of the Effective Date, (i) any mortgage, deed of trust, lien, pledge, and other

security interests securing any Allowed Secured Claim shall be deemed released, and the holder

of such Allowed Secured Claim shall be authorized, empowered, and directed to release any

Collateral or other property of any Debtor (including any cash collateral) held by such holder and

to take such actions as may be requested by the Reorganized Debtors or Revolving Credit

Facility Agent to evidence the release of such mortgage, deed of trust, lien, pledge, and other

security interests, including the execution, delivery, and filing or recording of such waivers,

releases, discharges, and other instruments as may be requested by the Reorganized Debtors or

Revolving Credit Facility Agent, and (ii) all right, title, and interest of any holder of a lien shall

revert to the Reorganized Debtors.  With respect to the Assigned Senior Liens, the Prepetition

Intercreditor Pari Passu Collateral Agent is authorized, empowered, and directed to take such

actions as may be requested by the Reorganized Debtor or Revolving Credit Facility Agent to

assign, and evidence the assignment of, any mortgage, deed of trust, lien, pledge, and other

security interests, including the execution, delivery, and filing or recording of such amendments,

Lien assignments, assignment agreements (including with respect to deposit account control

agreements), and other instruments as may be requested by the Reorganized Debtors or

Revolving Credit Facility Agent.

      21.   <u>Transfer or Cancellation of Existing Interests</u>.  The Secured Notes

Trustees and the Prepetition Secured Collateral Agents are hereby authorized and empowered,

but not directed, to take such steps or actions as is provided for under the applicable pledge or

security agreement and Prepetition Intercreditor Agreement or any related or ancillary document,

instrument, or agreement and reasonably requested by the Debtors, the Revolving Credit Facility

Agent, and the Ad Hoc Committee to implement the transactions provided for or contemplated

under Section 4.8 and 5.14 of the Plan; notwithstanding anything herein or in the Prepackaged

Plan to the contrary, the Prepetition Secured Collateral Agents shall not be deemed to hold or

take title to or ownership of the foreclosed Existing OGIL Interests, except as appropriate under Cayman law to consummate the Prepackaged Plan, in which case, the Prepetition Secured Collateral Agents' designee, successor, or assigns will be deemed to hold or take title or ownership to the foreclosed Existing OGIL Interests.

22.    <u>Compromise of Controversies</u>.  In consideration for the distributions and other benefits, including releases, provided under the Prepackaged Plan, the provisions of the Prepackaged Plan constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved under the Prepackaged Plan, and the entry of this Order constitutes approval of such compromise and settlement under Bankruptcy Rule 9019, subject to section 10.11 of the Prepackaged Plan.

23.    <u>Assumption of Contracts and Leases</u>.  Pursuant to Section 8.1 of the Prepackaged Plan, as of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases shall be deemed assumed.  The Reorganized Debtors shall pay any Cure Amounts owed, if any, under each such executory contract or unexpired lease as provided in the Prepackaged Plan.  Each executory contract and unexpired lease assumed pursuant to the Prepackaged Plan shall vest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as modified by the provisions of the Prepackaged Plan, any subsequent order of the Court, or applicable law.  This Order shall constitute an order of the Court under sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions described above, as of the Effective Date.

24.    <u>Conditions Precedent to Effective Date</u>.  The Prepackaged Plan shall not become effective unless and until the conditions set forth in Section 9.1 of the Prepackaged Plan have been satisfied or waived pursuant to Section 9.2 of the Prepackaged Plan.

25.    Professional Compensation.  All Professional Persons seeking awards by the Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall (a) file, on or before the date that is ninety (90) days after the Effective Date, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred (a "*Final Fee Application*") and (b) be paid in full, in Cash, in such amounts as are Allowed by the Court in accordance with the order(s) relating to or allowing any such Fee Claim.  Notice of a hearing (the "*Final Fee Hearing*") on the Final Fee Applications shall be provided in accordance with the Bankruptcy Rules and Local Rules.  The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Court approval.

26.    Objections to Final Fee Applications.  All objections to any Final Fee Applications shall be served and filed (a) no later than thirty (30) days after the filing of the Final Fee Applications or (b) such later date as ordered by the Court upon a motion of the Reorganized Debtors.

27.    Administrative Expenses.  Subject to the terms and conditions of any interim or final order of the Court authorizing the use of cash collateral, administrative expenses incurred by the Debtors or the Reorganized Debtors after the Effective Date, including Fee Claims, shall not be subject to application and may be paid by the Debtors or the Reorganized Debtors, as the case may be, in the ordinary course of business and without further Court approval.  Notwithstanding anything to the contrary in this Order or in the Prepackaged Plan, the U.S. Trustee shall have the right to object to Administrative Expense Claims.

28.    <u>Discharge</u>. As of the Effective Date, the confirmation of the Prepackaged

Plan shall (i) pursuant to Section 10.3 of the Prepackaged Plan and except as otherwise provided

in the Prepackaged Plan, discharge and release all Claims against or Interests in the Debtors of

any nature whatsoever, known or unknown, including any interest accrued or expenses incurred

thereon from and after the Petition Date, or against their estates or properties or interests in

property, and except as provided otherwise in the Prepackaged Plan, all persons or entities shall

be precluded from asserting against the Debtors or the Reorganized Debtors or their respective

properties or interests in property, any other Claims based upon any act or omission, transaction

or other activity of any kind or nature that occurred prior to the Effective Date and (ii) pursuant

to Section 5.3 of the Prepackaged Plan, cancel all agreements, instruments, and other documents

evidencing any Claim or Interest (other than certain Intercompany Interests that are not modified

by the Prepackaged Plan) and any rights of any holder in respect thereof, except for the purpose

of evidencing a right to a distribution under the Prepackaged Plan and except as otherwise set

forth in the Prepackaged Plan. For the avoidance of doubt, no such discharge shall affect or

otherwise impair claims of a holder of Secured Debt Claims, or any trustee or agent on behalf of

such holder, including the Secured Notes Indenture Trustees and Prepetition Secured Collateral

Agents, against a nondebtor in the Cayman Proceeding or nondebtor subsidiaries or affiliates of

Vantage Parent (other than the Nondebtor Service Subsidiaries).

29.    <u>Releases by the Debtors</u>. As of the Effective Date, except for the rights

that remain in effect from and after the Effective Date to enforce the Prepackaged Plan, the Plan

Documents, and this Order, for good and valuable consideration, the adequacy of which is

hereby confirmed, including, without limitation, the service of the Released Parties to facilitate

the reorganization of the Debtors and the implementation of the Restructuring, and except as

otherwise provided in the Prepackaged Plan or in this Order, the Released Parties are deemed

forever released and discharged by the Debtors, the Reorganized Debtors, and the Estates from

any and all claims, obligations, suits, judgments, damages, demands, debts rights, Causes of

Action, losses, or liabilities whatsoever, including any derivative claims, asserted or assertable

on behalf of the Debtors, the Reorganized Debtors, or their Estates, whether known or unknown,

foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the

Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in

their own right (whether individually or collectively) or on behalf of the holder of any Claim or

Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part,

the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any

security of the Debtors or the Reorganized Debtors, the subject matter of, or the transactions or

events giving rise to, any Claim or Interest that is treated in the Prepackaged Plan, the business

or contractual arrangements between any Debtor and any Released Party, the Restructuring, the

restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Restructuring

Transactions, the negotiation, formulation, or preparation of the Disclosure Statement, the

Restructuring Support Agreement, and the Prepackaged Plan and related agreements,

instruments, and other documents (including the Plan Documents), the solicitation of votes with

respect to the Prepackaged Plan, the Backstop Agreement, or the Rights Offering, or any other

act or omission, other than Claims or Causes of Action arising out of or related to any act or

omission of a Released Party that is a criminal act or constitutes intentional fraud, gross

negligence, or willful misconduct.  Notwithstanding the foregoing, such release and discharge

shall not operate as a release or discharge of any right of any holder of a Secured Debt Claim (or

agent or trustee acting on such holder's behalf) to assert and prosecute its rights against Vantage

Parent or its nondebtor subsidiaries or affiliates (other than the Nondebtor Service Subsidiaries) (including in connection with the Cayman Proceeding), and nothing in the Prepackaged Plan shall affect any party's rights against Vantage Parent or its nondebtor subsidiaries or affiliates (other than the Nondebtor Service Subsidiaries) for any contractual obligation. Nothing in the Prepackaged Plan shall constitute a release of any claim by Vantage Parent or its nondebtor subsidiaries or affiliates against a Debtor as set forth on the books and records of the Debtors as of the Petition Date or any defense of any Debtor to such a claim. Nothing in the Prepackaged Plan shall constitute a release of any claim by a Debtor against Vantage Parent or its nondebtor service subsidiaries or affiliates (other than the Nondebtor Service Subsidiaries) as set forth on the books and records of the Debtors as of the Petition Date.

30.   <u>Releases by Holders of Claims and Interests</u>. As of the Effective Date, except for the rights that remain in effect from and after the Effective Date to enforce the Prepackaged Plan, the Plan Documents, and this Order, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the Restructuring, and except as otherwise provided in the Prepackaged Plan, the Plan Documents, or in this Order, the Released Parties are deemed forever released and discharged by (i) the holders of all Claims and Interests who voted to accept the Prepackaged Plan, (ii) holders of Claims or Interests that are Unimpaired under the Prepackaged Plan, (iii) holders of Claims or Interests whose vote to accept or reject the Prepackaged Plan was solicited but who did not vote either to accept or to reject the Prepackaged Plan, (iv) holders of Claims or Interests who voted to reject the Prepackaged Plan but did not opt out of granting the releases set forth herein, (v) Vantage Parent (to the fullest extent permitted by applicable law), (vi) the 2017 Secured

Term Loan Agent, the 2019 Secured Term Loan Agent, the 7.125% Secured Notes Indenture

Trustee, (vii) the 7.5% Secured Notes Indenture Trustee, and (viii) the Revolving Credit Facility

Agent, except in each case with respect to any contractual obligations, from any and all claims,

obligations, suits, judgments, damages, demands, debts rights, Causes of Action, losses, and

liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the

Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in

law, equity, or otherwise, that such holders or their affiliates would have been legally entitled to

assert in their own right (whether individually or collectively) or on behalf of the holder of any

Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole

or in part, the Debtors, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or

sale of any security of the Debtors or the Reorganized Debtors, the subject matter of, or the

transactions or events giving rise to, any Claim or Interest that is treated in the Prepackaged Plan,

the business or contractual arrangements between any Debtor and any Released Party, the

Restructuring, the restructuring of any Claim or Interest before or during the Chapter 11 Cases,

the Restructuring Transactions, the negotiation, formulation, or preparation of the Disclosure

Statement, the Restructuring Support Agreement, and the Prepackaged Plan and related

agreements, instruments, and other documents (including the Plan Documents), the solicitation

of votes with respect to the Prepackaged Plan, the Backstop Agreement, or the Rights Offering,

or any other act or omission, other than Claims or Causes of Action arising out of or related to

any act or omission of a Released Party that is a criminal act or constitutes intentional fraud.

Notwithstanding the foregoing, such release and discharge shall not operate as a release or

discharge of (x) any right of any holder of a Secured Debt Claim (or agent or trustee acting on

such holder's behalf) to assert and prosecute its rights against Vantage Parent or its nondebtor

subsidiaries or affiliates (other than the Nondebtor Service Subsidiaries), (y) any contractual

obligation, or (z) any Claim of the United States government or any of its agencies; and nothing

in the Prepackaged Plan shall affect any party's rights against Vantage Parent or its nondebtor

subsidiaries and affiliates (other than the Nondebtor Service Subsidiaries) under any applicable

document (including in connection with the Cayman Proceeding).

31.    <u>Release and Exculpation Provisions</u>.  All release and exculpation

provisions embodied in the Prepackaged Plan, including but not limited to those contained in

Sections 10.7 and 10.8 of the Prepackaged Plan, are (i) integral parts of the Prepackaged Plan,

(ii) fair, equitable, and reasonable, (iii) given for valuable consideration, and (iv) are in the best

interest of the Debtors and all parties in interest, and such provisions are approved and shall be

effective and binding on all persons and entities, to the extent provided herein.  The release

contained in Section 10.7(b) of the Prepackaged Plan was disclosed and explained on the Ballots,

in the Disclosure Statement, and in the Prepackaged Plan.  The release provision contained in

Section 10.7(b) of the Prepackaged Plan is consensual because the releases therein are provided

only by (i) holders of Claims that are Unimpaired and (ii) holders of Impaired Claims and

Interests entitled to vote on the Prepackaged Plan (a) who vote to accept the Prepackaged Plan,

(b) who do not vote to accept or reject the Prepackaged Plan, and (c) who vote to reject the

Prepackaged Plan and do not check the opt-out box.  *See Indianapolis Downs*, 486 B.R. at 303.

Notwithstanding any language to the contrary contained in the Disclosure Statement, the

Prepackaged Plan, and/or this Order, no provision of the Disclosure Statement, the Prepackaged

Plan, or this Order shall (a) preclude the United States and any of its agencies including, without

limitation, the Securities and Exchange Commission and the United States Department of

Justice, from enforcing their police or regulatory powers or (b) release any nondebtor from liability in connection with any Claim of the United States government or any of its agencies.

32.    Plan Injunction.  Pursuant to Section 10.6(a) of the Prepackaged Plan, this Order shall, except as otherwise expressly provided in the Prepackaged Plan, constitute an injunction, as of the entry of this Order but subject to the occurrence of the Effective Date, permanently enjoining all Persons or entities who have held, hold or may hold Claims against or Interests in any Debtor from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor, a Reorganized Debtor, or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (i) or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against a Debtor, a Reorganized Debtor, or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this subsection (ii) or any property of any such transferee or successor; (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor, a Reorganized Debtor, or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (iii) or any property of any such transferee or successor; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with

the provisions of the Prepackaged Plan to the full extent permitted by applicable law; and

(v) commencing or continuing, in any manner or in any place, any action that does not comply

with or is inconsistent with the provisions of the Prepackaged Plan; *provided*, that nothing

contained herein shall preclude such Persons who have held, hold, or may hold Claims against or

Interests in a Debtor or an Estate from exercising their rights, or obtaining benefits, pursuant to

and consistent with the terms of the Prepackaged Plan.  Pursuant to Section 10.6(b) of the

Prepackaged Plan, by accepting distributions thereunder, each holder of an Allowed Claim or

Interest will be deemed to have affirmatively and specifically consented to be bound by the

Prepackaged Plan, including, without limitation, the injunctions set forth in Section 10.6 therein.

      33.    Indemnification Obligations.

      (a)    Pursuant to Section 8.3 of the Prepackaged Plan, subject to the occurrence

of the Effective Date, any obligations of the Debtors pursuant to their corporate charters, by-

laws, limited liability company agreements, memorandum and articles of association, or other

organizational documents to indemnify current and former officers, directors, agents, or

employees with respect to all present and future actions, suits, and proceedings against the

Debtors or such officers, directors, agents, or employees based upon any act or omission for or

on behalf of the Debtors shall not be discharged, impaired, or otherwise affected by the

Prepackaged Plan; *provided*, that the Reorganized Debtors shall not indemnify directors of the

Debtors for any Claims or Causes of Action arising out of or relating to any act or omission that

(i) is a criminal act, (ii) constitutes intentional fraud, or (iii) with regard to those Reorganized

Debtors organized under the laws of the Cayman Islands, constitutes "willful default" (as a

matter of Cayman Islands law).  All such obligations shall be deemed and treated as executory

contracts to be assumed by the Debtors under the Prepackaged Plan and shall continue as

obligations of the Reorganized Debtors.  Any claim based on the Debtors' obligations herein shall not be a Disputed Claim or subject to any objection, in either case, by reason of section 502(e)(1)(B) of the Bankruptcy Code.

 (b) Pursuant to Section 10.13 of the Prepackaged Plan, (i) the obligations of the Debtors to indemnify and reimburse their directors or officers that were directors or officers, respectively, on or subsequent to the Petition Date shall be assumed by the Reorganized Debtors and (ii) indemnification obligations of the Debtors arising from services as officers and directors during the period from and after the Petition Date shall be Administrative Expense Claims.

 34. <u>Payment of Statutory Fees</u>.  All fees payable pursuant to 28 U.S.C. § 1930, shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the U.S. Trustee, until such time as a chapter 11 case for a Debtor shall be closed.

 35. <u>Payment of Fees and Expenses of the Ad Hoc Committee's Advisers and Revolving Credit Facility Agent's Advisers</u>.  Notwithstanding anything to the contrary herein, in accordance with the Prepackaged Plan, the unpaid reasonable and documented fees and expenses of Milbank, Tweed, Hadley & McCloy LLP, as counsel to the Ad Hoc Committee, PJT Partners LP, as financial advisers to the Ad Hoc Committee, Kobre & Kim LLP, as Cayman counsel to the Ad Hoc Committee, Morris, Nichols, Arsht & Tunnell LLP, as Delaware counsel to the Ad Hoc Committee, and any local, maritime, or foreign counsel to the Ad Hoc Committee, Latham & Watkins LLP, as counsel to the Revolving Credit Facility Agent, any financial adviser(s) retained by or on behalf of the Revolving Credit Facility Agent, Young Conaway Stargatt & Taylor, LLP, as Delaware counsel to the Revolving Credit Facility Agent, and any local, maritime, or foreign counsel to the Revolving Credit Facility Agent, shall, in each case, be allowed as Administrative Expense Claims and shall be paid in full, in Cash on or before the

Effective Date in accordance with the cash collateral order approved by the Court and the Restructuring Support Agreement (subject to the exceptions set forth therein), and as required by the underlying indenture, credit agreement, indemnity, or fee letter, without application or approval by the Court. For the avoidance of doubt, any engagement or fee letters entered into between the Ad Hoc Committee's or Revolving Credit Facility Agent's legal and financial advisers and the Debtors are executory contracts being assumed by the Debtors on the Effective Date.

36.    Payment of Secured Notes Indenture Trustees' and Prepetition Collateral Agents' Fees. On the Effective Date, the Reorganized Debtors shall pay in Cash all reasonable and documented fees, costs, expenses, undisputed indemnities, and other charges incurred prior to the Effective Date by the Secured Notes Indenture Trustees and the Prepetition Secured Collateral Agents, including the reasonable and documented fees, costs, expenses, undisputed indemnities, and other charges incurred by the Secured Notes Indenture Trustees' and the Prepetition Secured Collateral Agents' professionals in discharging the Secured Notes Indenture Trustees' and the Prepetition Secured Collateral Agents' duties under the 7.5% Secured Notes Indenture, the 7.125% Secured Notes Indenture, the 2017 Secured Term Loan Agreement, the 2019 Secured Term Loan Agreement, the Revolving Credit Agreement, and the Prepetition Intercreditor Agreement, including Arent Fox LLP, as counsel to the Secured Notes Indenture Trustees and the Prepetition Secured Collateral Agents, Reed Smith LLP as local counsel to the Secured Notes Indenture Trustees and the Prepetition Secured Collateral Agents, FTI Consulting Inc., as financial advisor to the Secured Notes Indenture Trustees and the Prepetition Secured Collateral Agent, Willis Limited as Insurance Advisor (as defined in the 7.5% Secured Notes Indenture and the 7.125% Secured Notes Indenture) and any local, maritime or foreign counsel

to the Secured Notes Indenture Trustees and the Prepetition Collateral Agents.  Following the

Effective Date, the Reorganized Debtors shall pay all reasonable fees, costs, expenses, and other

charges incurred by the Secured Notes Indenture Trustees and the Prepetition Secured Collateral

Agents  and each of their respective professionals and agents in carrying out the Secured Notes

Indenture Trustees' and the Prepetition Secured Collateral Agents' duties under the 7.5%

Secured Notes Indenture, the 7.125% Secured Notes Indenture, the 2017 Secured Term Loan

Agreement, the 2019 Secured Term Loan Agreement, the Revolving Credit Agreement and the

Prepetition Intercreditor Agreement and under or related to the Plan and Confirmation Order and

distributions and transactions contemplated thereunder; *provided, however*, that the foregoing

shall exclude such fees, costs, expenses, indemnities, and other charges directly incurred in

connection with the Cayman Proceeding after the Effective Date.  The foregoing fees, costs,

expenses, indemnities, and other charges shall be paid by the Reorganized Debtors in the

ordinary course, upon presentation of invoices by the Secured Notes Indenture Trustees and the

Prepetition Secured Collateral Agents and without the need for approval by the Bankruptcy

Court, or the filing of a request for payment of an Administrative Claim.  In the event that the

Secured Notes Indenture Trustees or the Prepetition Secured Collateral Agents, as applicable,

and the Reorganized Debtors are unable to resolve a dispute with respect to the payment of any

of the Secured Notes Indenture Trustees' or the Prepetition Secured Collateral Agents' fees,

costs, expenses, indemnities, or other charges, the applicable Secured Notes Indenture Trustees

or Prepetition Secured Collateral Agents may elect to submit such dispute to the Court for

resolution or assert the Charging Lien.

      37.    Other Indemnification Obligations.  The Reorganized Debtors shall pay

and reimburse and be liable to the Secured Notes Indenture Trustees and Prepetition Collateral

Agents and each director, officer, and employee, agent, professional and attorney of the Secured

Notes Indenture Trustees and Prepetition Collateral Agents (the Trustee and each such other

person, an "*Indemnified Person*") on demand for, and indemnify and hold harmless each such

Indemnified Person from and against, without limitation, any and all losses, liabilities,

judgments, claims, causes of action, costs, and expenses (including reasonable fees and

disbursements of legal counsel) (collectively, the "*Losses*") incurred or suffered by an

Indemnified Person (other than Losses arising out of or related to any act or omission of an

Indemnified Person that constitutes intentional fraud, gross negligence, or willful misconduct) in

any way, directly or indirectly, arising out of, related to, or connected with the implementation of

the Prepackaged Plan by the Secured Notes Indenture Trustees and Prepetition Collateral Agents

or any other Indemnified Person, including, without limitation, the actions and transactions

provided for or contemplated under Section 4.8 and 5.14 of the Prepackaged Plan. The rights

and remedies conferred hereunder shall be cumulative and the exercise or waiver of any such

right or remedy shall not preclude or inhibit the exercise of additional rights or remedies or the

subsequent exercise of such right or remedy. In addition to the foregoing, the Reorganized

Debtors or the Debtors are hereby authorized to and shall pay, advance or reimburse any cost,

expense, or charge, including but not limited to foreign or domestic attorneys and other

professionals, incurred by the Secured Notes Indenture Trustees or the Prepetition Secured

Collateral Agents in furtherance of or related to the actions and transactions provided for under

sections 4.8 and 5.14 of the Plan.

      38.   <u>Withholding and Reporting Requirements</u>.  In connection with the

Prepackaged Plan and all instruments issued in connection therewith and distributed thereon, the

Reorganized Debtors shall comply with all applicable withholding and reporting requirements

imposed by any federal, state, or local taxing authority, and all distributions under the

Prepackaged Plan shall be subject to any withholding or reporting requirements. In the case of a

non-Cash distribution that is subject to withholding, the distributing party may withhold an

appropriate portion of such distributed property and sell such withheld property to generate Cash

necessary to pay over the withholding tax. Any amounts withheld pursuant to the preceding

sentence shall be deemed to have been distributed to and received by the applicable recipient for

all purposes of the Prepackaged Plan. Notwithstanding the above, each holder of an Allowed

Claim that is to receive a distribution under the Prepackaged Plan shall have the sole and

exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any

governmental unit, including income, withholding, and other tax obligations, on account of such

distribution. The Reorganized Debtors have the right, but not the obligation, to not make a

distribution until such holder has made arrangements satisfactory to such issuing or distributing

party for payment of any such tax obligations. The Reorganized Debtors may require, as a

condition to receipt of a distribution, that the holder of an Allowed Claim complete and return a

Form W-8 or W-9, as applicable to each such holder. If the Reorganized Debtors make such a

request and the holder fails to comply before the date that is 180 days after the request is made,

the amount of such distribution shall irrevocably revert to the applicable Reorganized Debtor and

any Claim in respect of such distribution shall be discharged and forever barred from assertion

against such Reorganized Debtor or its respective property.

      39.   <u>Exemption from Transfer Taxes</u>. Pursuant to section 1146(a) of the

Bankruptcy Code, the issuance, transfer, or exchange of any security under the Prepackaged

Plan, the Reorganized Debtors entering into the Amended and Restated Credit Facility

Agreement, as well as all sale transactions consummated by the Debtors and approved by the

Court on and after the Confirmation Date through and including the Effective Date, including any transfers and distributions effectuated under the Prepackaged Plan, and any assumption, assignment, or sale by the Debtors of their interests in unexpired leases of nonresidential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

40.    <u>Documents, Mortgages, and Instruments</u>.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the transactions, including the Restructuring Transactions, contemplated in the Prepackaged Plan and this Order.

41.    <u>Reversal/Stay/Modification/Vacatur of Order</u>.  Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or the Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Prepackaged Plan, the Plan Documents, or any amendments or modifications to the foregoing.

42.   <u>Retention of Jurisdiction</u>.  Notwithstanding the entry of this Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, this Court, except as otherwise provided in the Prepackaged Plan, the Plan Documents, or this Order, shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XI of the Prepackaged Plan.

43.   <u>Modifications</u>.  The Prepackaged Plan and the Plan Documents may be amended, modified, or supplemented by the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Court.  In addition, after the entry of this Order, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims, Secured Notes Indenture Trustees and Prepetition Secured Collateral Agents pursuant to Prepackaged Plan, the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, may remedy any defect or omission or reconcile any inconsistencies in the Prepackaged Plan, the Plan Documents, or this Order with respect to such matters as may be necessary to carry out the purposes of effects of the Prepackaged Plan, and any holder of a Claim or Interest that has accepted the Prepackaged Plan shall be deemed to have accepted the Prepackaged Plan and Plan Documents as so amended, modified, or supplemented. Notwithstanding anything herein to the contrary, prior to the Effective Date, the Debtors, subject to the consent rights set forth in the Restructuring Support Agreement, may make appropriate technical adjustments and modifications to the Prepackaged Plan and Plan Documents without further order or approval of the Court; *provided*, that such technical adjustments and

modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under the Prepackaged Plan.

44.     _Provisions of Prepackaged Plan and Order Nonseverable and Mutually Dependent_. The provisions of the Prepackaged Plan and this Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

45.     _Governing Law_. Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan Supplement provides otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Prepackaged Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflict of laws.

46.     _Applicable Non-bankruptcy Law_. Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Order, the Prepackaged Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

47.     _Waiver of Filings_. Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating the Debtors to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the U.S. Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the entry of this Order.

48.     _Governmental Approvals Not Required_. This Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Prepackaged

Plan and Disclosure Statement, any documents, instruments, or agreements (including the Plan Documents), and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Prepackaged Plan and the Disclosure Statement.

49.    Reservation of Rights in Favor of United States Government. Nothing in the Prepackaged Plan, this Order, or the Plan Documents discharges or releases the Debtors or any other entity from any debt, obligation, Claim, liability, or Cause of Action of the United States and any of its agencies or impairs the ability of the United States and any of its agencies to pursue any debt, obligation, Claim, liability, or Cause of Action against any Debtor, Reorganized Debtor, or nondebtor. All Claims, liabilities, or Causes of Action of, or to, the United States and any of its agencies shall survive these Chapter 11 Cases as if the cases had not been commenced and shall be determined in the manner and by the administrative or judicial tribunals in which such rights or Claims would have been resolved or adjudicated if these Chapter 11 Cases had not been commenced. For the avoidance of doubt, the United States shall not have to file any Claims in these Chapter 11 Cases.

50.    Reservation of Rights in Favor of DSME. Notwithstanding anything in the Prepackaged Plan (including, for the avoidance of doubt and without limitation, sections 10.7, 10.8 and 10.9 of the Prepackaged Plan), the Disclosure Statement, or this Order to the contrary, the claims, rights, and defenses of Daewoo Shipbuilding and Marine Engineering Co., Ltd. ("*DSME*") arising out of or related to: (a) that certain Contract for the Construction and Sale of Drillship, dated June 6, 2013, by and between Cobalt Explorer Holdings Company and DSME and (b) that certain Deed of Guarantee, dated September 26, 2013 by and among DSME, Vantage Deepwater Holdings Company, as guarantor, and Vantage Drilling Company, as supplemental guarantor shall not be released, waived, limited, modified, impaired or otherwise

affected by this Order, the Prepackaged Plan, or any other order entered in these Chapter 11 Cases; *provided, however*, that, to the extent DSME at any time asserts any such claim, right, or defense against a Debtor or Reorganized Debtor, such claim shall be deemed to be a Class 5 Claim (General Unsecured Claim) and, accordingly, shall receive the treatment set forth in Section 4.5 of the Prepackaged Plan.

51.     Notice of Order.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtors shall serve notice of the entry of this Order, substantially in the form annexed hereto as **Exhibit B**, to all parties who hold a Claim or Interest in these cases and the U.S. Trustee.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

52.     Substantial Consummation.  On the Effective Date, the Prepackaged Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

53.     Waiver of Stay.  The stay of this Order provided by any Bankruptcy Rule (including Bankruptcy Rule 3020(e)), whether for fourteen (14) days or otherwise, is hereby waived, and this Order shall be effective and enforceable immediately upon its entry by the Court.

54.     Inconsistency.  To the extent of any inconsistency between this Order and the Prepackaged Plan, this Order shall govern.

55.    <u>No Waiver</u>.  The failure to specifically include any particular provision of the Prepackaged Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Prepackaged Plan is confirmed in its entirety and incorporated herein by this reference.

56.    <u>Restructuring Transactions</u>.  On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Prepackaged Plan and this Order.

Dated: _Jan 15_, 2016
　　　　Wilmington, Delaware

THE HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE